Nos. 23-2994, 23-2995, 23-2996, 23-2997, 23-2999

# United States Court Of Appeals
# For Eighth Circuit

---

Kenneth Ringhofer, Anita Miller, Shelly Kiel, Sherry Ihde, Kristin Rubin,

Plaintiffs–Appellants,

v.

Mayo Clinic Ambulance, a Minnesota non-profit corporation, The Mayo Clinic, Mayo Clinic Health System,

Defendants–Appellees.

---

On Appeal from the United States District Court
for the District of Minnesota

District Court Nos.
0:22-cv-01420-JRT-ECW
0:22-cv-01405-JRT-ECW
0:22-cv-01319-JRT-ECW
0:22-cv-01327-JRT-ECW
0:22-cv-01427-JRT-ECW

---

## APPELLANTS' PRINCIPAL BRIEF

---

Gregory M. Erickson, 276522
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
*Attorneys for Appellants*
October 23, 2023

George R. Wood, 0166017
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000
*Attorneys for Appellees*

## SUMMARY OF THE CASE

The Appellants, employed with their respective Mayo employers for anywhere from 18 to 32 years, were terminated because of their religious beliefs. In response to the Covid-19 epidemic, Mayo instituted a vaccine mandate requiring employees to be vaccinated or tested. Failure to do so meant termination without recourse. Mayo offered religious exemptions, but Mayo pre-determined that few would be exempted. Each Appellant had their exemption denied. Once denied, each filed a complaint on religious discrimination grounds with the EEOC. Right to sue letters soon followed, and the Appellants filed federal actions under Title VII of the Civil Rights Act and the Minnesota Human Rights Act.

The district court, having consolidated the Appellants' lawsuits, issued an order granting Mayo's motion to dismiss. The court held that the Appellants failed to sufficiently plead facts to support their claims for relief and that two appellants had failed to exhaust administrative remedies. The court concluded that the Appellants failed to show that their decisions not to take a Covid vaccine or to submit to mandatory testing resulted from the Appellants' sincerely held religious beliefs, as opposed to mere "personal choice." Thus the court did not take the Appellants' allegations as true and improperly resolved a factual question at the motion-to-dismiss stage. Moreover, there is now a split within the U.S. District Court of Minnesota regarding the MHRA's applicability to assert religious discrimination claims.

Appellants request 15 minutes of oral argument.

i

# CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1(a) and Local Rule 26.1A of the United States Court of Appeals for the Eighth Circuit:

Kenneth Ringhofer is an individual and is not a corporate entity nor affiliated with any corporate entity regarding his appeal.

Anita Miller is an individual and is not a corporate entity nor affiliated with any corporate entity regarding his appeal.

Shelly Kiel is an individual and is not a corporate entity nor affiliated with any corporate entity regarding his appeal.

Sherry Ihde is an individual and is not a corporate entity nor affiliated with any corporate entity regarding his appeal.

Kristin Rubin is an individual and is not a corporate entity nor affiliated with any corporate entity regarding his appeal.

Appellate Case: 23-2996     Page: 3     Date Filed: 10/27/2023 Entry ID: 5330477

# TABLE OF CONTENTS

SUMMARY OF THE CASE ........................................................................ i

CORPORATE DISCLOSURE STATEMENT............................................. ii

TABLE OF AUTHORITIES ................................................................... v

JURISDICTIONAL STATEMENT........................................................... 1

STATEMENT OF THE ISSUES PRESENTED ........................................ 3

STATEMENT OF THE CASE ................................................................ 5

I.    Appellants sought a religious exemption from taking the COVID-19 vaccine as a condition of employment, but despite their bona fide religious beliefs, Mayo denied their respective requests and terminated their employment. ...................................................... 5

    A. Kiel's religious beliefs conflicted with Mayo's Vaccine Mandate. ..................... 6

    B. Kiel informed Mayo of her Religious Beliefs......................................... 7

    C. Miller's bona fide religious beliefs conflicted with Mayo's Vaccine Mandate. .................................................... 8

    D. Miller filed an EEOC complaint charging Mayo with religious discrimination. ...................................................... 9

    E. Ringhofer's bona fide religious beliefs conflicted with Mayo's vaccine mandate. ....................................................... 9

    F. Ringhofer informed Mayo of his Religious Beliefs. .......................................... 10

    G. Ihde's bona fide religious beliefs conflicted with Mayo's vaccine mandate for testing. ...................................................... 11

    H. Ihde filed an EEOC charge against Mayo for religious discrimination. ...................................................... 13

    I. Rubin's bona fide religious beliefs conflicted with Mayo's testing mandate. ...................................................... 13

II.    The district court granted Mayo's dismissal of Appellants' complaints.................................................................. 15

Appellate Case: 23-2996    Page: 4    Date Filed: 10/27/2023 Entry ID: 5330477

Summary of the Argument ................................................................ 16

Arguments .......................................................................................... 18

The applicable standard of review for a motion to dismiss is de novo. ........ 18

    A. Appellants Kiel, Miller and Ringhofer's Bona Fide Religious
       Beliefs conflicted with an employment requirement (vaccination). .......... 19

        1. Standard at Motion to Dismiss. ................................................. 19

        2. It is not for a court at a motion to dismiss to decide a bona
           fide religious belief. ................................................................ 21

    B. Kiel, Miller and Ringhofer Amply Pled Bona Fide Religious
       Beliefs; The District Court's Dismissal Must be Reversed. ................... 25

        1. Kiel Pled Bona Fide Religious Beliefs. ..................................... 26

        2. Miller Sufficiently Pled Bona Fide Religious Beliefs. ................. 35

        3. Ringhofer Amply Pled His Bona Fide Religious Beliefs. ............ 36

        4. Ihde and Rubin Pled Bona Fide Religious Beliefs that
           conflicted with testing. ........................................................... 38

    C. Appellants Kiel and Ringhofer met the second factor, that they
       "informed" Mayo of their sincerely held religious beliefs. ................. 42

III.  Appellants Ihde and Miller Administratively Exhausted their
     Claims. ........................................................................................ 43

IV.  Appellants' MHRA Claims are Recognized and Require Mayo to
     Reasonably Accommodate Appellants' Bona Fide Religious Beliefs. .......... 48

CONCLUSION ................................................................................. 52

CERTIFICATE OF COMPLIANCE ................................................. 53

Appellate Case: 23-2996    Page: 5    Date Filed: 10/27/2023 Entry ID: 5330477

# TABLE OF AUTHORITIES

Page(s)

Cases

*Africa v. Commonwealth of Pennsylvania,*
  662 F.2d 1025 (3rd Cir. 1981) ...............................................................33, 34, 35

*Balow v. Olmsted Medical Ctr.,*
  No. CV-22-1668, 2023 WL 2776028 (D. Minn. Apr 4, 2023) .................................. 48

*Boone v. Ill. Dep't Corr.,*
  No. 21-3229, 2022 WL 17083394 (C.D. Ill. Nov. 18, 2022) ...................................... 40

*Braunfeld v. Brown,*
  366 U.S. 599 (1961) ................................................................................................. 52

*Brooks v. Roy,*
  881 F. Supp. 2d 1034 (D. Minn. 2012) ..................................................................... 51

*Brown v. Polk Cnty., Iowa,*
  61 F.3d 650 (8th Cir. 1995) ...................................................................................... 25

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014) ...........................................................................................24, 28

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.,*
  942 F.3d 1215 (11th Cir. 2019) ................................................................................. 28

*Chardon v. Fernandez,*
  454 U.S. 6 (1981) ..................................................................................................... 45

*Cole v. Grp. Health Plan, Inc.,*
  No. 22-CV-2686 (WMW/DLM), 2023 WL 5155202 (D. Minn. Aug. 10, 2023) ..... 50

*Cooper v. St. Cloud State Univ.,*
  226 F.3d 964 (8th Cir. 2000) ..............................................................................45, 48

*Delaware State Coll. v. Ricks,*
  449 U.S. 250 (1980) .........................................................................................4, 45, 48

*Dockery v. Maryville Acad.,*
  379 F. Supp. 3d 704 (N.D. Ill. 2019) ....................................................................... 32

*Duncan v. Delta Consol. Indus. Inc.,*
  371 F.3d 1020 (8th Cir. 2004) .................................................................................. 47

*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico,*
  279 F.3d 49 (1st Cir. 2002) ...................................................................................... 21

*EEOC v. Abercrombie,*
  731 F.3d 1106 (10th Cir 2013) ...........................................................................32, 41

*EEOC v. Kroger Limited Partnership,*
  608 F.Supp.3d 757 (E.D. Ark. 2023) ...............................................................24, 25, 43

Appellate Case: 23-2996    Page: 6    Date Filed: 10/27/2023 Entry ID: 5330477

*EEOC v. Red Robin Gourmet Burgers, Inc.,*
  2005 WL 2090677 (W. D. Wash. Aug. 29, 2005) ....................................... 32
*Finn. v. All. Bank,*
  860 N.W.2d 638 (Minn. 2015) ................................................................ 19
*Fowler v. Rhode Island,*
  345 U.S. 67 (1953) ................................................................................ 23
*Frazee v. Illinois Dep't of Emp. Sec.,*
  489 U.S. 829 (1989) .............................................................. 3, 27, 28, 40
*Fulton v. City of Philadelphia,*
  141 S.Ct. 1868 (2021) ........................................................................... 24
*Hafley v. Lohman,*
  90 F.3d 264 (8th Cir. 1996) .................................................................. 20
*Hartman v. Bowles,*
  39 F.4th 544 (8th Cir. 2022) ................................................................. 19
*Henry v. Indep. Sch. Dist. # 625,*
  988 N.W.2d 868 (Minn. 2023) ............................................................... 51
*Hill-Murray Fed'n of Teachers v. Hill-Murray High Sch.,*
  487 N.W.2d 857 (Minn. 1992) ............................................................... 51
*Holt v. Hobbs,*
  574 U.S. 352 (2015) ....................................................................28, 32, 41
*Humphrey v. Eureka Gardens Pub. Facility Bd.,*
  891 F.3d 1079 (8th Cir. 2018) .......................................................4, 45, 48
*Jones v. TEK Indus., Inc.,*
  319 F.3d 355 (8th Cir.2003) ...........................................3, 15, 19, 38
*Kenneh v. Homeward Bound, Inc.,*
  944 N.W.2d 222 (Minn. 2020) .......................................................4, 49, 51
*Joey Lee Pl. v. Seasons Hospice, Def., Mary Robsahm and Kelly Moen Plts.*
  No. 22-CV-1593 (PJS/DJF), 2023 WL 6387794 (D. Minn. Sept. 29, 2023) ........... 18
*Leimkuehler v. Am. United Life Ins. Co.,*
  No. 1:10-CV-00333-JMS, 2011 WL 1565887 (S.D. Ind. Apr. 25, 2011).................. 25
*Maroko v. Werner Enterprises, Inc.,*
  778 F. Supp. 2d 993 (D. Minn. 2011) ...............................................19, 22
*Martinez v. Potter,*
  347 F.3d 1208 (10th Cir. 2003) .......................................................46, 47
*McGowan v. Maryland,*
  366 U.S. 420 (1961) ........................................................................31, 36
*Moses.com Sec., Inc. v. Comprehensive Software Sys. Inc.,*
  406 F.3d 1052 (8th Cir. 2005) ............................................................... 20
*Murphy v. Missouri Dep't of Corr.,*
  372 F.3d 979 (8th Cir. 2004) ............................................................4, 21

Appellate Case: 23-2996    Page: 7    Date Filed: 10/27/2023 Entry ID: 5330477

*Nat'l R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002) ............................................................................ 4, 44

*Nichols v. American Nat. Ins. Co.,*
  154 F.3d 875 (8th Cir. 1998) ............................................................. 43, 46

*Petermann v. Aspirus,*
  No. 22-332, 2023 WL 2662899 (W.D. Wi. Mar. 28, 2023) ................... 26, 29

*Rasmussen v. Two Harbors Fish Co.,*
  832 N.W.2d 790 (Minn. 2013) ................................................................. 49

*Redmond v. GAF Corp.,*
  574 F.2d 897 (7th Cir. 1978) ................................................................... 23

*Richter v. Advance Auto Parts,*
  686 F.3d 847 (8th Cir. 2012) ................................................................... 46

*Rogers v. Nebraska Urb. Indian Health Coal., Inc.,*
  No. 8:22-CV-410, 2023 WL 2990720 (D. Neb. Apr. 18, 2023) ............... 21

*Satanic Temple v. City of Belle Plaine, Minnesota,*
  475 F. Supp. 3d 950 (D. Minn. 2020) ...................................................... 51

*Seshadri v. Kasraian,*
  130 F.3d 798 (7th Cir. 1997) ............................................................. 33, 40

*State v. Hershberger,*
  462 N.W.2d 393 (Minn.1990) ............................................................. 4, 51

*Stone v. Graham,*
  449 U.S. 39 (1980) .................................................................................. 31

*Thomas v. Review Bd. of the Ind. Employment Sec. Div.,*
  450 U.S. 707 (1981) ........................................................................ passim

*Thompson v. Harrie,*
  59 F.4th 923 (8th Cir. 2023) ............................................................... 3, 18

*Together Employees v. Mass Gen. Brigham Inc.,*
  573 F. Supp. 3d 412 (D. Mass. 2021) ...................................................... 31

*U.S. v. Meyer,*
  95 F.3d 1975 (10th Cir 1996) .................................................................. 23

*United States v. Ballard,*
  322 U.S. 78 (1944) .................................................................................. 24

*United States v. Kauten,*
  133 F.2d 703 (2d Cir. 1943) .................................................................... 42

*United States v. Seeger,*
  380 U.S. 163 (1965) ..................................................... 4, 22, 23, 24, 27

*Vetter v. Farmland Indus., Inc.,*
  120 F.3d 749 (8th Cir. 1997) ............................................................ 21, 37

*Warmington v. Board of Regents of Univ. of Minn.,*
  998 F.3d 789 (8th Cir. 1021) ........................................................ 3, 20, 25

vii

*Wedow v. City of Kansas City, Mo.,*
    442 F.3d 661 (8th Cir. 2006) ................................................................. 4, 47

*Welsh v. United States,*
    398 U.S. 3338 (1970) ................................................................................... 41

*West Virginia Bd of Ed. V. Barnette,*
    319 U.S. 624 (1943) ................................................................................ 31, 42

*Wilson v. U.S. W. Commc'ns,*
    58 F.3d 1337 (8th Cir.1995) ....................................................................... 19

*Winans v. Cox Automotive, Inc.,*
    No. 22-3826, 2023 WL 2975872 (Apr. 17, 2023) ................................. 34, 35

*Young v. City of St. Charles, Mo.,*
    244 F.3d 623 (8th Cir. 2001) ................................................................ 19, 20

## Statutes

28 U.S.C. § 1291 ............................................................................................. 1
28 U.S.C. § 1331 ............................................................................................. 1
42 U.S.C. § 2000e-2(a)............................................................................ 1, 3, 22
Minn. Stat. § 363A.02, subd. 1(a) ................................................................. 49
Minn. Stat. § 363A.04 .................................................................................... 49

## Regulations

29 C.F.R. §1605.1 ......................................................................................... 22

## Secondary Authorities

*Webster's New World Dictionary* 948 (David B. Guralnik, ed., 2nd ed., Simon and
    Schuster 1982F1 ...................................................................................... 24

Appellate Case: 23-2996    Page: 9    Date Filed: 10/27/2023 Entry ID: 5330477

# JURISDICTIONAL STATEMENT

The United States District Court for the District of Minnesota issued a judgment for each of the Appellants as follows:

- Sherry Ihde, judgment entered on August 7, 2023 (App. 38; R. Doc. 54) based upon the Memorandum Opinion and Order dated August 4, 2023. (App. 36; R. Doc. 53, at 36) (22-cv-1327(JRT/ECW);

- Anita Miller, judgment entered on August 7, 2023 (R. Doc. 55) based upon the Memorandum Opinion and Order dated August 4, 2023 (App. 36; R. Doc. 54, at 36) (22-cv-1405 (JRT/ECW);

- Kenneth Ringhofer, judgment on August 7, 2023 (R. Doc. 51) based upon the Memorandum Opinion and Order dated August 4, 2023 (App. 36; R. Doc. 50, at 36) (22-cv-1420 (JRT/ECW);

- Kristin Rubin, judgment on August 7, 2023 (R. Doc. 48) based upon the Memorandum Opinion and Order dated August 4, 2023 (App. 36 R. Doc. 47, at 36) (22-cv-1427 (JRT/ECW);

- Shelly Kiel, judgment on August 4, 2023 (App. 37; R. Doc. 63) based upon the Memorandum Opinion and Order dated August 4, 2023 (App. 36; R. Doc. 62, at 36) (22-cv-1319 (JRT/ECW);

The orders and judgments adjudicated all claims as to all parties. The district court's jurisdiction was established under 28 U.S.C. § 1331 as a civil action arising under the laws of the United States as a federal question, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

Under 28 U.S.C. § 1291, the Court of Appeals has jurisdiction from all final decisions of the federal district courts. The Appellants filed their respective Notice of

Appellate Case: 23-2996    Page: 10    Date Filed: 10/27/2023 Entry ID: 5330477

Appeal on August 30, 2023: Ihde (R. Doc. 55) (22-cv-1327(JRT/ECW); Miller (R. Doc. 56) (22-cv-1405 (JRT/ECW); Ringhofer (R. Doc. 52) (22-cv-1420 (JRT/ECW); Rubin (R. Doc. 49) (22-cv-1427 (JRT/ECW); and Kiel (R. Doc. 65) (22-cv-1319 (JRT/ECW).

2

# STATEMENT OF THE ISSUES PRESENTED

The Mayo Clinic ("Mayo") provided a religious exemption process for employees to apply to be exempt from taking the COVID-19 vaccine. However, Mayo had pre-determined that only a small number of staff would qualify for a religious exemption. Mayo employees, who had worked at Mayo for decades, requested religious exemptions based upon their individual beliefs, interpretation of scripture, and religious edicts. They were terminated because of their religious beliefs.

1. Whether the underlying complaint sufficiently pled allegations that Mayo acted on a predisposition to terminate employees requesting a religious exemption from taking the COVID-19 vaccine based upon the employee's assertion of genuinely held religious beliefs, regardless of the degree of articulation or lack of articulation regarding those beliefs, to survive a motion to dismiss.

   Apposite constitutional provisions or statutes:

   Apposite cases: *Thompson v. Harrie*, 59 F.4th 923 (8th Cir. 2023); *Warmington v. Board of Regents of Univ. of Minn.*, 998 F.3d 789 (8th Cir. 1021) (other citations omitted); *Jones v. TEK Indus., Inc.*, 319 F.3d 355 (8th Cir.2003).

2. Whether a district court, at a motion to dismiss, can give little or no weight to allegations regarding a person's conscience related decisions rooted in their religious beliefs, however well-articulated.

   Apposite constitutional provisions or statutes: 42 U.S.C. § 2000e–2(a).

   Apposite cases: *Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S. 829 (1989); *Thomas v. Review Bd. of the Ind.*

Appellate Case: 23-2996     Page: 12     Date Filed: 10/27/2023 Entry ID: 5330477

*Employment Sec. Div.*, 450 U.S. 707 (1981); *United States v. Seeger*, 380 U.S. 163 (1965); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979 (8th Cir. 2004).

3. Whether the Minnesota Human Rights Act ("MHRA") includes a cause of action for failure of an employer to reasonably accommodate an employee's bona fide religious beliefs.

   Apposite constitutional provisions or statutes:

   Apposite cases: *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222 (Minn. 2020); *State v. Hershberger*, 462 N.W.2d 393 (Minn.1990); *Lee v. Seasons Hospice*, Case No. 22-CV-1593.

4. Whether Mayo's notice of the effective date of Appellants' termination—not a threat of termination—is a discrete act sufficient for the exhaustion of EEOC administrative remedies to commence a federal action against Mayo for religious discrimination under Title VII of the Civil Rights Act.

   Apposite constitutional provisions or statutes:

   Apposite cases: *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980); *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079 (8th Cir. 2018); *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661 (8th Cir. 2006).

# STATEMENT OF THE CASE

I. **Appellants sought a religious exemption from taking the COVID-19 vaccine as a condition of employment, but despite their bona fide religious beliefs, Mayo denied thfeir respective requests and terminated their employment.**

Appellants, Sherry Ihde, Shelly Kiel, Anita Miller, Kenneth Ringhofer, and Kristin Rubin, were terminated from their respective Mayo employment.[1] Ihde employed for 23 years; Kiel 18 years; Miller 21 years, Ringhofer 32 years; and Rubin 25 years. Each terminated because of their religious beliefs.

In response to the Covid-19 epidemic, Mayo instituted a vaccine mandate ("Vaccine Mandate") shortly after Mayo's Dr. Gregory Poland, head of Mayo's Vaccine Research Group, announced that Mayo *could not mandate* employees to take the Covid-19 vaccine: "*we can't mandate that people take a vaccine, it's their right not to take one.*" App. 57; R. Doc. 25, at 7 (¶20) (emphasis added); App. 115; R. Doc. 32, at 4 (¶18) (emphasis added).

In December 2020, prior to the availability of Covid-19 vaccines, Mayo recognized that "vaccination is voluntary." App. 57; R. Doc. 25, at 7 (¶21). Prior to October 21, 2021, Mayo "encouraged, but did not require its employees to get vaccinated." *Id.* (¶19).

---

[1] This Court consolidated the five appeals arising from the district court's decision dated August 4, 2023.

5

Mayo instituted its Vaccine Mandate in October, 2021, but allowed for religious exemptions. In prior litigation,[2] Mayo alleged that employees opposed to the vaccinations on religious grounds had no standing to obtain an injunction against the Vaccine Mandate because none had been fired; and Mayo promised to grant religious exemptions liberally so none would be terminated for refusing the vaccine. App. 116-119; R. Doc. 32, at 5-8 (¶¶21-35).

However, after the district court in that case dismissed the preliminary injunction lawsuit, Mayo changed its position and declared that "[o]nly a small number of staff are expected to qualify for a religious exemption." *Id.* at 6 (¶27).

Kiel, Miller, and Ringhofer requested religious exemptions, asserting the Vaccine Mandate violated their bona fide religious beliefs. Just as Mayo threatened in its instructions, Mayo granted "only a small number" of religious exemptions. Appellants are among those denied religious exemptions, and terminated for refusing the vaccines or testing.

**A.    Kiel's religious beliefs conflicted with Mayo's Vaccine Mandate.**

Kiel objected to receiving Covid-19 vaccines because of her Christian beliefs that she:

> [B]elieves, … that her body is a Temple to the Holy Spirit and it violates her religious beliefs and conscience to take the Covid-19 vaccine. … Kiel believes that she must protect her body, God's Temple, and cannot put into it substances which are impure or dangerous. … her religious beliefs prevent her from putting into

---

[2] *Mary Roe 1, et al., v. Allina Health Systems, et al.*, Case 21-cv-02127 (filed Oct. 8, 2021).

her body the Covid-19 vaccines … because they were all produced with or tested with cells from aborted human babies. Receiving the vaccine would make her a participant in the abortion that killed the unborn baby.

App. 114; R. Doc. 32, at 3 (¶13); *see also* App. 136-140; R. Doc. 49-1, at 21-25 (Kiel's Religious Accommodation and Reconsideration); *see also* App. 141; R. Doc. 44-4, at 1 (Kiel's EEOC/MHRA complaint).

## B. Kiel informed Mayo of her Religious Beliefs.

The district court held Kiel did not "allege sufficient facts supporting the second *Jones* factor: that she *informed* Mayo of her sincerely held religious belief." App. 21-22; R. Doc. 62, at 21-22 (emphasis added). Yet, Kiel pled repeatedly that she "informed" Mayo of her religious objections and:

- "filed a request for a religious exemption with Defendant Mayo to be exempt from taking the Covid-19 vaccination," App. 112; R. Doc. 32, at 1 (¶1);

- "requested a religious exemption from the Vaccine Mandate and then a request for reconsideration, which were both denied [by Mayo]," *Id.* (¶12);

- "submitted a request for an exemption [to Mayo], but it was denied," *Id.* (¶36);

- Following its receipt of Kiel's request for the religious exemption, Defendant Mayo wrote to Kiel acknowledging receipt: "Thank you for submitting your request for religious exemption …", *Id.* (¶40);

- "submitted good-faith statements of her sincerely-held religious beliefs [to Mayo], with explanations of how her faith constrained her from accepting the Covid-19 vaccination." *Id.* (¶52);

7

- "informed Mayo of the conflict between her religious belief and the Vaccine Mandate." *Id.* (¶¶76, 90);

*See also* App. 120-22, 129; R. Doc. 32, at 9-11, 18 (¶¶41-48, 80) (illustrating Mayo's lack of interactive process).

Despite knowing the conflicts between Kiel's religious beliefs and the Vaccine Mandate, Mayo neither engaged in an interactive process nor otherwise communicated with her to clarify the identified conflicts, and denied her requests for an exemption. App. 119; R. Doc. 21, at (¶¶1, 4, 34-35, 42, 47).

### C. Miller's bona fide religious beliefs conflicted with Mayo's Vaccine Mandate.

Miller objected to receiving the Covid-19 vaccine based upon her Christian beliefs, and her:

> [R]eligious exemption was based on opposition to the use of vaccines produced with or *tested by aborted baby cells*. Plaintiff Miller believes in the *sanctity of life from conception until natural death*. She *lives her life* according to her sincerely held religious beliefs. She practiced her neo-natal nursing living out her belief in the sanctity of life, in the smallest baby humans. She is Christian and has determined she cannot, consistent with her conscience, take the Covid-19 vaccine, and to do so would *make her complicit in the killing of the unborn babies* from whom the cells used in the vaccines came. She … believes the tenants (sic) of the Holy Scripture that whatever she does in life will be called into account, including what she does to her body, made in the image of God, and to do otherwise is a sin against God.

App. 148-49; R. Doc. 26, at 3-4 (¶¶10-11) (emphasis added); *see also* App. 170-179; R. Doc. 43-1, at 26-35 (Miller's Requests for Accommodation and Reconsideration; both were denied); *see also* App. 180; R. Doc. 39-5, at 1 (Miller's EEOC/MHRA complaint).

8

Miller's religious beliefs conflicted with Mayo's Vaccine Mandate which declared that any non-vaccinated employee without an exemption would be terminated by January 3, 2021. App. 150-51; R. Doc. 26, at 5-6 (¶¶21-23).

### D. Miller filed an EEOC complaint charging Mayo with religious discrimination.

On December 23, 2021, after Miller's request for reconsideration was denied, Mayo immediately disciplined her—leave without pay. App. 150-51; R. Doc. 26, at 5-6 (¶21); App. 180; R. Doc. 39-5, at 1. On December 29, 2021, knowing that termination was imminent and certain, Miller filed an EEOC complaint charging Mayo with religious discrimination. *See* App. 180; R. Doc. 39-5. Miller's EEOC complaint asserted she had applied for, but was denied an exemption and denied a request for reconsideration. *Id.* Miller, was disciplined and pursuant to Mayo's policy terminated on January 3, 2022. App. 158; R. Doc. 26, at 13 (¶55). Miller received her EEOC right to sue letter on February 23, 2022 and then started this litigation. *Id.* (¶¶1, 3, 56).

### E. Ringhofer's bona fide religious beliefs conflicted with Mayo's vaccine mandate.

Ringhofer pled he "objected to receiving [Mayo's mandated Covid-19] vaccinations because of his sincerely-held religious beliefs." App. 191; 199, 208, 210 R. Doc. 21, at 1, 9, 18, 20 (¶¶1, 34, 76, 90). Ringhofer, a Baptist, explained how he:

> [B]elieves, … his body is a Temple to the Holy Spirit and is strongly against abortion. Plaintiff Ringhofer believes the Vaccine Mandate violates his *religious beliefs* and *conscience* to take the Covid-19 vaccine because the vaccines were

9

produced with or tested with fetal cell lines.  Ringhofer … [believes] that 'Using the fetal cells in the development of it, knowing about it, is against my religion.' … He … concluded, based upon his religious beliefs, that God would take care of him, 'I did a lot of research and stuff and I didn't feel I wanted to go down that path, being told by God to avoid the altering stuff that they had, that my God-given immune system's going to take care of me.'

*Id.* (¶30) (emphasis added) (internal citation omitted); *see also* App. 216-222; R. Doc. 38-1, at 36-42 (Ringhofer's requests for Accommodation and Reconsideration); App. 223; R. Doc. 34-6, at 1 (Ringhofer's EEOC/MHRA complaint).

Ringhofer testified: "*I've been following my faith and putting my life in God's hand* and not in man's hands."  App. 199; R. Doc. 21, at 9 (¶32) (internal citation omitted).

Ringhofer pled Mayo previously granted him a religious exemption from taking the flu vaccine.  App. 203-04; R. Doc. 21, at 13-14 (¶55).  Ringhofer asserted he believes "God's given immune system is taking care of me."  *Id.* (¶33).  Ringhofer also pled "[H]is decision-making process reflects Baptist beliefs as noted previously, 'It's putting in something that is unknown into my body. God asked me not to do that.'"  *Id.* (¶33).

### F.    Ringhofer informed Mayo of his Religious Beliefs.

Ringhofer pled he informed and communicated his religious beliefs and conflicts with the Vaccine Mandate to Mayo, and Mayo thanked him.  App. 191, 198, 200-02; R. Doc. 21, at 1, 8, 10-12 (¶¶1, 29, 38, 43, 48).  Revealingly, Mayo previously recognized his sincerely held religious beliefs in granting his religious exemption from the *flu* vaccine.  *Id.* (¶¶1, 55).

10

Nonetheless, Mayo denied Ringhofer's request for a religious exemption to the Vaccine Mandate but has never explained the inconsistency between granting the *flu* vaccine religious exemption but not the *Covid-19 vaccine* exemption. Furthermore, Mayo engaged in no interactive process to learn of Ringhofer's religious beliefs. *Id.* (¶¶1, 44, 45, 46).

Mayo denied Kiel's, Miller's and Ringhofer's requests for religious exemptions and terminated them, despite their bona fide religious beliefs.

## G. Ihde's bona fide religious beliefs conflicted with Mayo's vaccine mandate for testing.

Ihde actually received a religious exemption with Mayo having recognized her "religious beliefs" as "sincere in November 2021." App. 61; R. Doc. 25, at 11 (¶¶36, 51). She had also sought a medical exemption because of previous negative reactions to other vaccines (influenza), but because of Mayo's Covid-19 policy, Mayo doctors refused to sign the medical exemption form. App. 61-62; R. Doc. 25, at 11-12 (¶38).

Ihde obtained a religious exemption to vaccination, but Mayo's policy mandated weekly Covid-19 testing. App. 62; R. Doc. 25, at 12 (¶39). Ihde sought a religious exemption to weekly testing for the same reasons as her vaccine exemption. *Id.* Ihde alleged she is a "Christian who believes, based on her interpretation of Scripture, that her body is a Temple to the Holy Spirit and it violates her conscience to take the vaccine," and that she believed "medical testing for Covid-19 also violates her religious beliefs." *Id.* (¶15); *see also* App. 80-99; R. Doc. 42-1, at 1-20 (Ihde's

11

Request for Accommodation and Reconsideration); App. 100; R. Doc. 38-2, at 1 (Ihde's EEOC/MHRA complaint).

Ihde pled she had provided "testimony … that she is a Christian, raised as a Catholic. … [she answered] the question, 'what is the sincerely held religious belief or practice you are seeking *accommodation*,' (emphasis added), that her 'body is a temple of the Holy Spirit.'  App. 55; R. Doc. 25, at 5 (¶15) (citing 1 Corinthians 3:16, 6:19-20). Ihde … quoted numerous other passages to the Holy Bible to support her [beliefs] … [that she has] "a duty to honor, care for and protect the body Elohim (God) has given me."  *Id.*  Ihde believes her "rights come from my Creator not from any constitution, person, governments or corporation (Rom 13:1): and my healing comes from Elohim (Ex 15:26)…"  *Id.*

Ihde pled she:

[I]nterpreted Bible verses as it related to medicine: 'My faith is in my Creator who is my Healer (Ex 15:26). … Shifting my faith from my Creator to medicine is the equivalent of committing idolatry-holding medicine in greater esteem then Elohim (Col 3:5). … 'Excessive procedures, vanity surgeries, and redundant intrusive testing of healthy, asymptomatic humans is irresponsible and crosses the line violating my conscience before Elohim….'

*Id.* (¶¶16-17).  Ihde pled her religious beliefs conflict with the Mayo testing mandate. *Id.*

Ihde's exemption to vaccination was granted, and then also an exemption to testing, but the testing exemption was later revoked.  App. 52-53; R. Doc. 25, at 2-3 (¶4).  Ihde had no alternative between her religious beliefs or termination, and Mayo

terminated her for refusing the testing. *Id.* (¶17). Tellingly, in March 2022 – after just a few months of requiring testing – Mayo terminated its testing policy. *Id.* (¶¶4, 78, 79); *see also* App. 232, 245; R. Doc. 20, at 1, 14 (¶¶1, 61-62).

## H. Ihde filed an EEOC charge against Mayo for religious discrimination.

After Ihde's exemption request was denied and termination was inevitable, she was placed on administrative leave on January 20, 2022. App. 65; R. Doc. 25, at 15 (¶45). Knowing termination was imminent and certain, Ihde filed an EEOC complaint charging Mayo with religious discrimination on February 4, 2022. App. 100-2; R. Doc. 38-2, at 1-3. The EEOC issued a right to sue letter on February 16, 2022. *Id.* Pursuant to policy, Mayo terminated Ihde on February 21, 2022. *Id.* (¶¶3-4, 25-26, 31, 46, 69).

## I. Rubin's bona fide religious beliefs conflicted with Mayo's testing mandate.

Rubin also received a religious exemption from vaccination but was denied the same exemption from weekly Covid testing, and then Mayo terminated Rubin. App. 232, 234; R. Doc. 20, at 1, 3 (¶¶1, 12).

Rubin's request for a religious exemption from Covid vaccination was the same as her exemption request from testing. Rubin pled she "objected to receiving these vaccinations because of [her] sincerely held religious beliefs." *Id.* (¶¶1, 11, 34-37). Rubin explained she is:

13

[A] Christian … and that as a believer she asked the Lord to come into her life. Now the Holy Spirit dwells in her and she believes her body is a temple for the Holy Spirit that she is duty bound to honor. She does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or *allowing testing of her body when it is not necessary*. Accordingly, it violates her *conscience* to take the vaccine or to engage in weekly testing or sign a release of information that gives out her medical information.

*Id.* (¶11) (emphasis added).

Rubin further described, "… the Holy Spirt dwells in me. My body is a temple for the Holy Spirit for which I will honor (1 Corinthians 6:19-20)." *Id.* (¶35). She believes that:

God will protect and strengthen me and I will honor the Lord with my body by striving to cause no harm to his temple. God has created mankind in his image (Genesis 1:27). It is by the word of God I carry out my relationship with Him. It is my responsibility *to protect the physical integrity of my body*.

*Id.*

Rubin pled she "chooses God['s] "path" to "follow in regard to testing." She prayed and God told her: "He comes before my job. He comes first." *Id.* (¶¶35-36); *see also* App. 254-57; R. Doc. 36-1, at 43-46 (Rubin's Requests for Accommodation and Reconsideration); App. 258; R. Doc. 32-7, at 1 (Rubin's EEOC complaint).

Mayo denied Rubin's exemption request from Covid testing, and terminated her. In March 2022, Mayo rescinded its testing policy. App. 232, 245; R. Doc. 20, at 1, 14 (¶¶1, 61-62).

14

## II.    The district court granted Mayo's dismissal of Appellants' complaints

The district court dismissed Kiel's, Miller's, and Ringhofer's claims for failure to state a claim on the basis they did not have bona fide religious beliefs that conflicted with Mayo's employment vaccination requirement.

The district court dismissed Rubin's and Ihde's claims for failure to exhaust their administrative remedies and failure to state a claim of relief under Title VII. App. 15; R. Doc. 62, at 15.  The court determined that because Rubin and Ihde filed their respective EEOC charges *prior* to their termination, they had not exhausted their administrative remedies.  *Id.*  The court opined "termination" was a "'discrete act.'" *Id.* at 17.  Because they did not file another EEOC charge after termination, any Title VII claim would be untimely.  *Id.* at 18.  Hence, Rubin's and Ihde's amended complaints were dismissed.  *Id.*

The court held Kiel failed to meet the first factor from *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003) (bona fide religious belief conflicting with employment requirement).  App. 15; R. Doc. 62, at 21.  The court opined that Kiel's religious beliefs were too broad and not tied to any "'formal or external signs'" of religion (as it related her anti- abortion stance and Scriptural interpretation).  *Id.* at 22. Secondarily, the court held Kiel failed the second *Jones* factor because she failed to inform Mayo of her religiously held beliefs.  *Id.* at 22-23.  The allegations were too "bare."  *Id.* at 23.

Appellate Case: 23-2996    Page: 24    Date Filed: 10/27/2023 Entry ID: 5330477

The court called Ringhofer's allegations a "closer call." *Id.* The district court acknowledged Ringhofer's life was guided by God, but nevertheless held "he has not alleged that his opposition to the vaccine is religious in nature," failing the first *Jones* factor. *Id.,* 22-24. The district court also determined Ringhofer failed the second *Jones* factor finding that his allegations of informing Mayo of his religious exemption was a "bare recitation" of the elements and "insufficient to survive a motion to dismiss." *Id.* at 25.

The court found Rubin's refusal to test weekly was not tied to any "religious tenets for this belief." *Id.* at 25-26. The court declared, "[P]rayer to God alone does not rise to the level of protected religious belief," *Id.* at 26, and Rubin "failed to plausibly allege that she has sincerely held religious belief" in conflict with Mayo's testing mandate. *Id.* at 27. Her Title VII claim was dismissed. *Id.*

Finally, the district court dismissed all Appellants' Minnesota Human Rights Act claims because the MHRA does not provide a cognizable claim for an employer's failure to accommodate religious beliefs. *Id.* at 27-28.

## Summary of the Argument

Each of the Appellants, who are all Christians, had bona fide religious beliefs,[3] and pled them amply to support a claim of religious discrimination to defeat a motion

---

[3] The district court referred to the test for religious beliefs as whether the employee asserts a sincerely held religious belief, or as a "bona fide religious belief." The court also referred to the question at hand as whether the Appellants' beliefs were "religious

Appellate Case: 23-2996    Page: 25    Date Filed: 10/27/2023 Entry ID: 5330477

to dismiss.  The district court erred by misapplying the law on bona fide religious beliefs, and relied on several brand new, unreported, district court cases to support the dismissals.  The court should instead have applied long-established United States Supreme Court precedent, this Court's precedents, and applicable district court cases, to deny the motions to dismiss.

Kiel, Miller, and Ringhofer amply pled bona fide religious beliefs conflicting with Mayo's Vaccine Mandate, and should have received religious exemptions from vaccination.  Instead, Mayo denied their bona fide religious belief claims, and discriminatorily terminated them.

Ihde and Rubin properly pled their bona fide religious beliefs conflicted with testing.  Mayo denied Ihde's and Rubin's requests for religious exemptions and terminated them.

Kiel and Ringhofer pled they repeatedly "informed" Mayo of their bona fide religious beliefs, and Mayo admitted receiving and rejecting Kiel's and Ringhofer's requests for religious exemptions, and thanked them for submitting them.  Therefore, Mayo was "informed" of their bona fide religious beliefs.

The court held Ihde and Miller failed to administratively exhaust their religious discrimination rights because they filed their EEOC charges of religious discrimination *prior* to being terminated for refusing the vaccines.  The court erred,

---

in nature."  App. 7, 23; R. Doc. 62, at 7, 23.  They are all similar, and the district court used them synonymously.

because Mayo's Vaccine Mandate policy *required* vaccination or termination. By refusing vaccination after their requests for religious exemptions were denied, Ihde's and Miller's terminations were inevitable. Therefore, Mayo had reasonable notice of Ihde's and Miller's religious discrimination claims (from the EEOC charges), including termination.

Finally, the court erred in dismissing Appellants' MHRA claims on the basis that the MHRA claim for religious discrimination *does not* require reasonable accommodation. The MHRA claim *does* require reasonable accommodation, as recently determined by the Honorable Judge Patrick Schiltz of the District Court for the District of Minnesota in *Joey Lee Pl. v. Seasons Hospice, Def., Mary Robsahm and Kelly Moen Plts.* No. 22-CV-1593 (PJS/DJF), 2023 WL 6387794 (D. Minn. Sept. 29, 2023). Further, the MHRA is supposed to provide *more rights* to Minnesotans than does the federal counterpart, Title VII, which clearly requires reasonable accommodation.

## Arguments

**The applicable standard of review for a motion to dismiss is de novo.**

This Court will review a district court's dismissal of a complaint *de novo*, accepting as true the complaint's well-pleaded allegations and drawing all reasonable inferences in the plaintiffs' favor. *Thompson v. Harrie*, 59 F.4th 923, 926 (8th Cir. 2023).

## A. Appellants Kiel, Miller and Ringhofer's Bona Fide Religious Beliefs conflicted with an employment requirement (vaccination).

 "To establish a *prima facie* case of religious discrimination" under Title VII and the MHRA a plaintiff must show that he "(1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of this belief, and (3) was disciplined for failing to comply with the conflicting requirement." *Maroko v. Werner Enterprises, Inc.*, 778 F. Supp. 2d 993, 998 (D. Minn. 2011) (citing *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir.2003)); *Wilson v. U.S. W. Commc'ns*, 58 F.3d 1337, 1340 (8th Cir.1995).

The primary error was deciding the first element: whether the Appellants pled a "bona fide religious belief that conflicts with an employment requirement." App. 19; R. Doc. 62, at 19. The "employment requirement" was the Vaccine Mandate, which required Appellants to receive the vaccine, test, or be terminated. Appellants all had bona fide religious beliefs conflicting with Mayo's employment requirement that they vaccinate or test. The decision must be reversed.

### 1. Standard at Motion to Dismiss.

The district court erred by dismissing Appellants' claims on a Rule 12(b)(6) motion, where the court's inquiry "is limited to the facts alleged in the complaint, which we accept as true and view most favorably to the plaintiff." *Hartman v. Bowles*, 39 F.4th 544, 545 (8th Cir. 2022) (cleaned up); *see also Finn. v. All. Bank*, 860 N.W.2d 638, 653 (Minn. 2015); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir.

19

2001), *as corrected* (Mar. 27, 2001), *as corrected* (May 1, 2001) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). This also includes documents referenced in the complaint. *Moses.com Sec., Inc. v. Comprehensive Software Sys. Inc.*, 406 F.3d 1052, 1063 n. 3 (8th Cir. 2005).

The court "construe[s] [a] complaint liberally, "the complaint is sufficient if it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," and "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Warmington v. Board of Regents of Univ. of Minn.*, 998 F.3d 789, 795-96 (8th Cir. 1021) (other citations omitted).

"A complaint *shall not be dismissed* for its failure to state a claim upon which relief can be granted unless it appears *beyond a reasonable doubt* that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young*, 244 F.3d at 627 (emphasis added).

The pled allegations, and referenced documents, support Appellants' claims, and thus could not be construed to defeat Appellants' own claims. Each Appellant pled bona fide religious beliefs that met the pleading requirements for a motion to dismiss. The court erred deciding Appellants did not adequately plead bona fide religious beliefs.

Appellate Case: 23-2996     Page: 29     Date Filed: 10/27/2023 Entry ID: 5330477

### 2. It is not for a court at a motion to dismiss to decide a bona fide religious belief.

"For purposes of ruling on this Motion [to dismiss], the Court concludes that NUIHC is not merely challenging the sincerity of Rogers's religious beliefs. If NUIHC were simply challenging the *sincerity* of Rogers's religious beliefs on this Rule 12(b)(6) Motion, *such an argument would fail.*" *Rogers v. Nebraska Urb. Indian Health Coal., Inc.*, No. 8:22-CV-410, 2023 WL 2990720, at \*5 (D. Neb. Apr. 18, 2023) (emphasis added).

The reason is stated in many cases, including, *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) (recognizing whether something "is a sincerely held religious belief is a factual determination"); *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 752-53 (8th Cir. 1997) (noting "*[t]he jury had the duty* to determine whether [the defendant's] residence requirement interfered with the observance or practice of [the plaintiff's] religion or whether he chose to live elsewhere because of a purely personal preference") (emphasis added); *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions").

Appellants pled extensively their detailed Christian beliefs, the conflict, and Mayo's failure to engage in the obligated interactive process. The court erred in deciding element number one, bona fide religious beliefs were not pled.

### 3. The Definition of "bona fide religious beliefs" is exceedingly broad.

Under Title VII it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a). Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j); *Maroko v. Werner Enterprises, Inc.*, 778 F.Supp.2d 993, 1002 (D. Minn. 2011); *see also*, 29 C.F.R. §1605.1 ("[R]eligious practices … include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").

The determination of what is religion or religious belief is "a difficult and delicate task." *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981). Religious beliefs protected by Title VII need not be "acceptable, logical, consistent, or comprehensible to others...." *Thomas*, 450 U.S. at 714.

Courts, and employers, are not the correct arbiters of what is religion. Courts should refrain from determining what is, and what is not, a religious practice under Title VII in a way similar to the Supreme Court's admonition in *United States v. Seeger*, 380 U.S. 163, 184 (1965):

> … the very words of the statute ("<u>all aspects of religious observance and practice...</u>") <u>leave little room for...a limited interpretation</u>. Secondly, … to restrict the act to those practices which are mandated or prohibited by a tenet of the religion, would involve the court in determining not only what are the tenets of a particular religion, which by itself perhaps would not be beyond the province of the court, but would frequently require the courts to decide whether a particular practice is or is not required by the

Appellate Case: 23-2996     Page: 31     Date Filed: 10/27/2023 Entry ID: 5330477

tenets of the religion. We find such a judicial determination to be irreconcilable with the warning issued by the Supreme Court in *Fowler v. Rhode Island*, 345 U.S. 67, 70, 73 (1953), '[I]t is no business of courts to say ... what is a religious practice or activity ...'

*Redmond v. GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978) (emphasis added) (quoting *Seeger*, 380 U.S. at 184).

Setting forth a bona fide religious belief is a low standard: "keeping in mind that the threshold for establishing the religious nature of his beliefs is low…" *U.S. v. Meyer*, 95 F.3d 1975, 1482-1483 (10th Cir 1996).

The EEOC regulations confirm this broad reading, for example in, FAQ L.2 which states that under Title VII, "*an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances* […] The *sincerity of an employee's stated religious beliefs, practices, or observances is usually not in dispute*."[4]  The employee's sincerity in holding a religious belief is "*largely a matter of individual credibility*."[5]

The "claim of the [individual] that his belief is an essential part of a religious faith must be given great weight" and "[t]he validity of what he believes cannot be questioned." *Seeger*, 380 U.S. at 184. "Men may believe what they cannot prove. They

---

[4] *What you Should Know about COVID-19 and the ADA, the Rehabilitation Act, and other EEO Laws*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited Oct. 23, 2023) ("EEOC Guidance").
[5] *Id.*

may not be put to the proof of their religious beliefs or doctrines." *Seeger*, 380 U.S. at 184 (quoting *United States v. Ballard*, 322 U.S. 78, 86 (1944)).

Therefore, Appellants must show the belief is "'sincerely held'" and "'religious' in [his or her] own scheme of things." *Thomas*, 450 U.S. at 707. The United States Supreme Court and a lower court have recently reaffirmed the precedence of religious beliefs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (recognizing sincerely held religious beliefs conflict with health insurance mandating birth control coverage); *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021) (recognizing sincerely held religious beliefs in conflict with city's foster parent policy); *EEOC v. Kroger Limited Partnership*, 608 F.Supp.3d 757, 778-781 (E.D. Ark. 2023) (holding that *Hobby Lobby* and *Fulton* require a case-by-case analysis, and recognizing a rational juror could conclude that certain clothing requirements support political causes contrary to sincerely held beliefs).

Appellants have met the low threshold, and courts and employers may not simply declare their interpretation of Appellants' religious beliefs.

Some courts focus on whether the belief is "religious in nature," *see, e.g. EEOC*, 608 F. Supp. 3d at 777; App. 23; R. Doc. 62, at 23, in analyzing the first *Jones* element. However, as set forth above, it is essentially the same as "bona fide religious beliefs," or "sincerely held religious beliefs." Even wording it "religious in nature," "religion" starts broadly defined, including "*all aspects of religious observance and practice, as well as belief.*" The phrase "religious in nature," broadens this broad definition of "religion,"

because the "beliefs" only have to be "religious in nature." To have the "nature" of something is to have "the essential character of a thing." *Webster's New World Dictionary* 948 (David B. Guralnik, ed., 2nd ed., Simon and Schuster 1982). Thus, a belief "religious in nature" only has to have the "essential character" of religion. Appellants met this and all other bona fide religious beliefs tests.

Further, the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Warmington*, 998 F.3d at 795-96. Parsing "is inappropriate on a motion to dismiss, where the non-moving party receives the benefits of the inferences." *Leimkuehler v. Am. United Life Ins. Co.*, No. 1:10-CV-00333-JMS, 2011 WL 1565887, at *5 (S.D. Ind. Apr. 25, 2011).

### B. Kiel, Miller and Ringhofer Amply Pled Bona Fide Religious Beliefs; The District Court's Dismissal Must be Reversed.

The standards against which the district court weighs appellants' beliefs therefore included: 1) at a motion to dismiss *all* pled facts are *accepted as true*, and all *inferences* are construed in Appellants' favor; 2) at a motion to dismiss the court is *not to make factual determinations*, and whether a belief is a bona fide religious belief is a factual issue; and 3) the definition of religious beliefs under Title VII is very broad. "[This Court] has held that the First Amendment's and Title VII's protections of 'religious activity' are, at a minimum, coextensive." *EEOC*, 608 F.Supp.3d at 797, Fn. 139 (citing *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 654 (8th Cir. 1995)).

25

## 1. Kiel Pled Bona Fide Religious Beliefs.

The court dismissed Kiel's Title VII claim "*because she did not adequately plead a sincerely held religious belief in opposition to Mayo's policy.*" App. 3; R. Doc. 62, at 3. But, if the belief is *sincerely held* and is *religious in the plaintiff's scheme of things*, the belief is religious regardless of whether it is "acceptable, logical, consistent, or comprehensible to others," including the district court. *Thomas*, 450 U.S. at 714.

Kiel pled she "objected to receiving these vaccinations because of her sincerely-held religious beliefs." *See* App. 112, 114, 122-23, 128, 130; R. Doc. 32, at 1, 3, 11-12, 17, 19 (¶¶1, 13, 52, 75, 89). Kiel pled she "is a Christian" and "believes, based on her interpretation of Scripture, that her body is a Temple to the Holy Spirit and it violates her religious beliefs and conscience to take the Covid-19 vaccine." She pled she "must protect her body, God's Temple, and cannot put into it substances which are impure or dangerous." Her "religious beliefs prevent her" from putting "the Covid-19 vaccines" into her body because the available vaccines were "produced with or tested with cells from aborted human babies." Receiving the vaccine would "make her a participant in the abortion that killed the unborn baby." *Id.* (¶13). All of this deeply offended her bona fide religious beliefs.

In response to her thorough pleading, the district court committed error after error. At page 20 of the Order, the district court, cited *Petermann v. Aspirus* No. 22-332, 2023 WL 2662899 at * 2 (W.D. Wi. Mar. 28, 2023), which the court stated

Appellate Case: 23-2996    Page: 35    Date Filed: 10/27/2023 Entry ID: 5330477

"persuasively explained" that a "religious belief that the body is a temple of God is not itself inconsistent with receiving a vaccine." App. 20; R. Doc. 62, at 20.

This is not the law. Kiel pled *her religious beliefs* cause her to believe her "body is a temple," and "violates her religious beliefs and conscience to take the Covid-19 vaccine." App. 114; R. Doc. 32, at 3 (¶13). This ends the judicial inquiry. United States Supreme Court cases hold that "resolution of whether a belief is religious does 'not turn upon a judicial perception of the particular belief or practice in question." *Thomas*, 450 U.S. at 714; *see also Seeger*, 380 U.S. at 184-85 (courts should not attempt to assess a parties' asserted belief's "truth" or "validity," the individual's "claim … that his belief is an essential part of a religious faith must be given great weight," and "[t]he validity of what he believes cannot be questioned." *Seeger*, 380 U.S. at 184. In short, Kiel gets to "claim" her religious beliefs, not have them dictated by the court or her employer

The district court violated all these principles. The court did not give "great weight" to Kiel's belief; rather the court simply disagreed with Kiel and dictated her beliefs.

The district court did not stop there but piled on additional errors. It stated: "many people hold that belief [that her body is a Temple to God] without also believing that receiving a vaccine defiles the body." App. 20; R. Doc. 62, at 20. The district court erred because it is clear, long-standing law that it does not matter what the court believes "*many [other] people hold.*" The Supreme Court in *Frazee v. Illinois*

27

*Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989), held "there are assorted Christian denominations that do not profess to be compelled by their religion to refuse Sunday work, *but this does not diminish Frazee's protection flowing from the Free Exercise Clause. Thomas settled that much.*" *Frazee*, 489 U.S. at 834 (emphasis added). Not all religious believers have to have the same beliefs; some may adhere more strongly, or more consistently to their beliefs than others. "*[T]he guarantee of the Free Exercise Clause is 'not limited to beliefs which are shared by all of the members of a religious sect.*" *Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (quoting *Thomas*, 450 U.S. at 715-16).

In *Hobby Lobby*, Justice Alito, noted it was "not for [the court] to say that [the litigant's] religious beliefs are mistaken or insubstantial"; rather, the court's "'narrow function ... in this context is to determine' whether the line drawn reflects 'an honest conviction.'" *Hobby Lobby*, 573 U.S. at 686 (quoting *Thomas*, 450 U.S. at 716). Kiel expressed "honest convictions" that she could not, consistent with her religious beliefs, take the vaccine. It is not for the district court, or for Mayo before that, to tell Kiel what her beliefs are, or should be. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1247-48 (11th Cir. 2019) (plaintiff's assertion of sincerely held religious beliefs not subject to a "probing inquiry.").

The district court improperly stated: "the important question isn't whether an employee has a religious belief not to mistreat her body; the question is whether the employee's belief that the vaccine qualifies as a mistreatment is itself based in religion." App. 20; R. Doc. 62, at 20. But Kiel pled her belief that taking the vaccine

is wrong based on her religion. *See* App. 114; R. Doc. 32, at 3 (¶13). The district court substituted its beliefs in place of Kiel's; the court dictated to Kiel what an acceptable belief is, and what it, the district court, believes are the true bases for Kiel's beliefs.

The court continued dictating to Kiel her beliefs, again citing *Petermann*, favorably, in its explanation: "If [plaintiff] believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious objection," then, "[b]ecause this objection appears rooted in her belief that the vaccine is unhealthy or unsafe, which is not itself a religious belief, it does not satisfy the first *Jones* element." App. 20; R. Doc. 62, at 20.

Kiel pled she believes substances or vaccines which "defile" her body, whether it is because they are "unhealthy or unsafe" or otherwise, *are* rooted in her religious beliefs. Kiel can name her own beliefs (*Seeger*), without court intervention or the court taking over that process. Kiel pled her body is holy and is a temple, based on her religious beliefs, and it prohibits her from putting unhealthy or unsafe substances or vaccines into her body because that violates her promises to God not to defile her temple. The court is supposed to honor Kiel's beliefs; not fight her on them.

The U.S. Economic and Employment Occupation Commission ("EEOC") guidelines provide when there is a conflict between a religious belief and an employer's requirement, an employer may ask an employee to "explain the religious

nature of the practice and the way in which it conflicts with a work requirement.[6]  In determining if a conflict exists, "it is irrelevant that the employer [or court] does not view the work requirement as implicating a religious belief, or that most people of the applicant's or employee's faith would not—*it is the applicant's or employee's own religious beliefs that are relevant*."[7] (emphasis added).

The EEOC recognizes beliefs can be religious *and* consider safety or medical concerns: the "*overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching*"[8] (emphasis added).  Thus, religious beliefs can "overlap" with what might appear to be non-religious, and the court is only to determine if Kiel's beliefs are part of a "comprehensive religious belief system."  Her Christian beliefs, based on Scripture, and two thousand years of practice and development, are "comprehensive."  Just as *Seeger* counsels, Appellants get to describe their own religious beliefs, and they are not simplistically separated as either religious or non-religious. Appellants have alleged several objections to the Covid-19 vaccinations, which do not undermine or negate religious based objections to the vaccines.

---

[6] Appellants all pled that Mayo did none of this; engaged in no "interactive process" to determine anything about Appellants' beliefs.

[7] *Section 12: Religious Discrimination*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (last visited Oct. 23, 2023).

[8] EEOC Guidance.

Further, to religious believers, their religious beliefs inform all areas of their life, and cannot be separated into little boxes or silos. "By its nature, religion—in the comprehensive sense in which the Constitution uses that word—is an aspect of human thought and action which *profoundly relates the life* of man to the world in which he lives. *Religious beliefs pervade*, and religious institutions have traditionally regulated, *virtually all human activity*." *McGowan v. Maryland*, 366 U.S. 420, 461 (1961) (Frankfurter, J., concurring) (emphasis added).

"The fact is that, for good or ill, nearly everything in our culture worth transmitting, everything which gives meaning to life, is saturated with religious influences." *Stone v. Graham*, 449 U.S. 39, 45, 46 (1980) (Rehnquist, J., dissenting).

"Few beliefs are entirely isolated from a belief system, and there are not always bright lines that would readily sort beliefs into the categories of "religious" and "non-religious." *Together Employees v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 440 (D. Mass. 2021), S.C., 32 F.4th 82 (1st Cir. 2022).

"Freedom of worship … is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order." *West Virginia Bd of Ed. V. Barnette*, 319 U.S. 624, 638 (1943).

The district court used words like "personal" (App. 4, 17, 26 R. Doc. 62, at 4, 17, 26), "medical" (*Id.* at 4, 20, 23), "unhealthy or unsafe" (*Id.* at 20, 23), "preference" (*Id.* at 17) and "formulaic" (*Id.* at 22), to diminish Appellants' stated religious beliefs.

There are no bright lines which sort beliefs into "religious" and "non-religious" categories. Appellants' religious beliefs "profoundly relate" to all areas of their lives and "pervade" virtually all of their human activity.

The district court acknowledged Kiel's "religious beliefs prevent her from putting into her body the Covid-19 vaccines which are available, because they were all produced with or tested with the cells from aborted human babies," and receiving the vaccine "would make her a participant in the abortion that killed the unborn baby." App. 21; R. Doc. 62, at 21 (citing App. 114; R. Doc. 32, at 3 (¶13)). This should have ended any challenge to Kiel's beliefs.

The court disregarded Kiel's objection stating "many Christians who oppose abortion still receive vaccines." App. 21; R. Doc. 62, at 21. The court's opinion violates United States Supreme Court authority rejecting the notion that a party's claimed religious beliefs must match everyone else's religious beliefs. *Holt*, 574 U.S. 352, 562 (citing *Thomas*, 450 U.S. at 715-16 (1981) ([T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.") See also, *Dockery v. Maryville Acad.*, 379 F. Supp. 3d 704, 714 (N.D. Ill. 2019) (It is not necessary for the plaintiff to prove that the religious practice is followed by all members of his particular faith); *EEOC v. Red Robin Gourmet Burgers, Inc.*, 2005 WL 2090677 (W. D. Wash. Aug. 29, 2005). For example, some Jews or Christians work on the Sabbath but that does not undermine the belief of those who refuse to. It does not matter if other Christians "receive vaccines."

An "employer also should not assume that an employee is insincere simply because some of his or her practices deviate from, the commonly followed tenets of his or her religion." *EEOC v. Abercrombie* 731 F.3d 1106, 1118 (10th Cir 2013), reversed and remanded, 575 U.S. 768 (2015) (reversed on other grounds).

It is *not necessary* that the employee "must … subscribe to [a church's] full menu of orthodox beliefs." *See Seshadri v. Kasraian*, 130 F.3d 798, 800 (7th Cir. 1997). Nor must a religious objection be found in a tenet or dogma of an established religious sect in order to be protected.

The court stated Kiel's opposition to abortion "has not been tied to religion." App. 21; R. Doc. 62, at 21. The court ignored Kiel's "tying", including that "receiving the vaccine would make her a participant in the abortion that killed the unborn baby," (citing App. 114; R. Doc. 32, at 3 (¶13)); to her a violation of the Commandment Thou Shall Not Kill. Kiel "tied" her beliefs to religion; the district court erred.

The district court's reliance on *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3rd Cir. 1981), is especially misplaced. The district court cited *Africa* to support Kiel's failure to "tie" conclusion. App. 21-22; R. Doc. 62, at 21-22. However, the "tie" is obvious because Kiel pled taking the vaccine "tied" her to the abortion from which the cells to produce or test the vaccines came. *Id.* at 21. *Africa* is off-point for other reasons also.

In *Africa*, the court found the plaintiff's beliefs were not bona fide religious beliefs because they were not even based on religion. In *Africa*, the plaintiff prisoner

33

professed belief in the "Church of MOVE," under which he claimed the prison was obliged to feed him only raw vegetables. *Africa*, 662 F.2d at 1026. The "Church of MOVE" apparently had adherents only in prison. *Id.* The Court in *Africa* ruled the plaintiffs had not established sincerely held religious beliefs, because the "Church of MOVE" was not a religion at all, because the Church of MOVE had no ultimate ideas, no fundamental concerns, no belief in a deity, and no "formal or external signs" of a religion. *Id.* at 1033.

Since the Church of MOVE was not a religion, it could not be the source of "bona fide religious beliefs." *Id.* at 1032. *Africa* has no factual similarity to Appellants' cases, where Christianity has countless "formal and external signs," belief in ultimate ideas, fundamental concerns, and a belief in a deity, proving it is actually a religion and gives rise to bona fide religious beliefs. The district court ignored Kiel's pleading and "tying" of her religious beliefs to her opposition to abortion.

The district court relied on *Winans v. Cox Automotive, Inc.*, No. 22-3826, 2023 WL 2975872 (Apr. 17, 2023), for support that Appellant's pled religious beliefs do not "tie" her beliefs to religion. App. 21; R. Doc. 62, at 21. *Winans*, in addition to being a very recent, unreported case ignoring decades of precedent, is factually different because the *Winans* court found the complaint did not identify *why* Plaintiff objected to the use of fetal cell lines in the development of the Covid-19 vaccine. Plaintiff did not link the "sincere concerns" with fetal cells to his religion; it merely asserts fetal

cell lines were, in fact, used by vaccine developers. *Winans v. Cox Automotive, Inc.*, No. 22-3826, 2023 WL 2975872, at \*4 (Apr. 17, 2023).

Thus, *Winans* is not authoritative here, because each Appellant pled and explained their Christian religious beliefs thoroughly, and identified conflicts between their religious beliefs and vaccination or testing, making them complicit in killing an unborn human baby, and putting harmful substances into their bodies.

*Troulliet v. Gray Media Grp., Inc.*, No. 22-5256, 2023 WL2894707 (E.D. La. Apr. 11, 2023), is distinguishable for the same reason as *Winans*. Despite all of these failures, the plaintiff in *Troulliet* was still allowed to amend her complaint to allege she held a bona fide religious belief. *Troulliet*, at \*3-5.

Thus, *Africa, Winans*, and *Troulliet*, are not factually similar or instructive, and *Passarella v. Aspirus, Inc.*, No. 22-287, 2023 WL2455681 (W.D. Wis, March 10, 2023) is on appeal in the Seventh Circuit. The *Passarella* court also allowed the religious discrimination claims of one of the Plaintiffs (Clutter) to proceed.

The district court ignored Supreme Court precedent, and instead cited unpublished district court cases from the last one to two years—as if the law relating to sincerely held religious beliefs just developed at the same time as the Covid-19 pandemic, and effectively overturned many decades of Supreme Court precedent.

## 2. Miller Sufficiently Pled Bona Fide Religious Beliefs.

Miller's bona fide religious beliefs are nearly identical to Kiel's, but Miller also emphasized she "lives her life according to her sincerely held religious beliefs," puts

35

them into practice in "her neo-natal nursing," and believes taking the vaccine would make her complicit in killing an unborn baby.  App. 148; R. Doc. 26, at 3 (¶11). Miller's religious beliefs "pervade," "regulate" and "saturate" her life "giving meaning" to her work.  Miller pled she lives her life according to her religious beliefs, providing additional proof of her bona fide religious beliefs. *McGowan*, 366 U.S. at 461.

### 3.  Ringhofer Amply Pled His Bona Fide Religious Beliefs.

The court erred dismissing Ringhofer's Title VII claim for similar reasons as Kiel's claims: because "his opposition to the vaccine is a personal medical judgment, not a religious belief."  App. 4; R. Doc. 62, at 4.  The court stated Ringhofer's "claim to relief under Title VII for failure to accommodate is a closer call."  App. 22; R. Doc. 62, at 22.

Because of Ringhofer's pled facts, it should not have been "close" at all. Ringhofer pled clearly bona fide religious beliefs, similar to Kiel and Miller. Additionally, Mayo had *previously granted* Ringhofer a religious exemption from the flu vaccine, which Mayo could not have done unless Mayo recognized Ringhofer's bona fide religious belief.  App. 203-04; R. Doc. 21, at 13-14 (¶15).  Mayo did not explain its recognition of Ringhofer's bona fide religious beliefs as to the flu vaccine, but denial of them as to the Covid-19 vaccine.

Ringhofer pled he is a Christian and believes, based on Scripture that his body is a Temple to the Holy Spirit and the Vaccine Mandate violates his religious beliefs

36

and conscience to take the Covid-19 vaccine because the vaccines were produced with or tested with fetal cell lines. App. 198; R. Doc. 21, at 8 (¶30). He consistently lives his life according to his prayer life and Biblically based beliefs.

The district court cited approvingly many of Ringhofer's facts (App. 10-11; R. Doc. 62, at 10-11), but then reached an inconsistent result. App. 22-24; R. Doc. 62, at 22-24. The court held Ringhofer "has not alleged that his opposition to the vaccine is religious in nature," and that there are "many allegations" that "demonstrate that his opposition to the vaccine is based on personal medical judgment," App. 23; R. Doc. 62, at 23, and a 'purely personal preference.'" App. 17; R. Doc. 62, at 17. The district court cited as support *Vetter*, 120 F.3d 749. App. 17; R. Doc. 62, at 17. In *Vetter*, plaintiff alleged religious discrimination because of a residency requirement: the Farmland plant workers were required to live in the county where the plant was located. Plaintiff, a Jewish person, did not want to live in the rural county far from any synagogue, and claimed the residency requirement violated Title VII. *After trial* (not a motion to dismiss), the Court held whether employer's requirement employee live in a particular county interfered with employee's religious observance or practice, in violation of Title VII, or whether he lived elsewhere because of a *purely personal preference*, was a jury question. *Vetter*, 120 F.3d 749 (8th Cir. 1997). That is different from Appellants' religious beliefs, which prohibited them from taking the vaccines because they violated their Godly temple, and made them participants in the abortion process in violation of the Commandment Thou Shall Not Kill.

37

*Vetter* is not authority that: 1) Ringhofer's beliefs are not sincerely held, or 2) that Mayo does not have to accommodate Appellants' beliefs, or 3) that Appellants' opposition to the Covid-19 vaccines are "purely" non-religious. The *Vetter* court confirmed these are all *fact questions*, which is also Appellants' assertions here.

The district court seized upon Ringhofer's wording "that it is his 'choice' whether to receive vaccines." App. 24; R. Doc. 62, at 24. "[T]hat Ringhofer can choose to accept the vaccine suggests that his religion is not in direct opposition to vaccination." *Id.* (citing *Jones*, 319 F.3d at 359).

Ringhofer's reference to "choice," at most demonstrates a material fact issue. He, like other Christians who opted not to work on Sundays or submit to the draft in cases past, could have chosen like other Christians to go along and get the vaccine, but instead he chose to refuse the vaccine. His "choice" was exercised differently than other Christians, just like the cases on selective service and Sunday work.

### 4. Ihde and Rubin Pled Bona Fide Religious Beliefs that conflicted with testing.

The analysis for Ihde and Rubin is the same as for Kiel, Miller, and Ringhofer, and the district court erred for the same reasons. So long as the belief is sincerely-held and is religious in the plaintiff's scheme of things, the belief is religious regardless of whether it is "acceptable, logical, consistent, or comprehensible to others." *Thomas*, 450 U.S. at 714.

Appellate Case: 23-2996    Page: 47    Date Filed: 10/27/2023 Entry ID: 5330477

The district court admitted each Appellant is a "Christian, and each asserts that it violates their sincerely held religious beliefs and conscience to receive the Covid-19 vaccine and/or undergo weekly Covid-19 testing." App. 7; R. Doc. 62, at 7. Rubin also pled that "the Holy Spirit dwells in her and she believes her body is a temple for the Holy Spirit that she is duty bound to honor. She does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary. Accordingly, it violates her conscience to take the vaccine or to engage in weekly testing or sign a release of information that gives out her medical information." App. 234, 240; R. Doc. 20, at 3, 9 (¶¶13, 35-36). Rubin met the low test for establishing bona fide religious beliefs, just as the other appellants did.

Mayo granted Rubin's request for a religious exemption from vaccination, but not for testing. App. 24; R. Doc. 62, at 24. There is no logical reason why a bona fide religious belief conflicting with vaccination is not also a bona fide religious belief conflicting with testing.

Instead, the district court held that "Rubin does not explain how weekly Covid-19 testing would cause harm to her body," which the court expressed "suggests that her objection to weekly testing is simply a personal medical preference." App. 25; R. Doc. 62, at 25. According to the district court's "harm" analysis, Rubin must articulate how the testing "would cause harm to her body." But the district court throughout its opinion held that if a plaintiff *does* identify "harm to her body," that is

39

proof that the objection is merely *medical or safety*, and therefore not religious. App. 23; R. Doc. 62, at 23 (denying Ringhofer's claim of bona fide religious beliefs because "[t]here are many allegations in his complaint that demonstrate that his opposition to the vaccine is based on personal medical judgment"); App. 20; R. Doc. 62, at 20 (denying Kiel's claim of bona fide religious beliefs because her "objection appears rooted in her belief that the vaccine is unhealthy or unsafe … [which] is not itself a religious belief").

Thus, the district court held against Rubin for not explaining how the "testing would cause harm to her body," but the district court had previously inconsistently decided that "harm to her body" is proof that it is "simply a personal medical preference." According to the court's reasoning, bodily harm shows it is merely a "personal medical preference;" and no bodily harm is also proof that it is merely "personal medical preference." The district court's reasoning effectively created a Catch-22 where proof of bodily harm would result in Rubin losing either way.

The district court also criticized Rubin because she "cites no religious tenets for this presumption," and cited *Boone v. Ill. Dep't Corr.*, No. 21-3229, 2022 WL 17083394, at 5 (C.D. Ill. Nov. 18, 2022) *reconsideration denied* No. 21-CV-3229-JES-JEH, 2023 WL 1529411 (C.D. Ill. Feb. 3, 2023), *and rev'd and remanded*, 71 F.4th 622 (7th Cir. 2023), App. 25; R. Doc. 62, at 25. It is a clear violation of law to demand that Plaintiff prove to the court's satisfaction the religious 'tenets' supporting her beliefs. *See Frazee*, 489

Appellate Case: 23-2996   Page: 49   Date Filed: 10/27/2023 Entry ID: 5330477

U.S. at 834; *Thomas*, 450 U.S. at 715; *Holt* 574 U.S. at 362; *EEOC* 731 F.3d at 1118;

*Sechadri*, 130 F.3d at 800.

The district court also found Rubin relied upon her "conscience," but not her religious beliefs. App. 26; R. Doc. 62, at 26; *see also id.* at 11. In distinguishing "conscience" objections from "religious" objections, the district court erred because Rubin's "religious beliefs" and her "conscience" are tied together, as stated in *Seeger*, and confirmed in *Welsh v. U.S.*:

> Most of the great religions of today and of the past have embodied the idea of a Supreme Being or a Supreme Reality—a God—who communicates to man in some way a consciousness of what is right and should be done, of what is wrong and therefore should be shunned. If an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual 'a place parallel to that filled by * * * God' in traditionally religious persons. Because his beliefs function as a religion in his life, such an individual is as much entitled to a 'religious' conscientious objector exemption under s 6(j) as is someone who derives his conscientious opposition to war from traditional religious convictions.

*Welsh v. United States*, 398 U.S. 333, 339-40 (1970).

"Religious belief arises from a sense of the inadequacy of reason as a means of relating the individual to his fellow-men * * * (It) may justly be regarded as a response of the individual to an inward mentor, call it *conscience or God*, that is for many persons at the present time the equivalent of what has always been thought a religious

impulse." *United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943); *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 658-59 (1943).

Appellants' religious beliefs are tied with conscience, and the district court's recognition of Rubin's conscience is an admission of bona fide religious beliefs. It is not appropriate at a motion to dismiss to hold they assertion of "conscience" proves absence of a religious belief.

### C. Appellants Kiel and Ringhofer met the second factor, that they "informed" Mayo of their sincerely held religious beliefs.

The court also held that Kiel and Ringhofer did not "allege sufficient facts supporting the second *Jones* Factor: that they *informed* Mayo of their sincerely held religious belief." App. 21-22, 24; R. Doc. 62, at 21-22, 24 (emphasis added). But Kiel and Ringhofer pled repeatedly they "informed" Mayo of the conflict between their religious beliefs and the Vaccine Mandate. App. 112, 114, 120-21; R. Doc. 32, at 1, 3, 9-10 (¶¶1, 12, 36, 44); App. 191, 198, 200, 202; R. Doc. 21, at 1, 8, 10, 12 (¶¶1, 29, 38, 48).

Kiel and Ringhofer pled they sent their religious exemption requests to Mayo, and Mayo *refused* them, which are admissions that Mayo was not just "aware," but actually *received* and was "*informed*" of the requests for religious exemptions. App. 112-14, 118-19; R. Doc. 32, at 1-3, 7-8 (¶¶1-2, 12, 30, 34); App. 191, 198, 200, 202; R. Doc. 21, at 1, 8, 10, 12 (¶¶1, 29, 36, 47-48). In order for Mayo to deny the exemptions, it must first have received them. It cannot be otherwise. By "receiving"

42

Kiel and Ringhofer's requests for religious exemptions and requests for reconsideration, Mayo was "informed," at least twice. Moreover, Mayo *thanked* Appellants Kiel and Ringhofer for sending their requests for religious exemptions as pled. App. 120; R. Doc. 32, at 9 (¶40); App. 201; R. Doc. 21, at 11 (¶43).

"Subsequent to *Jones*, the Supreme Court lowered the Plaintiff's burden on the second prong and that "it is sufficient to prove that the employer was in some way aware of the employee's need for accommodation." *Kroger*, 608 F.Supp.3d. 757, 776, Fn. 126 (E.D. Ark. 2022). Mayo was clearly "aware" of Appellant's religious beliefs. The district court erred holding Kiel and Ringhofer did not "inform Mayo of their sincerely held religious beliefs." Mayo denied the requests, and refused to ask any follow up questions or engage in an "individual interactive process." App. 112, 120-22; R. Doc. 32, at 1, 9-11 (¶¶1, 41-42, 47); App. 192-92, 201-02; R. Doc. 21, at 1-2, 11-12 (¶¶1, 44-46). There is nothing on the record to support the conclusion that Mayo was not "informed."

## III. Appellants Ihde and Miller Administratively Exhausted their Claims.

The legal issue of the proper reach of a Title VII claim is reviewed de novo. *Nichols v. American Nat. Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998) (internal citations omitted).

43

The district court held Ihde and Miller "*failed to administratively exhaust those claims*" because they filed their charges of religious discrimination with EEOC prior to their terminations. App. 3; R. Doc. 62, at 3; *see also Id.* at 14-17.

It is crucial that Mayo's Vaccine Mandate required vaccination, *or* receipt of an exemption, religious or medical. Without receipt of the vaccination or an exemption, Ihde's and Millers' terminations were inevitable; Mayo's policy required it. Once Appellants' requests for religious exemptions were denied, termination was inevitable. Appellants' religious exemptions were denied, then they filed their EEOC charges of religious discrimination, and then they were terminated. The issue is whether their EEOC charges alleging religious discrimination reasonably related to, and put Mayo on notice of religious discrimination for the inevitable termination, the test under *Nichols* and other Eighth Circuit cases.

The district court cited *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) as authority that Ihde and Miller did not exhaust administrative procedures. App. 14-17; R. Doc. 62, at 14-17. However, the court misapplied established precedent by the Supreme Court and this Court which hold discriminatory acts which result in termination of employment happen when they are *communicated*, not when the harm and termination actually occur. Since Mayo communicated its decision to terminate Ihde and Miller *prior* to their EEOC filings, and Mayo's policy required termination, their terminations were inevitable. Therefore, the termination for religious discrimination reasonably related to the EEOC charge already filed.

44

In *Delaware State Coll. v. Ricks*, the court determined that termination occurred at the time the decision to not extend tenure had been made to the plaintiff. 449 U.S. 250, 257-58 (1980). The court reasoned, "termination of employment [at defendant's] is a delayed, *but inevitable*, consequence of the denial of tenure." *Id.* (emphasis added) (internal citations and quotation marks omitted). The Supreme Court found the board's policy, contained in a letter, to be instructive:

> "[…] the Board has no choice but to follow actions according to its official position prior to the grievance process, and thus notify you of its intent not to renew your contract at the end of the 1974-75 school year.

*Id.* at 253-54, n.2.

This Court follows the Supreme Court's reasoning, and *Morgan* changed nothing. In the pre-*Morgan* case *Cooper v. St. Cloud State Univ.*, 226 F.3d 964 (8th Cir. 2000), the court found that a professor was terminated on the day the plaintiff was notified about the tenure decision, because termination *was the inevitable effect*. 226 F.3d 964, 967-68 (8th Cir. 2000) (citing *Ricks*, 449 U.S. 250). Likewise, in the post-*Morgan* case *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1082 (8th Cir. 2018), this Court cited *Ricks* (discrete discriminatory acts) and *Chardon v. Fernandez*, 454 U.S. 6 (1981) (per curiam) (ongoing discriminatory acts) and held that the alleged discriminatory act of giving persons in town inferior and more expensive sewer systems because of their race happened *when the decision was made* and communicated. *Humphrey*, 891 F.3d at 1082.

45

Both the Supreme Court and this Court have held that termination is a discrete act that occurs at the time termination is *communicated*, even if actual termination occurs later. Similarly, Ihde and Miller refused the vaccine, and sought but were denied religious exemptions. At that point, their terminations were inevitable. They filed religious discrimination claims with the EEOC, and then they were actually terminated.

*Richter v. Advance Auto Parts*, 686 F.3d 847 (8th Cir. 2012), relied on by the district court, at App. 16-17; R. Doc. 62, at 16-17, does not stand for the broad proposition that the reasonably related standard from *Nichols* was abandoned. Instead, *Richter*, held much differently that a state-law *retaliation claim* is not exhausted by an EEOC charge of *race and sex discrimination*. *Richter*, 686 F.3d at 854.

Accordingly, Title VII lawsuits must be interpreted broadly: 1) plaintiffs may seek relief that grows out of it; and, 2) plaintiff may seek relief if it is like or reasonably related to the substance of the charge. *See Nichols*, 154 F.3d at 886-87 (internal citations and quotation marks omitted).

The district court misunderstood and misapplied *Richter* and *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003), asserting they stand for the proposition that the exhaustion requirement is "equally applicable to discrete claims based on incidents occurring **after** the filing of Plaintiffs charge as it is to discrete claims that occurred before a charge is filed." App. 16-71; R. Doc. 62, at 16-17 (emphasis in original) (internal quotation marks omitted) (citing *Richter*, 686 F.3d at 852-53 (quoting

46

*Martinez*, 347 F.3d at 1210-11)).  This Court has explicitly rejected that.  *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 673 (8th Cir. 2006) ("some [other] courts have concluded that the rule applies with equal force to discrete acts of discrimination that occur subsequent to a timely filed EEOC charge. […] [But] we have not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted") (internal citations omitted).

Ihde's and Miller's cases involve religious discrimination brought *before* termination, which *Richter* does not address.  In fact, *Wedow* clarified: "*retaliation* claims are not reasonably related to underlying discrimination claims."  *Wedow*, 442 F.3d at 672 (emphasis added, internal citations and quotation marks omitted).  But *Wedow* bolsters Appellants' claims: "We have *consistently* held that '[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought,'" such that notice is provided.  *Wedow*, 442 F.3d at 672 (internal citations omitted).  Further, "subsequently-filed lawsuits [are not required to] mirror the administrative charges as long as the sweep of any subsequent judicial complaint is no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint."  *Id.* at 674 (internal citations and quotation marks omitted); *Duncan v. Delta Consol. Indus. Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004).

Here, Appellants complained, and Mayo had notice, of religious discrimination. An EEOC investigation would have revealed religious discrimination and subsequent termination. Appellants' claims involve the same parties, the same Vaccine Mandate, the same refusal to take the vaccine, and the same adverse employment effect— termination required by Mayo's policy. *See Ricks*, 449 U.S. at 257-58; *Cooper*, 226 F.3d at 967-68; *Humphrey*, 891 F.3d at 1082 (holding that plaintiffs' were wronged when defendants communicated their intention to terminate/build inferior sewer systems). It is not necessary for the wronged party to continually update its EEOC filings for the same *occurrence*. The court erred when it granted the defendant's motion for summary judgment, and this Court should reverse.

## IV. Appellants' MHRA Claims are Recognized and Require Mayo to Reasonably Accommodate Appellants' Bona Fide Religious Beliefs.

The court dismissed Plaintiffs' religious discrimination claims under MHRA because they are based on failure to accommodate, which is not a cognizable claim under the MHRA. App. 4, 26-27; R. Doc. 62, at 4, 26-27. The Court cited the several months-old decision, *Balow v. Olmsted Medical Ctr.*, No. CV-22-1668, 2023 WL 2776028, at *3 (D. Minn. Apr 4, 2023). This Court should not follow *Balow*.[9]

The more recent case, *Lee v. Seasons Hospice*, No. 22-CV-1593, 2023 WL 6387794 reached the opposite result as *Balow*, with better reasoning. *Lee* held "the

---

[9] *Balow* is also a case where the defendant did not even move to dismiss the Title VII claims of the five plaintiffs, who pled sincerely held religious beliefs on similar grounds to Appellants.

48

MHRA does indeed require employers to reasonably accommodate the religious practices of their employees." *Lee* at 5. *Lee* found the Minnesota and federal courts applying Minnesota law "recognized the 'substantial similarities' between the MHRA and Title VII, "routinely apply Title VII case law when analyzing MHRA claims," and the "federal and states provisions regarding religious discrimination are almost identical." *Id.* at 5-6.

 *Lee* found the MHRA is a remedial act, and courts are to "'construe[ ] liberally' ... in order to accomplish its purpose of 'secur[ing] for persons in this state, freedom from discrimination.'" *Lee* at 20; *see also Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 229 (Minn. 2020) (citing *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 795 (Minn. 2013) (quoting Minn. Stat. §§ 363A.02, subd. 1(a), 363A.04)).

 The *Lee* court traced the history of both Title VII and MHRA (*Lee* at 15-17) and determined the MHRA imposes a duty to accommodate. *Id.* at *6. *Lee* found that Title VII imposed a duty of religious accommodation prior to the 1972 amendments that specifically added "accommodation." *Id.* Thus, Title VII included a duty of reasonable accommodation even when the text of Title VII did not reference accommodation, and the Title VII text was "indistinguishable" from the "current text of the MHRA." *Id.* *Lee* also stated the "Supreme Court found that pre-1972 version of Title VII imposed a duty of religious accommodation." *Id.* Thus, Title VII's change was to "limit" the duty to accommodate that already existed.

Appellate Case: 23-2996  Page: 58  Date Filed: 10/27/2023 Entry ID: 5330477

*Lee* further detailed other states that interpreted their state versions of the MHRA to include a duty to reasonably accommodate, and predicted "the Minnesota Supreme Court would conclude that the MHRA requires employers to reasonably accommodate the religious practices of their employees to the same extent that Title VII requires such an accommodation." *Id.* *8.

Another United States District Court Judge for the District of Minnesota, the Honorable Wilhelmina Wright, recently *agreed* that the MHRA and Title VII claims mirror each other, right down to the MHRA requiring employers to accommodate their employees' religious beliefs. *See Cole v. Grp. Health Plan, Inc.*, No. 22-CV-2686 (WMW/DLM), 2023 WL 5155202, at *4 (D. Minn. Aug. 10, 2023). The Minnesota Department of Human Rights adheres to this interpretation also.[10]

Thus, the Minnesota Court of Appeals, the United States District Court for the District of Minnesota (in a reported decision, *Maroko*, and two unreported decisions, *Cole* and *Lee*), and the MDHR all adhere to the interpretation of religious discrimination under the MHRA as including an employer's obligation to *reasonably accommodate* employees' religious beliefs. The Minnesota Supreme Court (*Fletcher*) cited

---

[10] *See Religious Accommodations in the Workplace, a*vailable at: https://mn.gov/mdhr/employers/reasonable-accommodations?#:~:text=Civil%20rights%20laws%20require%20an,undue%20hardship%20on%20an%20employer (last visited August 22, 2023) stating: *"Civil rights laws require an employer to reasonably accommodate an individual's disability and/or religious beliefs or practices unless doing so would impose undue hardship on an employer," and "[a]n employer is required to reasonably accommodate the religious belief or practice of an employee or prospective employee, unless doing so would impose an undue hardship" (emphasis added).*

Appellate Case: 23-2996    Page: 59    Date Filed: 10/27/2023 Entry ID: 5330477

*Benjamin* approvingly, and now *Lee* has exhaustively explained the rationale.

*Lee* is also consistent with Minnesota's history of granting *at least* as many rights under state law as are granted under federal counterpart laws, if not more. For example, "[t]he Minnesota Constitution, Article I, § 16 affords *religious protections <u>broader</u>* than those contained in the federal constitution." *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1053 (D. Minn. 2012) (emphasis added) (citing *State v. Hershberger*, 462 N.W.2d 393, 397 (Minn.1990)); *see also Satanic Temple v. City of Belle Plaine, Minnesota*, 475 F. Supp. 3d 950, 959-60 (D. Minn. 2020); *Hill-Murray Fed'n of Teachers v. Hill-Murray High Sch.*, 487 N.W.2d 857, 864-65 (Minn. 1992).

The Minnesota Supreme Court has specifically held this with respect to the MHRA: "Historically, the Human Rights Act [MHRA] has provided *more expansive protections* to Minnesotans than federal law." *Henry v. Indep. Sch. Dist. #625*, 988 N.W.2d 868, 880 (Minn. 2023) (emphasis added) (addressing age discrimination claim under the MHRA) (citing *Kenneh*, 944 N.W.2d at 229).

Thus, Appellants' religious rights should be *more protected* under the MHRA than they are under Title VII, and certainly not less protected. The district court held for a reduction of Appellants' religious rights (App. 26-27; R. Doc. 62, at 26-27), and should be rejected as anathema to Minnesota's rich history of *protecting* and *expanding* fundamental rights. The MHRA should be construed as requiring Mayo to reasonably accommodate Appellants' religious beliefs, just as *Lee* held Seasons Hospice was obligated to reasonably accommodate its employees. Mayo violated the MHRA. It is

51

at least a fact issue to be decided after discovery, thus requiring a reversal of the district court.

Mayo has provided its employees a cruel choice—take the vaccine and keep your job, but violate your religious beliefs, or keep true to your religious beliefs and refuse the vaccine, but lose your job. The United States Supreme Court has addressed this issue:

> Pennsylvania has passed a law which *compels an Orthodox Jew to choose between his religious faith and his economic survival. That is a cruel choice.* … this is not something that can be swept under the rug and forgotten in the interest of enforced Sunday togetherness. I think the impact of this law upon these appellants grossly violates their constitutional right to the free exercise of their religion.

*Braunfeld v. Brown*, 366 U.S. 599, 616 (1961) (Brennan, J., dissenting).

## CONCLUSION

The district court's decision should be reversed.

Dated: October 23, 2023.

s/Gregory M. Erickson
Gregory M. Erickson, 276522
Erick G. Kaardal, 229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: kaardal@mklaw.com
*Attorneys for Appellants*

52

## CERTIFICATE OF COMPLIANCE

## WITH FED. R. APP. P. 32 (a)(7)

The undersigned certifies that the Brief submitted herein contains 12,925 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft Word 2016, the word processing system used to prepare this Brief.

/s/   Gregory M. Erickson

53

## CERTIFICATES OF SERVICE
## FOR DOCUMENTS FILED USING CM/ECF

Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on October 23, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/    Gregory M. Erickson

54