IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

KENNETH RINGHOFER, SHELLY KIEL,

> Plaintiffs-Appellants,

v.

MAYO CLINIC AMBULANCE, MAYO CLINIC HEALTH SYSTEM-
Southeast Minnesota Region,

> Defendants-Appellees.

On Appeal from the United States District Court
for the District of Minnesota

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANTS RINGHOFER AND KIEL AND IN FAVOR OF REVERSAL

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

JAMES DRISCOLL-MACEACHRON
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

# TABLE OF CONTENTS

Table of Authorities ................................................................................... ii

Statement of Interest .................................................................................1

Statement of the Issues .............................................................................2

Statement of the Case ...............................................................................3

    A. Statement of the Facts .......................................................................3

        1. Shelly Kiel.................................................................................3

        2. Kenneth Ringhofer ...................................................................5

    B. District Court's Decision...................................................................6

Argument ...................................................................................................9

    I. Kiel and Ringhofer plausibly pled religious beliefs conflicting with Mayo's vaccine requirement. ...................................................................9

        A. Title VII uses an inclusive standard for determining whether a belief is religious..................................................................................9

            1. Title VII's definition of religion covers many religious beliefs, even if they overlap with nonreligious beliefs or preferences.............10

            2. The threshold for pleading religious beliefs under Title VII is particularly low. ...............................................................................16

        B. The beliefs that Kiel and Ringhofer plausibly alleged fall within Title VII's inclusive standard.........................................................19

            1. Kiel and Ringhofer sufficiently pled that their anti-abortion beliefs conflicting with the COVID-19 vaccine requirement were religious. ..................................................................................19

            2. Kiel and Ringhofer plausibly pled other beliefs that support the inference that their opposition was religious. .......................................25

    II. Kiel and Ringhofer plausibly pled notice of the conflict between their religious beliefs and the vaccination requirement. ......................................28

Conclusion................................................................................................32

Certificate of Compliance ........................................................................33

Certificate of Service ...............................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeyeye v. Heartland Sweeteners, LLC,*
721 F.3d 444 (7th Cir. 2013) ...................................................*passim*

*Africa v. Pennsylvania,*
662 F.2d 1025 (3d Cir. 1981) .......................................11, 12, 22, 23

*Aliano v. Twp. of Maplewood,*
No. 22CV5598, 2023 WL 4398493 (D.N.J. July 7, 2023) ..............................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................17

*Beuca v. Wash. State Univ.,*
No. 2:23-CV-0069-TOR, 2023 WL 3575503 (E.D. Wash. May
19, 2023) ...............................................................................19

*Bolden-Hardge v. Off. of Cal. State Controller,*
63 F.4th 1215 (9th Cir. 2023)........................................................17

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014)....................................................................22

*Callahan v. Woods,*
658 F.2d 679 (9th Cir. 1981)...............................................*passim*

*Camp v. L.A. Arena Co., LLC,* No. EDCV 22-2220 JGB (KKx),
2023 WL 4680797 (C.D. Cal. June 15, 2023) ......................................27

*Carrero-Ojeda v. Autoridad de Energía Eléctrica,*
755 F.3d 711 (1st Cir. 2014) ........................................................30

ii

*Caspersen v. Western Union, LLC*,
No. 23-CV-00923-NYW-SBP, 2023 WL 6602123 (D. Colo. Oct. 10, 2023) ...................................................................................19, 23

*Chenzira v. Cincinnati Child.'s Hosp. Med. Ctr.*, No. 1:11-CV-00917, 2012 WL 6721098 (S.D. Ohio Dec. 27, 2012) ....................................14

*Collins v. Tyson Foods, Inc.*,
No. 1:22-CV-00076-GNS, — F. Supp. 3d —, 2023 WL 2731047 (W.D. Ky. Mar. 30, 2023) ...........................................................19, 24

*Dachman v. Shalala*,
9 F. App'x 186 (4th Cir. 2001) .........................................................14

*Davis v. Fort Bend Cnty.*,
765 F.3d 480 (5th Cir. 2014) ............................................................15

*EEOC v. Consol Energy, Inc.*,
860 F.3d 131 (4th Cir. 2017) ................................................2, 11, 13

*EEOC v. Red Robin Gourmet Burgers, Inc.*,
No. C04-1291JLR, 2005 WL 2090677 (W.D. Wash. Aug. 29, 2005) ...........................................................................18, 27

*EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*,
279 F.3d 49 (1st Cir. 2002) .......................................................10, 16

*EEOC v. Univ. of Detroit*,
904 F.2d 331 (6th Cir. 1990) ...........................................................22

*Ellison v. Inova Health Care Servs.*,
No. 123CV00132, 2023 WL 6038016 (E.D. Va. Sept. 14, 2023)...................24

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
494 U.S. 872 (1990)..........................................................................17

*Fallon v. Mercy Cath. Med. Ctr. of Se. Penn.*,
877 F.3d 487 (3d Cir. 2017) .............................................................22

Appellate Case: 23-2996    Page: 4    Date Filed: 11/01/2023 Entry ID: 5332002

*Gadling-Cole v. W. Chester Univ.*,
    868 F. Supp. 2d 390 (E.D. Pa. 2012) ................................................................15

*Griffin v. Mass. Dep't of Revenue*,
    No. 22-CV-11991-FDS, 2023 WL 4685942 (D. Mass. July 20,
    2023) ................................................................................................................18

*Hamilton v. Palm*,
    621 F.3d 816 (8th Cir. 2010) ......................................................2, 17, 18, 27

*Heller v. EBB Auto Co.*,
    8 F.3d 1433 (9th Cir. 1993) .............................................................................28

*Jones v. TEK Indus., Inc.*,
    319 F.3d 355 (8th Cir. 2003) ..........................................................................28

*Kather v. Asante Health Sys.*,
    No. 1:22-CV-01842-MC, 2023 WL 4865533 (D. Or. July 28,
    2023) ............................................................................................................24, 25

*Keene v. City & Cnty. of San Francisco*,
    No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023) ...........................20

*Kent v. Johnson*,
    821 F.2d 1220 (6th Cir. 1987) .....................................................................18, 7

*Leeck v. Lehigh Valley Health Network*,
    No. 5:22-CV-4634, 2023 WL 4147223 (E.D. Pa. June 23, 2023) ............25, 27

*Love v. Reed*,
    216 F.3d 682 (8th Cir. 2000) .....................................................................12, 22

*Malnak v. Yogi*,
    592 F.2d 197 (3d Cir. 1979) ............................................................................23

*Ollis v. HearthStone Homes, Inc.*,
    495 F.3d 570 (8th Cir. 2007) ......................................................................2, 29

*Shelton v. Univ. of Med. & Dentistry of N.J.*,
    223 F.3d 220 (3d Cir. 2000) ............................................................................15

iv

*Tagore v. United States*,
735 F.3d 324 (5th Cir. 2013).................................................16, 18

*Teterud v. Burns*,
522 F.2d 357 (8th Cir. 1975).....................................................16

*Thomas v. Nat'l Ass'n of Letter Carriers*,
225 F.3d 1149 (10th Cir. 2000)..................................................31

*Thomas v. Rev. Bd. of Ind. Empl. Sec. Div.*,
450 U.S. 707 (1981)..............................................7, 11, 13, 22

*Toronka v. Cont'l Airlines, Inc.*,
649 F. Supp. 2d 608 (S.D. Tex. 2009).........................................14

*United States v. Seeger*,
380 U.S. 163 (1965)............................................................9, 10

*Usenko v. MEMC LLC*,
926 F.3d 468 (8th Cir. 2019).....................................................17

*Villareal v. Rocky Knoll Health Care Ctr.*,
No. 21-CV-729, 2022 WL 17092090 (E.D. Wis. Nov. 21, 2022)............26, 27

*Vinning-El v. Evans*,
657 F.3d 591 (7th Cir. 2011).....................................................11

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
522 F.3d 315 (3d Cir. 2008).....................................................2, 28

**Statutes**

Title VII of the Civil Rights Act of 1964 Title VII, 42 U.S.C. §§
2000e *et seq.*....................................................................1

42 U.S.C. § 2000e(j).........................................................1, 2, 9

42 U.S.C. § 2000e-2(a)(1)....................................................1, 9

Appellate Case: 23-2996    Page: 6    Date Filed: 11/01/2023 Entry ID: 5332002

**Rules & Regulations**

29 C.F.R. § 1605.1 ...................................................................9, 10, 14

Fed. R. App. P. 29(a) ...............................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................3

**Other Authorities**

EEOC, Compliance Manual § 12 (Jan. 15, 2021),
https://www.eeoc.gov/laws/guidance/section-12-
religious-discrimination..........................................................*passim*

EEOC, What You Should Know About COVID-19 and the
ADA, the Rehabilitation Act Rehabilitation Act, and Other
EEO Laws (May 15, 2023),
https://www.eeoc.gov/wysk/what-you-should-know-
about-covid-19-and-ada-rehabilitation-act-and-other-eeo-
laws .....................................................................................30, 31

Appellate Case: 23-2996    Page: 7    Date Filed: 11/01/2023 Entry ID: 5332002

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Title VII prohibits discrimination on the basis of religion—which includes observance, practice, and belief—unless an employer shows it cannot reasonably accommodate an employee's religious observance or practice without undue hardship. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). The district court dismissed the amended complaints of Shelly Kiel and Kenneth Ringhofer because they had not sufficiently pled religious beliefs or notice to the defendants of the conflict between their religious beliefs and the defendants' vaccination requirement. In doing so, the court misapplied the relevant standards under Title VII, particularly on a motion to dismiss.

Because the EEOC has a strong interest in the correct interpretation of Title VII and in the pleading standard applied to Title VII claims, the EEOC offers its views to the Court. *See* Fed. R. App. P. 29(a).

# STATEMENT OF THE ISSUES[1]

1.  Did Kiel and Ringhofer plausibly plead religious beliefs that conflicted with the defendants' vaccination requirement?

- 42 U.S.C. § 2000e(j)

- *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 142 (4th Cir. 2017)

- *Callahan v. Woods*, 658 F.2d 679, 685-86 (9th Cir. 1981)

- *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010)

2.  Did Kiel and Ringhofer plausibly plead notice to the defendants of the conflict between their religious beliefs and the defendants' vaccination requirement?

- *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013)

- *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315 (3d Cir. 2008)

- *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 573, 575 (8th Cir. 2007)

---

[1] The EEOC takes no position on any other issue in this consolidated appeal.

Appellate Case: 23-2996     Page: 9     Date Filed: 11/01/2023 Entry ID: 5332002

## STATEMENT OF THE CASE

### A.  Statement of the Facts[2]

Shelly Kiel, Sherry Ihde, Anita Miller, Kenneth Ringhofer, and Kristin Rubin all worked for the defendants (collectively, "Mayo") for many years. App. 3, 5; R. Doc. 50 at 3, 5. In October 2021, Mayo implemented a requirement that all employees be fully vaccinated for COVID-19 or approved for an exemption. App. 5-6, R. Doc. 50 at 5-6. Mayo provided forms employees could use to seek religious exemptions. App. 6, R. Doc. 50 at 6. It warned, however, that "[o]nly a small number of staff are expected to qualify for a religious exemption." App. 195, R. Doc. 21 ¶ 21. Mayo also refused to give feedback on individual religious exemption requests. *See* App. 120-22, R. Doc. 32 ¶¶ 40-44, 47; App. 201-03, R. Doc. 21 ¶ 44-47, 50.

#### 1.  Shelly Kiel

Kiel worked as a licensed nurse for Mayo for more than eighteen years.[3] She is Christian, and her religious beliefs conflict with the

---

[2] Because the case was decided on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the facts are taken from the amended complaints or, where appropriate, the district court opinion.

[3] Because the EEOC addresses only Kiel's and Ringhofer's Title VII claims, we omit the facts related to the other plaintiffs and the plaintiffs' ADA and state law claims.

Appellate Case: 23-2996    Page: 10    Date Filed: 11/01/2023 Entry ID: 5332002

vaccination requirement because, she alleged, the vaccines "were all produced with or tested with cells from aborted human babies" and "[r]eceiving the vaccine would make her a participant in the abortion that killed the unborn baby." App. 114, R. Doc. 32 ¶ 13. She also "believes, based on her interpretation of scripture, that her body is a Temple to the Holy Spirit." App. 114, R. Doc. 32 ¶¶ 10, 13. As a result, "it violates her religious beliefs and conscience to take the Covid-19 vaccine." App. 114, R. Doc. 32 ¶ 13. And "she must protect her body, God's Temple, and cannot put into it substances which are impure or dangerous." *Id.*

Kiel requested a religious exemption.[4] App. 120, R. Doc. 32 ¶ 36. Mayo provided a boilerplate denial, thanking her for submitting a request for religious exemption and concluding that her "request did not meet the criteria for a religious exemption accommodation." App. 120, R. Doc. 32 ¶ 40. Kiel submitted additional information supporting her request for reconsideration, which Mayo denied. App. 121-22, R. Doc. 32 ¶¶ 46, 47.

---

[4] The plaintiffs included their requests in the record below. R. Doc. 38. The district court did not rely on them, *see generally* App. 2-36, R. Doc. 50, so we do not discuss them here.

Appellate Case: 23-2996    Page: 11    Date Filed: 11/01/2023 Entry ID: 5332002

Mayo terminated Kiel on January 3, 2022, because she refused to comply with the vaccination requirement. App. 122, R. Doc. 32 ¶ 51.

### 2. Kenneth Ringhofer

Ringhofer worked as a paramedic for Mayo for more than thirty-two years. App. 198, R. Doc. 21 ¶ 28. He is a Baptist who was raised Catholic, and he "believes, based on his interpretation of scripture that his body is a Temple to the Holy Spirit and is strongly against abortion." App. 198, R. Doc. 21 ¶ 30. The vaccination requirement "violates his religious beliefs and conscience" because, he alleged, "the vaccines were produced with or tested with fetal cell lines." *Id.*

Ringhofer alleged additional details about his beliefs, including that "[t]he fetal cell line is a major point" for him, App. 199, R. Doc. 21 ¶ 33, as "[u]sing the fetal cell lines in the development of [the vaccine] . . . is against [his] religion." App. 198, R. Doc. 21 ¶ 30. He also "did research on the vaccines and concluded, based upon his religious beliefs, that God would take care of him" and that he was "being told by God to avoid the altering stuff [and] . . . that [his] God-given immune system's going to take care of [him]." *Id.* Ringhofer alleged he was "being guided by God with [his] immune system to protect [him]," and "[i]t's putting in something that is

5

unknown into my body. God asked me not to do that." App. 199, R. Doc. 21 ¶ 33. Refusing the vaccine was his "choice by [his] guidance from [his] God" and, he pled, "his position is consistent with Baptist religious beliefs, including the authority of Scripture." App. 198-99, R. Doc. 21 ¶31.

Ringhofer gave Mayo "good faith statements of his sincerely-held religious beliefs, with explanations of how his faith constrained hi[m] from accepting the Covid-19 vaccination." App. 204, R. Doc. 21 ¶ 56. Mayo had previously approved his religious exemption from its flu vaccine requirement, but Mayo denied his request for a religious exemption from the COVID-19 vaccination requirement. App. 203-04, R. Doc. 21 ¶¶ 55-56. Ringhofer used Mayo's appeal process, but Mayo did not change its decision. App. 203, R. Doc. 21 ¶ 50. Mayo terminated Ringhofer on January 3, 2022, based on his failure to comply with the vaccine requirement. App. 203, R. Doc. 21 ¶ 54.

## B.   District Court's Decision

The plaintiffs filed suit in district court alleging violations of Title VII. App. 3, R. Doc. 50 at 3. The district court consolidated the proceedings, and Mayo moved to dismiss.

6

The district court granted Mayo's motion and dismissed Kiel's and Ringhofer's claims. For those claims, the court stated that "[o]nly sincerely held beliefs rooted in religion are protected," while personal preferences are not. App. 17, R. Doc. 50 at 17. The court acknowledged that determining whether a belief is religious is "a 'difficult and delicate task,'" App. 18, R. Doc. 50 at 18 (quoting *Thomas v. Rev. Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981)), and that "[r]eligious beliefs do not need to be 'acceptable, logical, consistent, or comprehensible to others.'" *Id.* (quoting *Thomas*, 450 U.S. at 714). It then set out prima facie requirements for a failure-to-accommodate claim, although it acknowledged that the plaintiffs need not plead those elements. App. 19, R. Doc. 50 at 19.

Kiel, the court held, did not plausibly plead a religious belief. App. 19-21, R. Doc. 50 at 19-21. The court began with Kiel's belief that her body is a temple to the Holy Spirit and that she cannot put impure or dangerous substances into it. App. 19, R. Doc. 50 at 19. This belief, the court concluded, was not religious because it "appears rooted in her belief that the vaccine is unhealthy or unsafe." App. 20, R. Doc. 50 at 20. The court held Kiel's belief that she cannot take the vaccine because it was produced or tested with "cells from aborted human babies" was not religious

7

because, among other things, "Kiel does not actually tie her anti-abortion beliefs to any 'formal and external signs' of religion" and "many Christians who oppose abortion still receive vaccines." App. 21, R. Doc. 50 at 21.

The court further concluded that Kiel had not sufficiently pled notice. App. 21-22, R. Doc. 50 at 21-22. Although Kiel alleged she had requested an exemption and provided more information supporting her request, the court reasoned that Kiel had "not allege[d] *exactly* what she told Mayo, or even when she informed Mayo of her beliefs." *Id.* (emphasis added).

Turning to Ringhofer, the court held that he, too, had not plausibly pled a religious belief or notice. App. 22-24, R. Doc. 50 at 22-24. Ringhofer pled that he is a Baptist who believes his body is a temple and who is strongly against abortion, but the court held that "his opposition to the vaccine is based on personal medical judgment." App. 23, R. Doc. 50 at 23. And, as with Kiel, the court held that Ringhofer's allegations were too "threadbare" to plead notice. App. 24, R. Doc. 50 at 24.

8

# ARGUMENT

## I. Kiel and Ringhofer plausibly pled religious beliefs conflicting with Mayo's vaccine requirement.

### A. Title VII uses an inclusive standard for determining whether a belief is religious.

Title VII prohibits discrimination based on religion, 42 U.S.C. § 2000e-2(a)(1), and it has a "broad and intentionally hands-off definition of religion." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013). It defines religion to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

The EEOC has long observed in its guidelines that "[i]n most cases whether or not a practice or belief is religious is not at issue." 29 C.F.R. § 1605.1. Those guidelines flow from the deference with which the Supreme Court has assessed religious beliefs for more than fifty years. "In such an intensely personal area . . . , the claim of the [individual] that his belief is an essential part of a religious faith must be given great weight." *United States v. Seeger*, 380 U.S. 163, 184 (1965) (addressing what is now the

9

Military Select Service Act); *see also EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 56 (1st Cir. 2002) (Title VII "thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs.").

      1. **Title VII's definition of religion covers many religious beliefs, even if they overlap with nonreligious beliefs or preferences.**

    The test for whether a belief or practice is religious looks to "whether the beliefs are, in the individual's own scheme of things, religious." EEOC, Compliance Manual § 12 Overview (Jan. 15, 2021) ("Compliance Manual"), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (internal quotation marks omitted); *see also id.* § 12-I.A.1 ("[R]eligion typically concerns 'ultimate ideas' about 'life, purpose, and death.'"); 29 C.F.R. § 1605.1 (discussing religious practices and beliefs). The Supreme Court adopted this test in *Seeger*, 380 U.S. at 176, and the EEOC "has consistently applied this standard" to claims under Title VII. 29 C.F.R. § 1605.1.

    A belief may thus be religious even if it does not involve an organized religion. Compliance Manual § 12 Overview ("These protections apply whether the religious beliefs or practices in question are common or

10

Appellate Case: 23-2996    Page: 17    Date Filed: 11/01/2023  Entry ID: 5332002

non-traditional, and regardless of whether they are recognized by any organized religion."). And Title VII protects "religious beliefs that are new, uncommon, not part of a formal church or sect, [or are] only subscribed to by a small number of people." *Id.* § 12-I.A-1. Thus, "[a] personal religious faith is entitled to as much protection as one espoused by an organized group." *Vinning-El v. Evans*, 657 F.3d 591, 593 (7th Cir. 2011); *Adeyeye*, 721 F.3d at 452 (applying *Vinning-El* to Title VII).

The Supreme Court has also recognized that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Thomas*, 450 U.S. at 714. As the Third Circuit noted, "[j]udges are ill-equipped to examine the breadth and content of an avowed religion; [they] must avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). Thus, the Fourth Circuit has held that "[i]t is not [the employer's] place . . . , nor [theirs] as a court, to question the correctness or even the plausibility of [the plaintiff's] religious understandings." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 142 (4th Cir. 2017) (holding that the plaintiff established conflict with his religious beliefs by explaining that

11

using a biometric hand scanner would "compromis[e] his beliefs regarding the Mark of the Beast").

When assessing whether a belief is religious, courts may consider whether it is part of a set of beliefs that constitutes a religion. In doing so, this Court has acknowledged a flexible, three-factor approach from the Third Circuit. *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000) (using test from *Africa*, 662 F.2d at 1032, for First Amendment claim). That test notes "three 'useful indicia'":

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id.* (quoting *Africa*, 662 F.2d at 1032). But, this Court has emphasized, this is not a "rigid 'test.'" *Id.*

Considering whether an individual's belief is part of a religion, however, does not mean that every adherent to that religion must hold the same beliefs. To the contrary, beliefs may be religious "even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief, observance, or practice." Compliance

12

Manual § 12-I.A. Such "[i]ntrafaith differences . . . are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences." *Thomas*, 450 U.S. at 715.

Thus, an employee's "religious beliefs are protected whether or not his pastor agrees with them." *Consol Energy*, 860 F.3d at 142. And "[a] Seventh-day Adventist employee [who] follows a vegetarian diet because she believes it is religiously prescribed by scripture" is following a religious practice "even though not all Seventh-day Adventists share this belief or follow this practice." Compliance Manual § 12-I.A.1 (example 2); *see also Callahan v. Woods*, 658 F.2d 679, 685 (9th Cir. 1981) (holding that the plaintiff's belief was religious even where his "interpretation of the scriptures may differ from the meaning members of his church generally find in that text").

Courts find that many beliefs, even if uncommon, satisfy this standard. A belief that social security numbers are "diabolical" is sufficient where it "is derived from the New Testament's Book of Revelation, a text which [the plaintiff's] church . . . consider[s] holy." *Callahan*, 658 F.2d at 685; *see also Thomas*, 450 U.S. at 711, 715 (finding objection to participation in the production of armaments sufficiently religious under First

13

Amendment based on the plaintiff's "reading of [Jehovah's] Witnesses' principles"). Similarly, it is "plausible" that a plaintiff "could subscribe to veganism with a sincerity equating that of traditional religious views." *Chenzira v. Cincinnati Child.'s Hosp. Med. Ctr.*, No. 1:11-CV-00917, 2012 WL 6721098, at *4 (S.D. Ohio Dec. 27, 2012) (denying motion to dismiss when plaintiff refused flu vaccine and cited essays about veganism and biblical verse in describing her beliefs); *Toronka v. Cont'l Airlines, Inc.*, 649 F. Supp. 2d 608, 611-12 (S.D. Tex. 2009) (plaintiff sufficiently pled religious belief by alleging "moral and ethical belief in the power of dreams based on his religious convictions and traditions of his national origin").

Of course, not every belief is religious. Although "religious practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views," 29 C.F.R. § 1605.1, Title VII does not protect "mere personal preferences" or "[s]ocial, political, or economic philosophies." Compliance Manual § 12-I.A.1. Thus, even when the plaintiff had a "religious belief that prohibited her from working after sundown on Fridays," her preference to prepare for her religious observances on the same day was not religious. *Dachman v. Shalala*, 9 F. App'x 186, 191-92 (4th Cir. 2001). What matters is the

14

individual's motivation, because "[t]he same practice might be engaged in by one person for religious reasons and by another person for purely secular reasons." Compliance Manual § 12-I.A.1; *see also Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) ("A court's inquiry is limited to focusing upon the individual's motivation.").

There may sometimes be "overlap between a religious and political view," but that does not necessarily place the belief "outside the scope of Title VII's religion protections, as long as that view is part of a comprehensive religious belief system and is not simply an isolated teaching." Compliance Manual § 12-I.A.1 (internal quotation marks omitted). For example, a Pentecostal plaintiff who believes she cannot participate in abortions has a religious belief for purposes of Title VII, *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 222, 225 (3d Cir. 2000), even though others oppose abortion for non-religious reasons. *See Gadling-Cole v. W. Chester Univ.*, 868 F. Supp. 2d 390, 397 (E.D. Pa. 2012) ("Title VII claims for religious discrimination are cognizable for topics which overlap both the religious and political spectrum, such as abortion, as long as the claims are based on a plaintiff's bona fide religious belief."). In other words, "a coincidence of religious and secular claims in no way

15

extinguishes the weight appropriately accorded the religious one."
*Callahan*, 658 F.2d at 684.

Courts may also assess the sincerity of a religious belief, *Adeyeye*, 721 F.3d at 452, although sincerity "is rarely at issue." Compliance Manual § 12-I.A.2. When courts do consider sincerity, they may look to factors such as "whether the employee has behaved in a manner markedly inconsistent with the professed belief" and "whether the timing of the request renders it suspect." *Id.* But sincerity "generally will depend on the factfinder's assessment of the employee's credibility." *Unión Independiente*, 279 F.3d at 56. And the court did not assess the plaintiffs' allegations of sincerity here.

### 2. The threshold for pleading religious beliefs under Title VII is particularly low.

Assessing whether an alleged belief is religious for purposes of Title VII requires "a light touch." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) (internal quotation marks omitted), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447 (2023). It is not the province of government officials or courts to determine religious orthodoxy. *Teterud v. Burns*, 522 F.2d 357, 360 (8th Cir. 1975). That "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at

face value," but it underscores that "the burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023); *see also Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 887 (1990) ("[C]ourts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.").

That light touch is especially warranted on a motion to dismiss. In this posture, a court must "assum[e] all factual allegations as true and constru[e] all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). A plaintiff need only plead "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As this Court has said, a pleading "does not require great detail or recitation of all potentially relevant facts in order to put the defendant on notice of a plausible claim." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010).

It is also inappropriate to grant a motion to dismiss where a complaint pleads facts that raise plausible inferences that may go more than one way. In *Hamilton*, for instance, this Court reversed the dismissal of

17

a complaint that "raised plausible inferences of both employee and independent contractor status," holding that "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." 621 F.3d at 819. So, too, with allegations that raise plausible inferences that a belief is religious or that it is a personal preference/political belief. After all, the inquiry into "whether the belief or practice asserted is religious . . . [is] factual in nature." *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Tagore*, 735 F.3d at 328 ("[E]ach case turns on its particular facts."). A jury may ultimately need to resolve the question of whether, in such circumstances, a belief is religious. *See EEOC v. Red Robin Gourmet Burgers, Inc.*, No. 2:04-cv-01291, 2005 WL 2090677, at *3 (W.D. Wash. Aug. 29, 2005) (denying summary judgment for employer who argued plaintiff's belief he could not cover his religious tattoos was merely a personal preference).

That said, courts can require "some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle." *Griffin v. Mass. Dep't of Revenue*, No. 1:22-cv-11991, 2023 WL 4685942, at *6 (D. Mass. July 20, 2023). This is not a heavy burden—it simply requires pleading enough facts to connect a religious

Appellate Case: 23-2996    Page: 25    Date Filed: 11/01/2023 Entry ID: 5332002

belief to the conflict with the employment requirement. *Beuca v. Wash. State Univ.*, No. 2:23-CV-0069-TOR, 2023 WL 3575503, at *2 (E.D. Wash. May 19, 2023) ("The Court declines to scrutinize Plaintiff's particular beliefs merely because he has failed to articulate them with greater clarity and precision.") *appeal docketed*, No. 23-35395 (9th Cir. June 8, 2023); *Caspersen v. Western Union, LLC*, No. 23-CV-00923-NYW-SBP, 2023 WL 6602123, at *9 (D. Colo. Oct. 10, 2023) (holding that complaint sufficiently pled religious belief).

### B. The beliefs that Kiel and Ringhofer plausibly alleged fall within Title VII's inclusive standard.

#### 1. Kiel and Ringhofer sufficiently pled that their anti-abortion beliefs conflicting with the COVID-19 vaccine requirement were religious.

Kiel and Ringhofer each alleged beliefs against abortion that, viewing all inferences in their favor on a motion to dismiss, were religious. App. 114, R. Doc. 32 ¶13; App. 198, R. Doc. 21 ¶ 30. Courts have found similar allegations connecting individuals' religious opposition to abortion to vaccination requirements sufficient. In *Collins v. Tyson Foods, Inc.*, No. 1:22-CV-00076-GNS, — F. Supp. 3d — , 2023 WL 2731047, at *7 (W.D. Ky. Mar. 30, 2023), for example, the court held that a plaintiff's allegations were sufficient when he "allege[d] that due to his Christian beliefs, he would not

Appellate Case: 23-2996     Page: 26     Date Filed: 11/01/2023 Entry ID: 5332002

receive a COVID-19 vaccination because 'all COVID-19 vaccines have made use either in production or testing of fetal cell lines developed from tissues derived from aborted fetuses.'" *See also Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (cleaned up) (in denying a preliminary injunction, district court erred in holding plaintiffs did not assert sincere religious beliefs when they alleged they were Christians who believed in the sanctity of life and the record showed COVID-19 vaccine manufacturers relied on fetal cell lines to test vaccine efficacy).

Kiel and Ringhofer alleged similar beliefs. Kiel alleged that "her religious beliefs" conflict with the vaccination requirement because the available vaccines "were all produced with or tested with cells from aborted human babies." App. 114, R. Doc. 32 ¶ 13. And Ringhofer alleged the requirement "violates his religious beliefs and conscience . . . because the vaccines were produced with or tested with fetal cell lines." App. 198, R. Doc. 21 ¶ 30.

Although not required, Kiel and Ringhofer also alleged that their opposition to abortion arose from their religions: Kiel alleged she is a Christian, while Ringhofer alleged he is a Baptist who was raised Catholic.

20

App. 114, R. Doc. 32 ¶ 13; App. 198, R. Doc. 21 ¶ 30; *see also Callahan*, 658 F.2d at 685 ("Although traditional religious beliefs are entitled to no greater protection than many nontraditional dogmas, their status as religious beliefs is often more readily ascertained."). In doing so, both connected their opposition to the use of fetal cell lines to their broader religious affiliations, further supporting the reasonable inference that their opposition to the vaccine was religious.

In rejecting this conclusion, the district court incorrectly compared Kiel's belief to those of other Christians. App. 21, R. Doc. 50 at 21 ("Certainly many Christians who oppose abortion still receive vaccines."). Whether many, or any, Christians opposing abortion receive vaccines is not determinative. A belief may be religious even if the plaintiff's "interpretation of the scriptures . . . differ[s] from the meaning members of his church generally find in that text." *Callahan*, 658 F.2d at 685; *see also* Compliance Manual § 12-I.A.1 & n.23 (same).

The court also concluded that "Kiel's belief that taking the vaccine makes her a complicit 'participant' in abortion, even if true, has not been tied to religion" and therefore was not a religious belief. App. 21, R. Doc. 50 at 21. But the Supreme Court rejected a similar attempt to parse

21

what a person with a religious belief against abortion believed would make them complicit, holding that "it is not for us to say that the line [drawn] was an unreasonable one." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quoting *Thomas*, 450 U.S. at 715); *see also EEOC v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990) (assessing accommodations for religious belief that prevented plaintiff from contributing to, or associating with, any organization with "a pro-choice position").

The district court further found Kiel's allegations wanting because Kiel did "not tie her anti-abortion beliefs to any 'formal and external signs' of religion." App. 21, R. Doc. 50 at 21. But that is one of the *Africa* factors for determining whether a set of beliefs is a religion—not whether a particular belief is religious. *See Africa*, 662 F.2d at 1032 (describing "three 'useful indicia' to determine the existence of a religion"); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Penn.*, 877 F.3d 487, 491-93 (3d Cir. 2017) ("Fallon's beliefs do not occupy a place in his life similar to that occupied by a more traditional faith."). And, in *Love*, this Court used the *Africa* factors to assess whether the plaintiff's belief system was a religion—and only then assessed whether the individual belief at issue was religious. *Love*, 216 F.3d at 688-89; *see also Caspersen*, 2023 WL 6602123, at *6 ("Courts have relied on

22

these observations, known as the '*Africa* factors,' to assess the religiosity of a plaintiff's belief system.").

The court's elevation of this "external signs" factor is particularly problematic. The EEOC's guidance cautions against overreliance on external signs of religion. Compliance Manual § 12-I.A.1. n. 27 ("Although 'religion' is often marked by external manifestations . . . , such manifestations are not required for a belief to be 'religious.'"). And the concurring opinion from which *Africa* drew its factors contained a similar warning: "Of course, a religion may exist without any of these signs, so they are not determinative, at least by their absence, in resolving a question of" whether a set of ideas is a religion. *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979) (Adams, J., concurring); *Africa*, 662 F.2d at 1032 (describing the factors as "enunciated in the concurring opinion in *Malnak*"). The court, however, did not use this factor to assess whether Kiel's belief system, as a whole, served as a religion. Instead, it erred by treating it as evidence that Kiel's objection to Mayo's vaccination requirement was not religious.

The court, meanwhile, did not assess Ringhofer's belief that Mayo's vaccination requirement "violated his religious beliefs and conscience . . . because the vaccines were produced with or tested with fetal cell lines."

23

App. 198, R. Doc. 21 ¶ 30. Instead, it summarily concluded that, "considering the complaint as a whole, he has not alleged that his opposition to the vaccine is religious in nature." App. 23, R. Doc. 50 at 23. But Ringhofer specifically pled that "[t]he fetal cell line is a major point." App. 199, R. Doc. 21 ¶ 33. And, as shown below, Ringhofer alleged other facts that support the inference that his opposition to the vaccine was rooted in his religion.

To be sure, some courts have required more robust pleading for religious beliefs opposing COVID-19 vaccination requirements. *See, e.g.*, *Ellison v. Inova Health Care Servs.*, No. 123CV00132, 2023 WL 6038016, at *7 (E.D. Va. Sept. 14, 2023); *Aliano v. Twp. of Maplewood*, No. 22CV5598, 2023 WL 4398493, at *6-*11 (D.N.J. July 7, 2023) (holding that some plaintiffs sufficiently pled religious beliefs, while others did not). But other courts have correctly held similar beliefs sufficient at the motion-to-dismiss stage. *See, e.g.*, *Collins*, — F. Supp. 3d — , 2023 WL 2731047, at *7; *Kather v. Asante Health Sys.*, No. 1:22-CV-01842-MC, 2023 WL 4865533, at *4 (D. Or. July 28, 2023) ("It can be inferred that [the plaintiff's] belief in God informs his opposition to receiving a vaccine he alleges originates from the use of fetal cells."). And, as the burden to plausibly plead a religious belief is light,

24

courts should not resolve the nature of such beliefs on a motion to dismiss unless they cannot reasonably infer that the relevant belief is religious.

### 2. Kiel and Ringhofer plausibly pled other beliefs that support the inference that their opposition was religious.

Along with pleading beliefs opposing abortion, Kiel and Ringhofer alleged beliefs, based on their religions, that their bodies are temples to the Holy Spirit. These beliefs help Kiel and Ringhofer satisfy "the minimal burden to allege a religious employment conflict at the pleading stage." *Kather*, 2023 WL 4865533, at *5.

Courts can consider allegations involving the sanctity of the human body in inferring that beliefs are religious. In *Leeck v. Lehigh Valley Health Network*, No. 5:22-CV-4634, 2023 WL 4147223, at *9 (E.D. Pa. June 23, 2023), the district court found sufficient allegations that the plaintiff opposed the use of fetal cell lines and "that the vaccines would make her 'body impure in the eyes of the Lord.'" Similarly, in *Kather*, the court found allegations sufficient when the plaintiff opposed fetal cell lines and had a "religious belief not to interfere with the function of the human immune system which God created." 2023 WL 4865533, at *4.

25

Kiel and Ringhofer both alleged beliefs opposing the vaccine based on the sanctity of their bodies. Kiel alleged that she is a Christian and "she must protect her body, God's Temple, and cannot put into it substances which are impure or dangerous." App. 114, R. Doc. 32 ¶¶ 10, 13. And Ringhofer alleged, "based on his interpretation of scripture that his body is a Temple to the Holy Spirit" and reflecting his Baptist beliefs, that he could not "put[] something that is unknown into my body." App. 198-99, R. Doc. 21 ¶¶ 30, 33.

The court discounted these beliefs by concluding that they expressed personal preferences, but a religious belief may overlap with a personal preference or political belief without "plac[ing] it outside the scope of Title VII's religious protections." Compliance Manual § 12-I.A.1. And even when a plaintiff's medical concerns "call[] into question whether her motive for seeking a[n] . . . exemption was purely religious in nature," there is still a factual question: "whether her refusal . . . was also, at least in part, due to her proclaimed religious beliefs." *Villareal v. Rocky Knoll Health Care Ctr.*, No. 21-CV-729, 2022 WL 17092090, at *5 (E.D. Wis. Nov. 21, 2022) (denying summary judgment). And factual questions, of course, are for juries.

26

As a result, "at this stage in the litigation, the presence of reasons that do not satisfy the first criterion need not negate the presence of reasons that do satisfy the criterion." *Leeck*, 2023 WL 4147223, at *7; *Camp v. L.A. Arena Co., LLC*, No. EDCV 22-2220 JGB (KKx), 2023 WL 4680797, at *2, 7 (C.D. Cal. June 15, 2023) (plaintiff sufficiently alleged religious belief "not to do anything that would desecrate or destroy my body"). A court may infer that a religious belief caused the conflict or that a personal preference did. But "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." *See Hamilton*, 621 F.3d at 819.

Thus, on a motion to dismiss, the allegations the court interpreted as nonreligious should not negate Kiel's and Ringhofer's allegations rooting their objections to the COVID-19 vaccine in their religious beliefs. *See Camp*, 2023 WL 4680797, at *7; *Villareal*, 2023 WL 3575503, at *2. Instead, as the question of whether a belief is religious is "factual in nature," *Kent*, 821 F.2d at 1225, the better course would be to develop the facts surrounding the relevant beliefs. The parties could then contest the issue, if necessary, at summary judgment or trial. *See Red Robin*, 2005 WL 2090677, at *3 (dispute of fact on whether belief was religious or personal preference). During those proceedings, of course, Mayo would also have an opportunity to

27

make additional arguments, such as that any reasonable accommodation would pose an undue hardship on the conduct of Mayo's business.

## II. Kiel and Ringhofer plausibly pled notice of the conflict between their religious beliefs and the vaccination requirement.

The court also erred in its treatment of the second element of Kiel's and Ringhofer's failure-to-accommodate claims: that they informed Mayo of the conflict with their religious beliefs. *See Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). The notice requirement ensures that the plaintiff provides "fair warning that a particular employment practice will interfere with that employee's religious beliefs." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) (internal quotation marks omitted).

An "applicant or employee need not use any 'magic words'" to notify their employer. Compliance Manual § 12-IV.A.1. Notice "require[s] only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993). Under this standard, saying "'I need to take unpaid leave to comply with a religious duty' . . . would certainly be clear enough." *Adeyeye*, 721 F.3d at 450; *Ollis v. HearthStone Homes, Inc.*, 495

28

F.3d 570, 573, 575 (8th Cir. 2007) (expressing disagreement with company's core values of "spirituality and leaving behind all experiences from past lives" sufficient for notice).

Kiel and Ringhofer plausibly pled that they provided fair warning that their religious beliefs conflicted with Mayo's vaccination requirement. Each alleged that they used Mayo's process to seek religious exemption from the vaccination requirement. *See* App. 117, 120, R. Doc. 32 ¶¶ 26, 36; App. 195, 198, R. Doc. 21 ¶¶ 20, 29. They also alleged that Mayo acknowledged their requests with an email stating, "Thank you for submitting your request for religious exemption." App. 120, R. Doc. 32 ¶ 40; App. 200-01, R. Doc. 21 ¶¶ 36, 43. After Mayo denied their requests, they submitted additional information. App. 121, R. Doc. 32 ¶ 46; App. 203, R. Doc. 21 ¶ 50. These allegations are more than enough to make it plausible that Kiel and Ringhofer notified Mayo of the conflict between their beliefs and the vaccination requirement.

The court acknowledged these allegations, but held that they were only "bare assertions that amount to no more than a formulaic recitation of the elements." App. 22, R. Doc. 50 at 22. But Kiel's and Ringhofer's allegations do not simply mirror the elements of the claim. To the contrary,

29

they allege specific facts about the plaintiffs' interactions with Mayo, including repeated requests for religious exemptions—requests that they allege Mayo acknowledged as requests for religious exemption. Moreover, plaintiffs need not allege every fact they will use to support their claims. *See Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 718 (1st Cir. 2014).

Although the court did not cite it, we note that Kiel's and Ringhofer's allegations of notice are consistent with the EEOC's technical assistance document explaining how to approach potential conflicts between religious beliefs and COVID-19 vaccination requirements. *See* EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws § L.1 (May 15, 2023), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited Oct. 30, 2023). The technical assistance document reiterates that employees have "to explain the conflict and the religious basis for it." *Id.* And, when employers receive such requests, it recommends that "employer[s] should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances." *Id.* § L.2.

That does not mean that employers cannot ask questions when they receive notice of a conflict. Rather, if they have questions about whether a belief is religious, employers can conduct "a limited factual inquiry and seek[] additional information." *Id.*; *see also* Compliance Manual § 12-IV.A.1 ("If the employer reasonably needs more information, the employer and the applicant or employee should discuss the request."); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) (religious accommodation requests "involve[] an interactive process that requires participation" of employer and employee). Indeed, "as a practical matter it can be important" for an employer "to conduct a discussion with an employee before making a determination on an accommodation request." Compliance Manual § 12-IV.A.2.

According to Kiel and Ringhofer, that discussion never happened. *See supra* at pp. 3-6. Given the requests Kiel and Ringhofer allege they made, it is reasonable to infer that the issue was not whether Mayo was aware they were requesting religious exemption, but that Mayo was not convinced that their beliefs were religious.

Appellate Case: 23-2996     Page: 38     Date Filed: 11/01/2023 Entry ID: 5332002

## CONCLUSION

For all these reasons, the judgment of the district court should be vacated and the case remanded for further proceedings.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

s/ James Driscoll-MacEachron
JAMES DRISCOLL-MACEACHRON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

October 31, 2023

Appellate Case: 23-2996   Page: 39   Date Filed: 11/01/2023 Entry ID: 5332002

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6,431 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7) & (f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

Pursuant to Eighth Circuit Local Rule 28A(h)(2), the electronic version of this brief was scanned for viruses with Microsoft Windows Defender and is virus-free according to that program.

s/James Driscoll-MacEachron
JAMES DRISCOLL-MACEACHRON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

October 31, 2023

Appellate Case: 23-2996   Page: 40   Date Filed: 11/01/2023 Entry ID: 5332002

## CERTIFICATE OF SERVICE

I certify that on this 31st day of October, 2023, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

I further certify that, as required by Eighth Circuit Local Rule 28A(d), ten paper copies of the foregoing brief will be filed with the Court and one paper copy of the foregoing brief will be served on each party.

Counsel for Appellants

Gregory Martin Erickson
Vincent J. Fahnlander
Erick G. Kaardal

Counsel for Appellees

Hannah Camilleri Hughes
Emily A. McNee
Lehoan T. Pham
Holly Marie Robbins
Katherine Tank
Kathryn Mrkonich Wilson
George Richard Wood

MOHRMAN, KAARDAL
& ERICKSON, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402

LITTLER MENDELSON
P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402

s/James Driscoll-MacEachron
JAMES DRISCOLL-MACEACHRON
Attorney
EQUAL EMPLOYMENT

34

OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov