**Case Nos. 23-2994, 23-2995, 23-2996, 23-2997, 23-2999**

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

KENNETH RINGHOFER, ANITA MILLER, SHELLY KIEL, SHERRY IHDE, AND KRISTIN RUBIN,

Plaintiffs-Appellants,

v.

MAYO CLINIC AMBULANCE, A MINNESOTA NON-PROFIT CORPORATION, THE MAYO CLINIC, MAYO CLINIC HEALTH SYSTEM,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Minnesota
The Honorable John R. Tunheim, Presiding

## BRIEF OF DEFENDANTS-APPELLEES

George R. Wood, Bar No. 0166017
gwood@littler.com
Holly M. Robbins, Bar No. 260381
hrobbins@littler.com
Kathryn Mrkonich Wilson, Bar No. 283605
kwilson@littler.com
Emily A. McNee, Bar No. 0395228
emcnee@littler.com
Lehoan T. Pham, Bar No. 0397635
hpham@littler.com
LITTLER MENDELSON, P.C.
80 S. 8th Street, Suite 1300
Minneapolis, MN  55402.2136
Telephone:   612.630.1000

*Attorneys for Defendants-Appellees*

## SUMMARY OF THE CASE

The district court's order dismissing Appellants' Amended Complaints under Fed. R. Civ. P. 12(b)(6) should be affirmed because the district court correctly held that:

(1) Appellants Sherry Ihde and Anita Miller failed to satisfy their pre-suit exhaustion requirements for a religious failure-to-accommodate claim under Title VII related to the termination of their employment.

(2) Appellants each failed to plausibly plead their religious failure-to-accommodate claims under Title VII.

(3) The Minnesota Human Rights Act ("MHRA") does not require employers to accommodate employees' religious beliefs, so no religious failure-to-accommodate claim exists under the MHRA.

Appellees request twenty minutes of oral argument.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule Fed. R. App. P. 26.1 and Eighth Circuit Rule 26.1A, Appellees state:

Appellee Mayo Clinic employed Ihde and Rubin. Mayo Clinic is a non-profit corporation with no parent company or publicly held company owning 10% or more of its stock.

Appellee Mayo Clinic Health System – Southeast Minnesota ("Mayo SE") employed Kiel. Mayo SE is a non-profit corporation and a wholly owned subsidiary of Mayo Clinic.

Appellee Mayo Clinic Hospital – Rochester ("Mayo Hospital") employed Miller. Mayo Hospital is a non-profit corporation and a wholly owned subsidiary of Mayo Clinic.

Appellee Mayo Clinic Ambulance ("MCA") employed Ringhofer. MCA is a non-profit corporation and is a wholly owned subsidiary of Mayo Clinic.

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................... 3

I.    OVERVIEW ............................................................................... 3

II.   BACKGROUND ......................................................................... 5

    A.   Appellees adopt the Policy. ............................................. 5

    B.   The CMS Mandate ........................................................... 6

    C.   The Testing Objectors qualify for a vaccine exemption, but not a testing exemption. ................................................ 7

        1.   Ihde receives a vaccine exemption but refuses to test. ..................................................................... 7

        2.   Rubin receives a vaccine exemption but refuses to test. ..................................................................... 9

    D.   The Vaccine Objectors fail to qualify for vaccine exemptions ..................................................................... 11

        1.   Kiel ....................................................................... 11

        2.   Ringhofer ............................................................. 13

        3.   Miller ................................................................... 14

    E.   The COVID-19 vaccines do not contain aborted fetal tissue. ............................................................................. 16

III.  PROCEDURAL HISTORY ...................................................... 16

    A.   Appellees move to dismiss Appellants' original Complaints and Appellants choose to amend those complaints. ....................................................................... 16

B.     The district court dismisses the Amended Complaints. ..... 17

SUMMARY OF ARGUMENT ................................................ 19

ARGUMENT ................................................................ 22

I.     STANDARD OF REVIEW ........................................... 22

II.    THE COURT SHOULD AFFIRM DISMISSAL OF IHDE AND
       MILLER'S TITLE VII CLAIMS FOR FAILURE TO EXHAUST
       ADMINISTRATIVE REMEDIES. ................................. 25

       A.     Termination of employment is a discrete act. .................... 26

       B.     Ihde and Miller's "inevitable termination" argument
              fails. ........................................................................ 30

              1.     Ihde and Miller failed to raise this argument
                     before the district court .......................................... 30

              2.     The Policy did not call for "inevitable
                     termination." ........................................................ 30

III.   APPELLANTS FAILED TO PLAUSIBLY PLEAD THEIR
       FAILURE-TO-ACCOMMODATE CLAIMS. ............................. 34

       A.     Appellants failed to plausibly plead facts showing
              religious objections to the Policy. ........................................ 39

              1.     Kiel, Ringhofer, and Miller did not plausibly link
                     their objections to their religious beliefs. .................. 39

              2.     Kiel, Ringhofer, and Miller did not raise the Sixth
                     Commandment in their Amended Complaints. ......... 45

              3.     Ihde and Rubin did not plausibly plead religious
                     reasons for objecting to testing. ............................. 46

ii.

4. Appellants' "Temple of the Holy Spirit" and medical arguments do not render their objections religious in nature.........................................48

B. Appellants failed to plausibly plead a conflict between their religious beliefs and the Policy. ..................................49

1. Kiel, Ringhofer, and Miller did not plausibly plead a conflict. ...........................................49

2. Ihde and Rubin did not plausibly plead a conflict......51

C. Kiel, Ringhofer, and Miller failed to plausibly plead they informed Appellees of their sincerely held religious beliefs or how those beliefs conflicted with the Policy. ..................................52

IV. THE MHRA DOES NOT IMPOSE A DUTY TO ACCOMMODATE EMPLOYEES' RELIGIOUS BELIEFS. ......................................54

A. The language of the MHRA does not impose a duty to accommodate employees' religious beliefs..........................54

B. Including a duty to accommodate disabilities, but not for religious beliefs, demonstrates that the Minnesota Legislature has not imposed an accommodation requirement for religious beliefs.........................................56

C. Appellants' inapposite authorities do not displace the MHRA's plain language. ......................................57

CONCLUSION ..................................60

CERTIFICATE OF COMPLIANCE..................................63

CERTIFICATE OF SERVICE FOR DOCUMENTS FILED USING CM/ECF ..................................65

iii.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Africa v. Pennsylvania,*
662 F.2d 1025 (3d Cir. 1981) ..............................................*passim*

*Aliano v. Twp. Of Maplewood,*
No. 22-cv-5598, 2023 WL 4398493 (D.N.J., July 7,
2023) .................................................................................. 42

*Anderson v. Block,*
807 F.2d 145 (8th Cir. 1986) ..................................................... 27

*Aronson v. Olmsted Med. Ctr.,*
___ F. Supp.3d ___, No. 22-1594, 2023 WL 2776095
(D. Minn., Apr. 4, 2023).................................................... 2, 60

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .........................................................*passim*

*Balow v. Olmsted Med. Ctr.,*
No. 22-1668.......................................................................... 60

*Bauer v. AGA Serv. Co.,*
25 F.4th 587 (8th Cir. 2022).................................................... 24

*Bearbower* v. *Olmsted Med. Ctr.,*
No. 22-2459.......................................................................... 60

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .........................................................*passim*

*Benjamin v. Cnty of Henn*epin,
No. C8-96-1122, 1996 WL 679690 (Minn. Ct. App.
Nov. 26, 1996)...................................................................... 58

*Biden v. Missouri,*
595 U.S. 87 (2022) ................................................................ 7

iv

*Blackwell v. Lehigh Valley Health Network,*
  No. 22-cv-03360, 2023 WL 5807840 (E.D. Pa. Sept.
  7, 2023) ...................................................................... 53

*Blomker v. Jewell,*
  831 F.3d 1051 (8th Cir. 2016) .................................... 35

*Boge v. Ringland-Johnson-Crowley,*
  976 F.2d 448 (8th Cir. 1992) ...................................... 28

*Bolden-Hardge v. Off. of Cal. State Controller,*
  63 F.4th 1215 (9th Cir. 2023) ..................................... 41

*Boone v. Ill. Dep't of Corr.,*
  No. 21-3229, 2022 WL 17083394 (C.D. Ill., Nov. 18,
  2022), *rev'd and remanded on other grounds*, 71
  F.4th 622 (7th Cir. 2023) ............................................ 51

*Brooks v. Midwest Heart Grp.,*
  655 F.3d 796 (8th Cir. 2011) .........................22, 25, 30

*Brown v. Child.'s Hosp. of Phila.,*
  794 F. App'x 226, 227 (3d Cir. 2020) ......................... 37

*Brown v. Gen. Motors Corp.,*
  601 F.3d 956 (8th Cir. 1979) ...................................... 36

*Caribe Indus. Sys., Inc. v. Nat'l Starch & Chem. Co.,*
  212 F.3d 26 (1st Cir. 2000) ......................................... 25

*Christian Action League of Minn. v. Freeman,*
  31 F.4th 1068 (8th Cir. 2022) ..................................... 55

*Christopherson v. Bushner,*
  33 F.4th 495 (8th Cir. 2022) ...................................... 22

*Chrysler Corp. v. Mann,*
  561 F.2d 1282 (8th Cir. 1977) .................................... 52

Appellate Case: 23-2996   Page: 8   Date Filed: 12/08/2023 Entry ID: 5342932

*Cole v. Grp. Health Plan, Inc.*,
No. 22-CV-2686, 2023 WL 5155202 (D. Minn. Aug.
10, 2023) ...............................................................58, 59

*Collias v. MotorCity Casino*,
No. 22-CV-12650, 2023 WL 6406220 (E.D. Mich.,
Sept. 30, 2023) .................................................... 53

*Cooper v. St. Cloud State University*,
226 F.3d 964 (8th Cir. 2000) ................................. 33

*Cruzan v. Special Sch. Dist., No. 1*,
294 F.3d 981 (8th Cir. 2002) ................................. 52

*Cummings v. Koehnen*,
568 N.W.2d 418 (Minn. 1997) ............................... 59

*Cutrera v. Bd. of Supervisors of La. State Univ.*,
429 F.3d 108 (5th Cir. 2005) ................................. 46

*Del. State Coll. v. Ricks*,
449 U.S. 250 (1980) .......................................1, 32, 33

*Egelkrout v. Aspirus, Inc.*,
No. 22-CV-118-BBC, 2022 WL 2833961 (W.D. Wis.,
July 20, 2022) ....................................................47, 51

*Ellison v. Inova Health Care Servs.*,
No. 1:23-cv-00132, 2023 WL 6038016 (E.D. Va. Sept.
14, 2023) ............................................................44, 48

*Equal Emp. Opportunity Comm'n v. Kelly Servs.*,
No. 07-4085, 2008 WL 11411778 (D. Minn., Oct. 8,
2008) ................................................................. 36

*Eubanks v. Harvard Indus., Inc.*,
712 F. Supp. 146 (E.D. Ark.), *aff'd without opinion*,
889 F.2d 1092 (8th Cir. 1989) ............................... 28

vi

*Faibisch v. Univ. of Minn.*,
  304 F.3d 797 (8th Cir. 2002), *overruled in part on
  other grounds*, 541 U.S. 369 (2004) .......................................... 24

*Fair v. Norris*,
  480 F.3d 865 (8th Cir. 2007) ...................................................... 26

*Fallon v. Mercy Cath. Med. Ctr.*,
  877 F.3d 487 (3d Cir. 2017) ...................................37, 42, 43, 44

*Finkbeiner v. Geisinger Clinic*,
  623 F. Supp. 3d 458 (M.D. Pa. 2022) ...................................44, 47

*Friend v. AstraZeneca Pharms. LP*,
  No. SAG-22-03308, 2023 WL 3390820 (D. Md., May
  11, 2023) ................................................................................... 53

*Gamon v. Shriners Hosps. for Child.*,
  No. 3:23-cv-00216, 2023 WL 7019980 (D. Or., Oct.
  25, 2023) ................................................................................... 44

*Gregory v. Dillard's, Inc.*,
  565 F.3d 464 (8th Cir. 2009) .........................................24, 36, 41

*Griffin v. Mass. Dep't of Revenue*,
  No. 1:22-cv-11001, 2023 WL 4685942 (D. Mass. July
  20, 2023) ................................................................................... 41

*Henry v. Indep. Sch. Dist. #625*,
  988 N.W.2d 868 (Minn. 2023) ................................................... 59

*Heuton v. Ford Motor Co.*,
  930 F.3d 1015 (8th Cir. 2019) .............................................30, 46

*High v. Univ. of Minn.*,
  236 F.3d 909 (8th Cir. 2000) ..................................................... 28

*Humphrey v. Eureka Gardens Public Facility Bd.*,
  891 F.3d 1079 (8th Cir. 2018) ................................................... 33

vii

*Humphries v. Pulaski Cnty. Special Sch. Dist.*,
580 F.3d 688 (8th Cir. 2009) ...................................................... 26

*Hutson v. Wells Dairy, Inc.*,
578 F.3d 823 (8th Cir. 2009) .................................................. 1, 27

*Johnson v. Angelica Uniform Grp., Inc.*,
762 F.2d 671 (8th Cir. 1985) ...................................................... 52

*Jones v. TEK Indus., Inc.*,
319 F.3d 355 (8th Cir. 2003) ....................................2, 36, 49, 52

*In re K-Tel, Int'l, Inc. v. Secs. Lit.*,
300 F.3d 881 (8th Cir. 2002) ........................................................ 5

*Kehren v. Olmsted Med. Ctr.*,
No. 22-1560.................................................................................... 60

*Kenneh v. Homeward Bound, Inc.*,
944 N.W.2d 222 (Minn. 2020) ............................................57, 59

*Lee v. Seasons Hospice*,
No. 22-CV-1593, 2023 WL 6387794 (D. Minn. Sept.
29, 2023) ........................................................................57, 58, 59

*Leitgeb v. Sark Wire Corp. – GA*,
No. 22-13683, 2023 WL 5607882 (11th Cir. Aug. 30,
2023) ................................................................................................ 22

*Lively v. Kroger Co. of Mich.*,
No. 19-12961, 2021 WL 791024 (E.D. Mich., Mar. 2,
2021) ................................................................................................ 50

*Maroko v. Werner Enters., Inc.*,
778 F. Supp. 2d 993 (D. Minn. 2011) ..................................58, 59

*McKinley v. Princeton Univ. et al.*,
No. 22-5069, 2023 WL 8374486 (D. N.J., Dec. 1,
2023) ................................................................................................ 38

Appellate Case: 23-2996    Page: 11    Date Filed: 12/08/2023 Entry ID: 5342932

*McSherry v. Trans World Airlines, Inc.*,
   81 F.3d 739 (8th Cir. 1996) ....................................................... 27

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.*,
   868 F.2d 992 (8th Cir. 1989) ...................................................... 46

*Nat'l Collegiate Athletic Ass'n v. Smith*,
   525 U.S. 459 (1999) .................................................................. 19

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ...................................................1, 26, 27, 31

*Nichols v. Am. Nat'l Ins. Co.*,
   154 F.3d 875 (8th Cir. 1998) ...................................................... 30

*O'Connor v. Lampo Grp., LLC*,
   No. 3:20-cv-00628, 2021 WL 4480482 (M.D. Tenn.,
   Sept. 29, 2021) .......................................................................... 50

*Passarella v. Aspirus*,
   No. 22-cv-287, 2023 WL 2455681 (W.D. Wis., Mar.
   10, 2023), *appeal docketed*, 23-1661 (7th Cir. Apr. 5,
   2023) .....................................................................................39, 44

*Petermann v. Aspirus, Inc.*,
   No. 22-332, 2023 WL 2662899 (W.D. Wis., Mar. 28,
   2023) ......................................................................................... 48

*Pietrangelo v. Sununu*,
   15 F.4th 103 (1st Cir. 2021) ....................................................... 24

*Prida v. Option Care Enters., Inc.*,
   No. 5:23-cv-00905, 2023 WL 7003402 (N.D. Ohio,
   Oct. 24, 2023).........................................................................48, 51

*Ray v. Miller Meester Advert., Inc.*,
   684 N.W.2d 404 (Minn. 2004) ...............................................14, 59

*Reeve v. Oliver*,
   41 F.3d 381 (8th Cir. 1994) ........................................................ 22

ix

*Richter v. Advance Auto Parts, Inc.*,
    686 F.3d 847 (8th Cir. 2012) .............................................*passim*

*Rohmiller v. Hart*,
    811 N.W.2d 585 (Minn. 2012) ...............................................55, 57

*Said v. Mayo Clinic*,
    44 F.4th 1142 (8th Cir. 2022)..................................................... 57

*Shirley Med. Clinic, P.C. v. United States*,
    243 F. App'x. 191 (8th Cir. 2007) ............................................ 46

*St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*,
    539 F.3d 809 (8th Cir. 2008) ...............................................30, 46

*Stahl v. U.S. Dep't of Agriculture*,
    327 F.3d 697 (8th Cir. 2003) ............................................... 5, 24

*State Farm Mut. Auto Ins. Co. v. Lennartson*,
    872 N.W.2d 524 (Minn. 2015) ............................................55, 57

*Stolzenburg v. Ford Motor Co.*,
    143 F.3d 402 (8th Cir. 1998) .................................................. 28

*Storey v. Burns Int'l Sec. Servs.*,
    390 F.3d 760 (3d Cir. 2004)................................................52, 53

*Thornton v. Ipsen Biopharmaceuticals*,
    No. 23-11171-JCB, 2023 WL 7116739 (D. Mass., Oct. 26, 2023) ............................................................... 48

*Tipcke v. Olmsted Med. Ctr.*,
    No. 22-2470, 2023 WL 2776098 (D. Minn., Apr. 4, 2023) ....................................................................... 60

*Todd v. Ortho Biotech, Inc.*,
    175 F.3d 595 (8th Cir. 1999) ............................................... 2, 55

Appellate Case: 23-2996    Page: 13    Date Filed: 12/08/2023 Entry ID: 5342932

*Troulliet v. Gray Media Grp., Inc.*,
    No. 22-5256, 2023 WL 2894707 (E.D. La., Apr. 11,
    2023) ................................................................................42, 43

*Ulrich v. Lancaster Gen. Health*,
    No. 22-4945, 2023 WL 2939585 (E.D. Pa., Apr. 13,
    2023) ................................................................................39, 49

*United States v. Davis*,
    978 F.2d 415 (8th Cir. 1992) ..................................................... 56

*United States v. Juan-Manuel*,
    222 F.2d 480 (8th Cir. 2000) ..................................................... 56

*United States v. Meyers*,
    95 F.3d 1475 (10th Cir. 1996) ................................................... 38

*Vaidyanathan v. Seagate US LLC*,
    691 F.3d 972 (8th Cir. 2012) .................................................54, 55

*Vetter v. Farmland Indus., Inc.*,
    120 F.3d 749 (8th Cir. 1997) .......................................44, 47, 49

*Warmington v. Bd. of Regents of the Univ. of Minn.*,
    998 F.3d 789 (8th Cir. 2021) .................................................35, 43

*We the Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d. Cir.), *opinion clarified*, 17 F.4th
    368 (2d Cir. 2021) ..................................................................... 44

*Wedow v. City of Kansas City, Mo.*,
    442 F.3d 661 (8th Cir. 2006) ..................................................... 28

*Williams v. Little Rock Mun. Water Works*,
    21 F.3d 218 (8th Cir. 1994) ....................................................... 25

*Wilson v. U. S. Postal Serv.*,
    814 F. App'x 719 (3d Cir. 2020) ................................................ 26

Appellate Case: 23-2996   Page: 14   Date Filed: 12/08/2023 Entry ID: 5342932

*Winans v. Cox Auto., Inc.*,
  No. 22-3826, 2023 WL 2975872 (E.D. Pa., Apr. 17,
  2023) ...................................................................................... 42

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) ............................................................... 37

*Zotos v. Lindbergh Sch. Dist.*,
  121 F.3d 356 (8th Cir. 1997) ................................................ 28

**Statutes**

42 U.S.C. §§ 2000e-2(a)(1), 2000e(j) ............................................ 56

42 U.S.C. § 2000e-5(e)(1) ........................................................*passim*

Act of June 6, 1983, Ch. 276, § 7, Minn. Laws 1181,
  1186 ........................................................................................ 56

CROWN Act,
  HF 37 93rd Minn. Leg. 2023 ................................................. 57

Minn. Stat. § 363.03, subd. 1 (1984) ........................................... 56

Minn. Stat. § 363A.01 *et seq.* (2022) ....................................... 2, 54

Minn. Stat. § 363A.08, subd. 1-4 ................................................. 55

Minn. Stat. § 363A.09, subds. 1-3................................................ 55

Minn. Stat § 363A.11, subd. 1 ...................................................... 55

Minn. Stat. § 363A.12 .................................................................. 55

Minn. Stat. § 645.16 (2022) ......................................................... 55

**Other Authorities**

86 Fed. Reg. 61555–61627 (Nov 5., 2021) (to be codified
  at 42 C.F.R. pts. 416, 418, 441, 460, 482–86, 491,
  494) .......................................................................................... 6

86 Fed. Reg. at 61572 ................................................................... 7

xii

Athalia Christie et al., *Decreases in COVID-19 Cases,
Emergency Department Visits, Hospital Admissions,
and Deaths Among Older Adults Following the
Introduction of COVID-19 Vaccine—United States,
September 6, 2020–May 1, 2021* ................................................... 3

Disease Control and Prevention,
https://www.cdc.gov/coronavirus/2019-
ncov/vaccines/vaccine -benefits.html (last visited
Nov. 13, 2023) .................................................................................. 3

Disease Control & Prevention,
https://www.cdc.gov/mmwr/volumes/70/wr/mm7023e
2.htm (June 11, 2021) ..................................................................... 3

Fed. R. Evid. 201(b) ..................................................................... 24

*History*, Minn. Dep't of Human Rights,
https://mn.gov/mdhr/ about/history/ (last visited
Nov. 12, 2023) ................................................................................ 57

*What You Should Know About COVID-19 and the ADA,
the Rehabilitation Act, and Other EEO Laws*, Equal
Emp. Opportunity Comm'n,
https://www.eeoc.gov/wysk/what-you-should-know-
about-covid-19-and-ada-rehabilitation-act-and-
other-eeo-laws#L (May 15, 2023 ................................................. 36

*WHO Coronavirus (COVID-19) Dashboard*, World
Health Org., https://covid19.who.int/ (last visited
Dec. 4, 2023.) .................................................................................. 3

Appellate Case: 23-2996    Page: 16    Date Filed: 12/08/2023 Entry ID: 5342932

## STATEMENT OF THE ISSUES

1.     Did the district court properly rule that Ihde and Miller did not timely exhaust their administrative remedies on their failure-to-accommodate claims under Title VII?

*Short Answer*:  Yes. Ihde and Miller did not exhaust their failure-to-accommodate claims because they filed their EEOC charges before termination of their employment and did not amend or file new charges after termination.

Apposite Authorities:

- 42 U.S.C. § 2000e-5(e)(1).

- *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980).

- *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

- *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823 (8th Cir. 2009); and

- *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012).

2.     Did the district court properly rule that Kiel, Ringhofer, and Rubin failed to plausibly plead their failure-to-accommodate claims under Title VII?

*Short Answer*: Yes.  Kiel, Ringhofer, and Rubin failed to plausibly plead sincerely held religious beliefs conflicting with Appellees' COVID-19 policy ("Policy"); Kiel and Ringhofer also failed to plausibly plead that they informed their respective employers of their alleged beliefs or the nature of the conflict between those beliefs and the Policy.

Apposite Authorities:

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

- *Jones v. TEK Indus., Inc.*, 319 F.3d 355 (8th Cir. 2003); and

- *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981).

3.  Did the district court properly rule that the MHRA does not impose a duty to accommodate employees' religious beliefs?

*Short Answer*: Yes.  The MHRA does not require that an employer accommodate employees' religious beliefs.

<u>Apposite Authorities</u>:

- Minn. Stat. § 363A.01 *et seq.* (2022).

- *Todd v. Ortho Biotech, Inc.*, 175 F.3d 595 (8th Cir. 1999); and

- *Aronson v. Olmsted Med. Ctr.*, ___ F. Supp.3d ___, No. 22-1594 ADM/JFD, 2023 WL 2776095 (D. Minn. Apr. 4, 2023).

2

## STATEMENT OF THE CASE

## I.   OVERVIEW

Appellees take seriously their duty to protect employees and patients from COVID-19, a deadly disease that has taken more than one million lives in the United States and nearly seven million worldwide.[1] Appellants' claims arise out of Appellees' efforts to best safeguard the health of employees and patients in the face of the virus.

After safe and effective vaccines[2] became available in the United States, Appellees adopted the Policy, relying on science and data showing that COVID-19 vaccines helped prevent serious illness and death, reduced the likelihood of hospitalization, and lowered the burden on hospitals overwhelmed with sick individuals.[3]

---

[1] *WHO Coronavirus (COVID-19) Dashboard*, World Health Org., https://covid19.who.int/ (last visited Dec. 4, 2023.)

[2] *Benefits of Getting A COVID-19 Vaccine*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine -benefits.html (last visited Nov. 13, 2023).

[3] *See, e.g.*, Athalia Christie et al., *Decreases in COVID-19 Cases, Emergency Department Visits, Hospital Admissions, and Deaths Among Older Adults Following the Introduction of COVID-19 Vaccine—United States, September 6, 2020–May 1, 2021*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/mmwr/volumes/70/wr/mm7023e2.htm (June 11, 2021).

As required by law, Appellees offered exemptions to employees who had sincerely held religious beliefs that conflicted with getting vaccinated or having to test. (App. 47–48; 22-cv-1327 R. Doc. 38-3, at 1–2.) Appellees told employees that violating the Policy would lead to corrective action, up to and including termination of employment. (*Id.*)

Appellants worked for Appellees and applied for exemptions. (App. 7–12; 22-cv-1319 R. Doc. 62, at 7–12.) Ihde and Rubin (the "Testing Objectors") received vaccination exemptions; they also requested testing exemptions but were denied those exemptions after Appellees reviewed their submissions. (App. 9, 11; 22-cv-1319 R. Doc. 62, at 9, 11.) Ihde and Rubin then refused to comply with the Policy by following Appellees' testing protocol. (App. 52–53; 22-cv-1327 R. Doc. 25, at 2–3; App. 242; 22-cv-1427 R. Doc. 20, at 11.) Appellees terminated their employment as a result.

Kiel, Ringhofer, and Miller (the "Vaccine Objectors") were denied vaccine exemptions based on the documentation they submitted. (App. 7–11; 22-cv-1319, R. Doc. 62, at 7–11.) After these denials, they refused to get vaccinated, and their employment was terminated as a result.

4

(App. 122; 22-cv-1319 R. Doc. 32, at 11; App. 149; 22-cv-1405 R. Doc. 26, at 4; App. 203; 22-cv-1420 R. Doc. 21, at 13.)

## II.  BACKGROUND

### A.  Appellees adopt the Policy.

Appellees adopted the Policy in October 2021.  (App. 47–50; 22-cv-1327 R. Doc. 38-3, at 1–4; App. 5; 22-cv-1319 R. Doc. 62, at 5.)  Under the Policy, "All employees must be fully vaccinated [against COVID-19] or receive an approved medical or religious exemption."  (App. 47; 22-cv-1327 R. Doc. 38-3, at 1.)  Employees could choose between Johnson & Johnson, Pfizer, or Moderna vaccines.  (App. 48–49; 22-cv-1327 R. Doc. 38-3, at 2–3.)[4]

Appellees allowed Appellants to seek exemptions based on sincerely held religious beliefs.  (App. 47; 22-cv-1327 R. Doc. 38-3, at 1; *see also* App. 39; 22-cv-01327 R. Doc. 42-1, at 47.)  Employees who were granted

---

[4] The Court may consider the Policy because the Amended Complaints explicitly embraced it.  (App. 51; 22-cv-01327 R. Doc. 25, at 1; App. 112–13; 22-cv-01319 R. Doc. 32, at 1–2; App. 146–47; 22-cv-01405 R. Doc. 26, at 1–2; App. 191–92; 22-cv-01420, R. Doc. 21, at 1–2; App. 232–33; 22-cv-01427 R. Doc. 20, at 1–2.)  *See In re K-Tel, Int'l, Inc. v. Secs. Lit.*, 300 F.3d 881, 889 (8th Cir. 2002).  The district court exercised its discretion to consider the Policy based on the Amended Complaints' allegations.  (App. 5–6; 22-cv-1319 R. Doc. 62, at 5–6.)  *See Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003).

exemptions from having to be vaccinated were subject to masking and testing requirements. (App. 48; 22-cv-1327 R. Doc. 38-3, at 2.) Employees could seek exemptions from testing based on sincerely held religious beliefs. (*See* App. 63; 22-cv-1327 R. Doc. 25, at 13.) The Policy called for corrective action, up to and including termination of employment, if an employee refused to follow the Policy. (App. 48; 22-cv-1327 R. Doc. 38-3, at 2.)

Appellees implemented an exemption review process and provided forms to seek religious-based exemptions from both vaccination and testing. (App. 5–6; 22-cv-1319 R. Doc. 62, at 5–6.)

## B. The CMS Mandate

In November 2021, the U.S. Department of Health and Human Services Center for Medicare and Medicaid Services issued a rule (the "Mandate") requiring certain healthcare facilities to ensure covered staff were vaccinated against COVID-19. *See* Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555–61627 (Nov 5., 2021) (to be codified at 42 C.F.R. pts. 416, 418, 441, 460, 482–86, 491, 494). The Policy was consistent with the Mandate. (*See* App. 47–50; 22-cv-01327 R. Doc. 38-3, at 1–4.)

The Supreme Court upheld the Mandate in January 2022. *Biden v. Missouri,* 595 U.S. 87, 98 (2022). The Court deferred to the CMS Secretary's "finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Id.* at 91.

The Mandate allowed institutions to provide religious exemptions but cautioned against rubber-stamping accommodation requests. *See* Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. at 61572.

### C. The Testing Objectors qualify for a vaccine exemption, but not a testing exemption.

#### 1. Ihde receives a vaccine exemption but refuses to test.

Ihde was a supervisor in Mayo Clinic's Bacteriology Lab. (App. 54; 22-cv-1327 R. Doc. 25, at 4.) She requested a religious exemption from vaccination in October 2021 that Mayo Clinic approved. (App. 61; 22-cv-1327 R. Doc. 25, at 11.)

Ihde also requested an exemption from testing in January 2022. (App. 63; 22-cv-1327 R. Doc. 25, at 13.) Mayo Clinic denied her request based on the documents she submitted. (App. 63–64; 22-cv-1327 R. Doc.

Appellate Case: 23-2996     Page: 23     Date Filed: 12/08/2023 Entry ID: 5342932

25, at 13–14.)  Ihde sought reconsideration of that decision; Mayo Clinic reconsidered but still denied her request.  (App. 64; 22-cv-1327 R. Doc. 25, at 14.)  Mayo Clinic placed Ihde on administrative leave because she continued to refuse to test; it then terminated her employment on February 21, 2022, following her continued refusal to test.  (App. 64–65; 22-cv-1327 R. Doc. 25, at 14–15.)

Ihde filed an EEOC charge on February 4, 2022, alleging religious discrimination under Title VII with respect to the denial of her testing exemption; at the time, her employment had not yet been terminated. (App. 64–65; 22-cv-1327 R. Doc. 25, at 14–15; App. 100; 22-cv-1327 R. Doc. 38-2, at 1.)  Because she had not been terminated yet, Ihde did not allege facts regarding termination in this charge.  (App. 100; 22-cv-1327 R. Doc. 38-2, at 1.)  On February 16, 2022, the EEOC issued a Right-to-Sue Notice. (App. 102; 22-cv-1327 R. Doc. 38-2, at 3.)

Ihde filed a second charge on May 16, 2022, alleging discrimination under the Age Discrimination in Employment Act and disability discrimination under the ADA; the EEOC issued a Right-to-Sue Notice on May 18, 2022.  (App. 53; 22-cv-1327 R. Doc. 25, at 3; App. 107–09; 22-cv-1327 R. Doc. 38-2, at 8–10.)  Ihde's second charge does not mention

religious discrimination or Title VII. (App. 107; 22-cv-1327 R. Doc. 38-2, at 8.)[5]

Ihde's Amended Complaint alleges that she is Christian and requested a testing exemption based on her religious beliefs. (App. 52–53, 55, 72; 22-cv-1327 R. Doc. 25, at 2–3, 5, 22.) Ihde alleges "her body is a Temple to the Holy Spirit"; "frequent medical testing for Covid-19 also violates her religious beliefs"; God gave her rights, not "any constitution, person, governments, or corporation"; her healing comes from God; and "[e]xcessive procedures, vanity surgeries, and redundant intrusive testing of healthy and asymptomatic" people were irresponsible and violated her "conscience before Elohim." (App. 55–56; 22-cv-1327 R. Doc. 25, at 5–6 (internal quotation marks omitted).)

### 2. **Rubin receives a vaccine exemption but refuses to test.**

Rubin worked for Mayo Clinic as a CT technologist. (App. 234; 22-cv-1427 R. Doc. 20, at 3.) Rubin requested a religious exemption from getting vaccinated that Mayo Clinic granted in November 2021. (App.

---

[5] Ihde has not appealed dismissal of her ADA claim. (*See* App. 29–32; 22-cv-1319 R. Doc. 62, at 29–32.) She never sued for age discrimination. (*See generally* App. 72–78; 22-cv-1327 R. Doc. 25, at 22–28.)

Appellate Case: 23-2996     Page: 25     Date Filed: 12/08/2023 Entry ID: 5342932

240; 22-cv-1427 R. Doc. 20, at 9.)

In January 2022, Rubin sought an exemption from testing, but Mayo Clinic denied this request. (App. 241; 22-cv-1427 R. Doc. 20, at 10.) Rubin refused to test, and Mayo Clinic terminated her employment on February 18, 2022. (App. 242; 22-cv-1427 R. Doc. 20, at 11.)

On February 23, 2022, Rubin filed her first charge,[6] alleging religious discrimination under Title VII because Mayo Clinic denied her testing exemption request and terminated her employment. (App. 234; 22-cv-1427 R. Doc. 20, at 3; App. 258; 22-cv-1427 R. Doc. 32-7, at 1.) On February 25, 2022, the EEOC issued a Right-to-Sue Notice with respect to this charge. (App. 234; 22-cv-1427 R. Doc. 20, at 3; App. 260; 22-cv-1427 R. Doc. 32-7, at 3.)

Rubin's Amended Complaint alleges she is Christian and requested a testing exemption based on her religious beliefs. (App. 234, 241, 247; 22-cv-1427 R. Doc. 20, at 3, 10, 16.) Rubin alleges "her body is a temple for the Holy Spirit"; she does not believe in unnecessary testing or

_____

[6] On April 27, 2022, Rubin filed a second charge alleging ADA disability discrimination. (App. 263; 22-cv-1427, R. Doc. 32-7, at 6.) Rubin does not appeal dismissal of her ADA claim. (App. 29–32; 22-cv-1319 R. Doc. 62, at 29–32.)

Appellate Case: 23-2996    Page: 26    Date Filed: 12/08/2023 Entry ID: 5342932

needlessly going to the doctor; "it violates her conscience" to get vaccinated, test, or sign a release for her medical information; and she must protect the physical integrity of her body. (App. 239–40; 22-cv-1427 R. Doc. 20, at 8–9.)

### D. The Vaccine Objectors fail to qualify for vaccine exemptions.

#### 1. <u>Kiel</u>

Kiel worked for Mayo SE as a licensed practical nurse. (App. 123; 22-cv-1319 R. Doc. 32, at 12.) Kiel requested a religious exemption from vaccination. (App. 114; 22-cv-1319 R. Doc. 32, at 3.) Mayo SE denied her request and subsequent appeal. (*Id*.) Kiel continued refusing vaccination and Mayo SE terminated her employment on January 3, 2022, as a result. (App. 122; 22-cv-1319 R. Doc. 32, at 11.)

Kiel filed a charge on January 10, 2022, alleging Title VII religious discrimination because Mayo SE denied her vaccine exemption request and terminated her employment. (App. 113; 22-cv-1319 R. Doc. 32, at 2; App. 141; 22-cv-1319 R. Doc. 44-4, at 1.) On February 15, 2022, the EEOC issued a Right-to-Sue Notice. (App. 113, 15; 22-cv-1319 R. Doc. 32, at 2, 4; App. 144; 22-cv-1319 R. Doc. 44-4, at 4.)

Kiel's Amended Complaint alleges she is Christian and requested a vaccine exemption based on her religious beliefs. (App. 112, 114, 128; 22-cv-1319 R. Doc. 32, at 1, 3, 17.) Kiel alleges "her body is a Temple to the Holy Spirit"; "it violates her religious beliefs and conscience to take the Covid-19 vaccine"; the available COVID-19 vaccines "were all produced with or tested with cells from aborted human babies"; and taking any of these vaccines "would make her a participant in the abortion that killed the unborn baby." (App. 114; 22-cv-1319 R. Doc. 32, at 3.)

Kiel also alleges she submitted an exemption request asserting she has a sincerely held religious belief and used Appellees' appeal process, submitting "additional information supporting her request for exemption." (App. 120–23, 128; 22-cv-1319 R. Doc. 32, at 9–12, 17.) She alleges, without support, she "submitted good-faith statements of her sincerely held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination" and "informed Mayo [SE] of the conflict between her religious belief and the Vaccine Mandate." (App. 123, 128; 22-cv-1319 R. Doc. 32, at 12, 17.)

12

## 2. **Ringhofer**

Ringhofer worked for MCA as a paramedic. (App. 191; 22-cv-1420 R. Doc. 21, at 1.) He requested a religious exemption from vaccination. (App. 191; 22-cv-1420 R. Doc. 21, at 1.) MCA denied his request and subsequent appeal. (App. 191, 203; 22-cv-1420 R. Doc. 21, at 1, 13.) Ringhofer refused vaccination, and MCA terminated his employment on January 3, 2022, as a result. (App. 203; 22-cv-1420 R. Doc. 21, at 13.)

Ringhofer filed a charge[7] on January 31, 2022, alleging Title VII religious discrimination. (App. 192; 22-cv-1420 R. Doc. 21, at 2; App. 223; 22-cv-1420 R. Doc. 34-6, at 1.) On February 24, 2022, the EEOC issued a Right-to-Sue Notice. (App. 225; 22-cv-1420 R. Doc. 34-6, at 3.)

Ringhofer's Amended Complaint alleges he is Christian and requested a vaccine exemption based on religious beliefs. (App. 191, 198, 200, 204, 208; 22-cv-1420 R. Doc. 21, at 1, 8, 10, 14, 18.) Ringhofer alleges he refused vaccination because his body is a temple to the Holy Spirit; he

---

[7] Ringhofer filed a second charge alleging age discrimination on June 29, 2022. (App. 227; 22-cv-1420 R. Doc. 34-6, at 5.) He did not assert this claim in his Amended Complaint. (App. 208–213; 22-cv-1420 R. Doc. 21, at 18–23.)

13

opposes abortion; and "the vaccines were produced with or tested with fetal cell lines." (App. 198; 22-cv-1420 R. Doc. 21, at 8.)[8]

Ringhofer alleges, without support, that he "submitted good-faith statements of his sincerely held religious beliefs, with explanations of how his faith constrained him from accepting the Covid-19 vaccination." (App. 204; 22-cv-1420 R. Doc. 21, at 14.)

### 3. **Miller**

Miller worked as a registered nurse at Mayo Hospital. (App. 148; 22-cv-1405 R. Doc. 26, at 3.) Miller requested a religious exemption from vaccination. (*Id*.) Mayo Hospital denied her request and subsequent appeal. (*Id*.) Miller continued refusing vaccination, and Mayo Hospital terminated her employment on January 3, 2022, as a result. (App. 149; 22-cv-1405 R. Doc. 26, at 4.)

On December 28, 2021, Miller filed a charge alleging Title VII religious discrimination because Mayo Hospital denied her vaccine

---

[8] The Vaccine Objectors cite testimony from their post-termination unemployment proceedings. (App. 56; 22-cv-1327 R. Doc. 25, at 6; App. 240; 22-cv-01427 R. Doc. 20, at 9; App. 198–99; 22-cv-1420 R. Doc. 21, at 8–9.) But their statements during these proceedings are irrelevant because Appellees could not have considered their *post*-termination statements when deciding their exemption requests *pre*-termination.

14

exemption request.  (App. 147; 22-cv-1405 R. Doc. 26, at 2; App. 180; R. Doc. 39-5, at 1.)  Miller did *not* allege Mayo Hospital terminated her employment because of her religious beliefs, as her employment had not yet been terminated.  (App. 180; 22-cv-1405 R. Doc. 39-5, at 1.)  On February 23, 2022, the EEOC issued a Right-to-Sue Notice regarding this charge.  (App. 147, 49; 22-cv-1405 R. Doc. 26, at 2, 4; App. 183; 22-cv-1405 R. Doc. 39-5, at 4.)

On July 4, 2022, Miller filed a second charge claiming age discrimination and alleging facts regarding her termination for the first time.  (App. 185–86; 22-cv-1405 R. Doc. 39-5, at 6–7.)  Miller's second charge does not mention religious discrimination or Title VII.  (*Id.*)  The EEOC issued a Right-to-Sue Notice regarding this charge on July 22, 2022.  (App. 188; 22-cv-1405 R. Doc. 39-5, at 9.)

Miller's Amended Complaint alleges she is Christian and requested a vaccine exemption based on her religious beliefs.  (App. 146, 148–49, 158, 163; 22-cv-1405, R. Doc. 26, at 1, 3–4, 13, 18.)  Miller alleges the vaccines were "produced with or tested by aborted baby cells"; she "believes in the sanctity of life from conception until natural death"; it violates her conscience to get vaccinated, as doing so "would make her

15

complicit in the killing of the unborn babies from whom the cells used in the vaccines came"; and her body is "a Temple to the Holy Spirit."  (App. 148, 154; 22-cv-1405 R. Doc. 26, at 3, 9.)

Miller alleges, without support, that she "submitted good-faith statements of her sincerely held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination." (App. 158; 22-cv-1405 R. Doc. 26, at 13.)

### E.  The COVID-19 vaccines do not contain aborted fetal tissue.

Appellants acknowledge that the Pfizer, Moderna, and Johnson & Johnson vaccines do not contain aborted fetal tissue.  (22-cv-1405 R. Doc. 42, at 12–13.)[9]

## III.  PROCEDURAL HISTORY.

### A.  Appellees move to dismiss Appellants' original Complaints and Appellants choose to amend those complaints.

Appellants sued Appellees in May 2022.  (App. 12; 22-cv-01319 R. Doc. 62, at 12.)  In September, Appellees moved to dismiss the Original

---

[9] According to Appellants: (1) "[f]etal cell lines are different from fetal cells and fetal tissue"; (2) fetal cell lines are lab grown; and (3) none of the three vaccines contain fetal cells or fetal tissue.  (22-cv-01405 R. Doc. 42, at 13 n.5.)

Appellate Case: 23-2996     Page: 32     Date Filed: 12/08/2023 Entry ID: 5342932

Complaints.  (*Id.*)[10]

In response, Appellants amended their Complaints.  (App. 12; 22-cv-1319 R. Doc. 62, at 12.)  The Amended Complaints included the same claims as the original Complaints, except that Appellants withdrew their claims under Minn. Stat. § 12.39.  (App. 12; 22-cv-1319 R. Doc. 62, at 12.)

In November 2022, Appellees moved to dismiss Appellants' Amended Complaints.  (App. 13; 22-cv-1319 R. Doc. 62, at 13.)[11]

## B.    The district court dismisses the Amended Complaints.

In August 2023, the district court dismissed all of Appellants' claims with prejudice ("Order").  (App. 36; 22-cv-1319 R. Doc. 62 at 36.)  As to those claims on appeal, the district court ruled:

- Ihde and Miller failed to exhaust their Title VII failure-to-

---

[10] After Miller filed suit, Mayo Hospital informed her that Title VII required administrative exhaustion of her Title VII claim related to termination of her employment.  (22-cv-01405 R. Doc. 23, at 20.)  Miller had until October 31, 2022, to amend her charge or file a new charge alleging discriminatory termination.  *See* 42 U.S.C. § 2000e-5(e)(1).  She filed no such charge.  (*See* App. 15–17; 22-cv-1319 R. Doc. 62, at 15–17.)
[11] In moving to dismiss Ihde's Amended Complaint, Appellees argued she had not exhausted her Title VII claim. (22-cv-1327 R. Doc. 37, at 21–22.)  By then, Ihde still had until December 19, 2022, to amend her original charge or file a new charge alleging discriminatory termination, 42 U.S.C. § 2000e-5(e)(1), but she did not do so. (*See* App. 15; 22-cv-1319 R. Doc. 62, at 15.)

Appellate Case: 23-2996     Page: 33     Date Filed: 12/08/2023 Entry ID: 5342932

accommodate claims based on the termination of their employment;
(App. 14–17; 22-cv-1319 R. Doc. 62 at 14–17);

- Kiel, Ringhofer, and Rubin failed to plausibly plead their Title VII claims (App. 17–26; 22-cv-1319 R. Doc. 62, at 17–26); and

- The MHRA does not impose on employers a duty to accommodate employee's religious beliefs (App. 26–27; 22-cv-1319 R. Doc. 62, at 26–27).[12]

Because the district court dismissed Ihde and Miller's Title VII claims for failure to exhaust, the district court did not rule on whether they plausibly pleaded those claims. (*See generally* App. 1–37; 22-cv-1319 R. Doc. 62, at 1–37.) Also, because the district court held the MHRA does include an obligation to accommodate employees' religious beliefs, it did not rule on whether Appellants plausibly pleaded their MHRA failure-to-accommodate claims. (*See generally id.*)

---

[12] The district court dismissed Appellants' ADA, breach of contract, and promissory estoppel claims. (App. 28–35; 22-cv-1319 R. Doc. 62, at 28–35.) The district court also ruled that Appellants waived their religion-based Title VII and MHRA disparate-treatment claims. (App. 18 n.1; 22-cv-1319 R. Doc. 62, at 18 n.1.) Appellants do not appeal these rulings. (*See generally* Appellants' Br.)

## SUMMARY OF ARGUMENT

This appeal is not about Appellants' rights to practice their religious beliefs, as they attempt to style it. Instead, the question is whether Appellants' claims meet Rule 12(b)(6)'s pleading standards. This case typifies why Rule 12(b)(6) exists, which is to dismiss: (1) untimely claims; (2) claims the law does not recognize; and (3) claims not alleged with sufficient specificity and plausibility.

Ihde and Miller alleged Title VII religious failure-to-accommodate claims based upon termination of their employment. Like the district court, this Court need not consider whether these claims meet Rule 12(b)(6)'s pleading standards because Ihde and Miller never filed a charge alleging Title VII religious discrimination based on the termination of their employment. Ihde and Miller's Title VII religious failure-to-accommodate claims based on termination of their employment are time-barred for failure to timely exhaust those claims.[13]

---

[13] The district court did not consider the merits of Ihde and Miller's Title VII failure-to-accommodate because it dismissed those claims for failure to exhaust the required administrative remedies. (App. 14–17; 22-cv-1319 R. Doc. 62, at 14–17.) Ihde and Miller argue the merits of those claims despite the district court's ruling. (Appellants' Br. 25, 35, 38.) Their attempt to do so is improper and should be rejected. *See Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 470 (1999).

Appellate Case: 23-2996     Page: 35     Date Filed: 12/08/2023 Entry ID: 5342932

In a last-ditch effort to save their Title VII claims, Ihde and Miller argue for the first time that the Policy required their "inevitable termination." Because Appellants never raised this argument before the district court, they waived it. The argument also is meritless.

The Vaccine Objectors, Kiel, Ringhofer, and Miller, failed to plausibly plead that their vaccine objections arise out of sincerely held religious beliefs; they also failed to plead that those beliefs conflicted with the Policy. They further failed to plausibly plead that they informed their respective employers of their religious beliefs or how those beliefs conflicts with the Policy. Instead, they relied on bare recitations of the elements of those claims, unsupported by facts.

The Testing Objectors, Ihde and Rubin, similarly failed to plausibly plead that their testing objections arose out of sincerely held religious beliefs that conflicted with the Policy.

In applying the MHRA's plain language, the district court correctly held the statute does not impose a duty to accommodate employees' religious beliefs.

Appellate Case: 23-2996    Page: 36    Date Filed: 12/08/2023 Entry ID: 5342932

For ease of reference, because this case involves multiple Appellants and multiple claims, Appellees provide a summary chart of their arguments:

| | Testing Objectors | |
|---|---|---|
| | **Ihde** | **Rubin** |
| *Reasons for Affirming Dismissal of Title VII Failure-to-Accommodate (Religion) Claim* | | |
| Failure to exhaust administrative remedies | ✓ | |
| Failure to state a claim | ✓ | ✓ |
| *Reasons for Affirming Dismissal of MHRA Failure-to-Accommodate (Religion) Claim* | | |
| Failure to state a claim | ✓ | ✓ |
| *Does the EEOC argue on behalf of this Appellant?* | | |
| | No | No |

| | Vaccine Objectors | | |
|---|---|---|---|
| | **Kiel** | **Ringhofer** | **Miller** |
| *Reasons for Affirming Dismissal of Title VII Failure-to-Accommodate (Religion) Claim* | | | |
| Failure to exhaust administrative remedies | | | ✓ |
| Failure to state a claim | ✓ | ✓ | ✓ |
| *Reasons for Affirming Dismissal of MHRA Failure-to-Accommodate (Religion) Claim* | | | |
| Failure to state a claim | ✓ | ✓ | ✓ |
| *Does the EEOC argue on behalf of this Appellant?* | | | |
| | Yes | Yes | No |

Appellate Case: 23-2996     Page: 37     Date Filed: 12/08/2023 Entry ID: 5342932

**ARGUMENT**

## I.   STANDARD OF REVIEW

The court applies a *de novo* standard when reviewing a Rule 12(b)(6) dismissal. *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022). Where courts cannot grant relief under any set of facts, granting a Rule 12(b)(6) motion is appropriate. *Reeve v. Oliver*, 41 F.3d 381, 383 (8th Cir. 1994). This and other courts have affirmed dismissal under Rule 12(b)(6) where a plaintiff fails to exhaust administrative remedies under Title VII. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012); *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800–01 (8th Cir. 2011); *Leitgeb v. Sark Wire Corp. – GA*, No. 22-13683, 2023 WL 5607882, at *3–4 (11th Cir. Aug. 30, 2023) (affirming dismissal of Title VII claim arising out of religious objection to COVID-19 testing due to failure to timely exhaust).

A Rule 12(b)(6) motion tests the sufficiency of the non-moving party's complaint; the Court should affirm dismissal of a complaint when it does not include "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Court accepts as true "well-pleaded factual allegations," viewing them in

22

the light most favorable to the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (citation omitted) (internal quotation marks omitted).

To survive a motion to dismiss, a complaint must set forth more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although "detailed factual allegations" are not required, *id.*, there must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678. A complaint must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" meaning the content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations." *Id.* at 679. The Court need not "conjure up unpled allegations" to save Appellants' claims. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

When reviewing a Rule 12(b)(6) motion, the Court may take judicial notice of facts not subject to reasonable dispute, such as information published on government or health agencies' websites relating to COVID-19. *See* Fed. R. Evid. 201(b); *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 591 (8th Cir. 2022); *Pietrangelo v. Sununu*, 15 F.4th 103, 106 n.1 (1st Cir. 2021). The Court may also take judicial notice of matters of public record, such as EEOC charges. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802–03 (8th Cir. 2002), *overruled in part on other grounds*, 541 U.S. 369 (2004). On the other hand, neither the district court nor this Court must consider materials beyond the pleadings that are offered in conjunction with a Rule 12(b)(6) motion.[14] *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697,

---

[14] Thus, the district court properly exercised its discretion in declining to consider Appellants' religious accommodation forms not included in the Amended Complaints that Appellants submitted in opposition to Appellees' motion to dismiss. (*See generally* App. 1–36; 22-cv-01319 R. Doc. 62, at 1–36.)

24

701 (8th Cir. 2003); *Caribe Indus. Sys., Inc. v. Nat'l Starch & Chem. Co.*, 212 F.3d 26, 27 n.1 (1st Cir. 2000).

## II. THE COURT SHOULD AFFIRM DISMISSAL OF IHDE AND MILLER'S TITLE VII CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Ihde and Miller never filed discrimination charges alleging termination of their employment in violation of Title VII. But in their Amended Complaints, each alleges only termination in violation of Title VII. (App. 53; 22-cv-1327 R. Doc. 25, at 2–3; App. 158; 22-cv-1405 R. Doc. 26, at 13.) The district court correctly dismissed these claims because they failed to exhaust their administrative remedies regarding claims related to termination of their employment.

A plaintiff must exhaust administrative remedies on a Title VII claim before filing suit. *Brooks*, 655 F.3d at 800; 42 U.S.C. § 2000e-5(e)(1). Central to Tile VII's administrative-exhaustion requirement is providing the EEOC with "the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).

Appellate Case: 23-2996    Page: 41    Date Filed: 12/08/2023 Entry ID: 5342932

To properly exhaust administrative remedies under Title VII, a plaintiff must file a charge within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The charge must include information "sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Fair v. Norris*, 480 F.3d 865, 867 n.2 (8th Cir. 2007); *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).

Where a plaintiff fails to timely exhaust administrative remedies under Title VII, courts dismiss the Title VII claims with prejudice. *Wilson v. U. S. Postal Serv.*, 814 F. App'x 719, 721–22 (3d Cir. 2020).

## A. Termination of employment is a discrete act.

Ihde and Miller argue they exhausted their Title VII claims because the EEOC's investigations "*would have revealed* religious discrimination and subsequent termination." (Appellants' Br. 47 (emphasis added).) By failing to file charges raising termination as a basis for their failure-to-accommodate claims, Ihde and Miller prevented the EEOC from investigating the merits of their terminations and undermined a central

26

component of Title VII's administrative exhaustion scheme. What the EEOC "would have" learned is irrelevant and speculative.

The alleged adverse action underlying Ihde and Miller's Title VII claims is termination of employment. Termination is a discrete act. *Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify"). Termination is not part of a continuing violation and the deadline to file a charge runs from the date of termination. *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009); *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740–41 (8th Cir. 1996).

Under Title VII, for Ihde and Miller to have exhausted their administrative remedies regarding termination of their employment, "the allegations of the judicial complaint [must be] like or reasonably related to the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986); *Richter*, 686 F.3d at 851–52. In *Richter*, the plaintiff sued for retaliation under Title VII but filed a charge alleging only race and sex discrimination. 686 F.3d at 850–51. The court affirmed dismissal of the plaintiff's retaliation claim for failure to exhaust. *Id*. at 853. The plaintiff argued that her retaliation

claim reasonably related to the discrimination allegations in her charge. *Id*. But the court held that retaliation and discrimination constitute separate actionable violations and require separate charges. *Id.* at 851. The district court here correctly relied on *Richter,* ruling that Title VII's exhaustion requirement applies equally to discrete acts occurring after filing a charge as it does to discrete acts occurring before filing a charge. (App. 16–17; 22-cv-1319 R. Doc. 62, at 16–17 (citing 686 F.3d at 852–53).)

Although a lawsuit need not "mirror" the administrative charge, *Wedow v. City of Kansas City, Mo.,* 442 F.3d 661, 674 (8th Cir. 2006), discrete acts occurring after the filing of an administrative charge cannot form the basis of a Title VII claim, *Boge v. Ringland-Johnson-Crowley*, 976 F.2d 448, 451 (8th Cir. 1992); *Eubanks v. Harvard Indus., Inc*., 712 F. Supp. 146 (E.D. Ark.), *aff'd without opinion*, 889 F.2d 1092 (8th Cir. 1989). The court has repeatedly declined to apply the continuing violations doctrine to discrete acts, like termination. *High v. Univ. of Minn*., 236 F.3d 909, 909 (8th Cir. 2000); *Stolzenburg v. Ford Motor Co*., 143 F.3d 402, 405 (8th Cir. 1998); *Zotos v. Lindbergh Sch. Dist*., 121 F.3d 356, 362 (8th Cir. 1997).

28

Here, Ihde and Miller were required to amend their existing charges or file new ones alleging their termination in violation of Title VII within 300 days of their termination dates. 42 U.S.C. § 2000e-5(e)(1). They did not do so.

Mayo Clinic terminated Ihde's employment on February 21, 2022. (App. 64–65; 22-cv-1327, R. Doc. 25, at 65.) Ihde had until December 19, 2022, to amend or file her charge. Mayo Clinic even informed Ihde on November 31, 2022, that she had failed to exhaust her Title VII claim based on termination of her employment, but Ihde still failed to amend or file the required new charge. (*See* App. 15; 22-cv-1319 R. Doc. 62, at 15.)

Mayo Hospital terminated Miller's employment on January 3, 2022. (App. 149; 22-cv-1405 R. Doc. 26, at 4.) Miller had until October 31, 2022, to amend or file her charge. Mayo Hospital informed Miller on September 14, 2022, that Title VII required administrative exhaustion regarding the termination of her employment, but Miller likewise failed to amend or file the required new charge. (*See* 22-cv-01405 R. Doc. 23, at 20.)

The district court correctly held that Ihde and Miller failed to administratively exhaust their Title VII claims based on termination of

29

their employment.  Their failure to do so bars these claims under Title VII.  *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886–87 (8th Cir. 1998); *Brooks*, 655 F.3d at 801; *Richter*, 686 F.3d at 851.

**B.  Ihde and Miller's "inevitable termination" argument fails.**

**1.  <u>Ihde and Miller failed to raise this argument before the district court</u>.**

Ihde and Miller did not argue below that the Policy called for their inevitable termination.  (*See generally* 22-cv-1327 R. Doc. 41; 22-cv-1327 R. Doc. 50; Tr.[15])  This Court has repeatedly held that failing to argue an issue below waives the argument on appeal.  *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 824 (8th Cir. 2008); *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1022 (8th Cir. 2019).  The Court should apply the same holding here.

**2.  <u>The Policy did not call for "inevitable termination</u>."**

Ihde and Miller's inevitable termination argument fails on its merits as well.  As the district court held, the Eighth Circuit "strictly adheres" to Title VII's administrative exhaustion requirement.  (App. 16;

---

[15] Citations to "Tr." refer to the transcript of the hearing on Appellees' motion to dismiss before the district court on June 2, 2023.

30

22-cv-1319 R. Doc. 62, at 16.)  Ihde and Miller attempt to reframe their termination dates by claiming the existence of the Policy resulted in "inevitable termination" of their employment.  (Appellants' Br. 44–47.)  But the decisions they cite involve cases where termination of employment was actually communicated to the plaintiffs.  Here, Ihde and Miller rely not on when their terminations were actually communicated to them, but rather when the Policy was communicated to them.  As such, the cases on which they rely are inapposite.

Ihde and Miller cannot escape *Morgan*, which holds that a series of discrete acts, even if related, does not culminate in a single unlawful practice.  536 U.S. at 102 (explaining that no language in Title VII states that plaintiff may convert "related discrete acts into a single unlawful practice for timely filing purposes. . . .  Because *each* discrete act starts a *new* clock for filing charges alleging that act, the charge *must* be filed within the . . . period *after the act occurred*."  (emphasis added)).  Each discrete act requires its own charge.  *Id*.  Thus, notification of the Policy, notification of rejection of the exemption request, placement on leave, and the ultimate notification of termination are all discrete acts, which do not toll the limitations period for later discrete acts.

31

Here the Policy did not require Ihde and Miller's termination if they violated it. Rather, it called for corrective action (which did not have to be termination) for failure to abide by the Policy:

> Employees who do not comply with the COVID-19 vaccination policy by either receiving the vaccination or being approved for a medical or religious exemption will be subject to corrective action, *up to and including* termination of employment.

> Employees with approved medical or religious exemptions will be required to mask at all times while on campus and may be subjected to regular COVID-19 testing. Refusal will result in corrective action *up to and including* termination of employment.

(App. 48; 22-cv-1327 R. Doc. 38-3, at 2 (emphasis added).) Termination was a possible consequence but not an inevitability.

The cases Appellants cite do not support their cause. In *Delaware State College v. Ricks,* 449 U.S. 250 (1980), the defendant unambiguously told the plaintiff that it denied him tenure and would retain him only under a one-year contract. *Id.* at 252–53. The Supreme Court held that the 180-day limitations period under Title VII started to run when the college established its "official" position regarding tenure denial and communicated that to the plaintiff. *Id.* at 262. The Supreme Court affirmed dismissal of the Title VII claim because the plaintiff failed to

32

timely file his charge following the employer's announced decision to terminate upon a certain future date. *Id*. at 256–57.

In *Cooper v. St. Cloud State University*, 226 F.3d 964 (8th Cir. 2000), the defendant also unambiguously stated a denial of tenure and that it would automatically terminate his employment after one more year. *Id.* at 965–66. The court held that the 300-day statute of limitations under Title VII started to run when the defendant advised the plaintiff of its "official" decision and affirmed dismissal of plaintiff's Title VII claim as time barred. *Id.* at 968

Similarly, in *Humphrey v. Eureka Gardens Public Facility Board,* a case not involving an employment decision or an agency charge, the court held that the statute of limitations for a claim under 42 U.S.C. section 1983 started to run when the city board informed the plaintiffs of its definitive decision. 891 F.3d 1079, 1081 (8th Cir. 2018).

Here, Ihde was notified on February 21, 2022, of the definitive termination decision. (App. 65; 22-cv-1327 R. Doc. 25, at 15.) This is when her limitations period under Title VII began to run regarding her termination. Miller was notified on January 3, 2022, of the definitive termination decision. (App. 149; 22-cv-1405 R. Doc. 26, at 4.) Denial of

33

each Appellant's earlier exemption request was not a definitive termination decision. Ihde and Miller held their fates in their own hands, choosing not to be vaccinated or test. These *choices* led to termination of their employment, which occurred *after* they filed their charges. Ihde and Miller point to no authority supporting the proposition that advising an employee of a policy or of their violation of such policy is equivalent to notification of termination. The Court should thus affirm dismissal of Ihde and Miller's Title VII claims due to failure to exhaust.

## III. APPELLANTS FAILED TO PLAUSIBLY PLEAD THEIR FAILURE-TO-ACCOMMODATE CLAIMS.

Realizing the fatal flaws with their failure-to-accommodate claims, Appellants improperly argue that Appellees have challenged the validity of Appellants' religious beliefs. (Appellants' Br. 22.) Appellants cite inapplicable cases concerning the Free Exercise Clause and various religious-freedom statutes. (Appellants' Br. 3–4, 23–25, 28, 31, 41–42.) These authorities are inapposite. They do not address the requirements for a well-pleaded Title VII religious accommodation claim. The district court's decision focuses on Appellants' failure to properly plead their Title VII claims under Rule 12(b)(6), not on any substantive law prescribing religious freedom. The district court never questioned the *sincerity* of

34

Appellants' professed beliefs. Instead, the district court addressed Appellants' failure to plausibly plead that: (a) their objections to the Policy arise out of their sincerely held religious beliefs; (b) their sincerely held beliefs conflicted with the Policy. The district court also addressed Kiel, Ringhofer, and Miller's failure to plausibly plead that they informed their respective employers that such beliefs conflicted with the Policy.

As pleaded, Appellants' Title VII claims fail to satisfy *Iqbal* and *Twombly*. Appellants failed to plead facts sufficient to support their failure-to-accommodate claims, relying instead on conclusory allegations. They need not plead facts establishing a prima facie case, but the elements of a prima facie case are relevant to determining plausibility. *Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021); *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). These elements are a backdrop against which courts decide whether a plaintiff has plausibly pleaded a Title VII claim. *Warmington*, 998 F.3d at 796.

To establish a failure-to-accommodate claim, Appellants must plausibly plead that they: (1) had a sincerely held religious belief that conflicted with an employment requirement; (2) informed Appellees of

35

that belief and the nature of the conflict; and (3) were disciplined or otherwise subject to an adverse employment action as a result. *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003); *Equal Emp. Opportunity Comm'n v. Kelly Servs.,* No. 07-4085, 2008 WL 11411778, at *2 (D. Minn., Oct. 8, 2008). The Court need not "conjure up unpleaded allegations" to save Appellants' claims, nor should the Court try to "divine [their] intent and create claims that are not clearly raised." *Gregory*, 565 F.3d at 473 (citation omitted) (internal quotation marks omitted).

Appellants were required to plausibly plead that their objections to the Policy were based on their religious beliefs. *Jones*, 319 F.2d at 359. They were required to plead more than just social, political, or personal preferences.[16] *Brown v. Gen. Motors Corp.*, 601 F.3d 956, 960 (8th Cir. 1979). They failed to do so.

Appellants have no "blanket privilege 'to make [their] own standards on matters of conduct in which society as a whole has

---

[16] *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L (May 15, 2023).

36

important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Appellants' Title VII claims cannot survive by pleading general objections to vaccinations or testing; these claims must plausibly state objections to vaccination or testing based on a sincerely held religious belief. *Brown v. Child's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("As we have recently explained, to state a claim under this statute, it is not sufficient merely to hold a sincere opposition to vaccination; rather, the individual must show that the opposition to vaccination is a religious belief." (citation omitted) (internal quotations omitted)).

To plead a sincerely held religious objection, Appellants were required to plausibly plead three factors: (1) the objections address fundamental and ultimate questions related to "deep and imponderable matters"; (2) the objections are part of a comprehensive belief system, not an isolated teaching; and (3) formal and external signs accompany the objections. *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981); *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 492–93 (3d Cir. 2017) (applying three-part test from *Africa* to determine whether plaintiff plausibly pleaded his religious beliefs). They failed to do so.

37

Deep and imponderable matters concern "existential matters, such as man's sense of being; teleological matters, such as man's purpose in life; and cosmological matters, such as man's place in the universe." *United States v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996). Formal and external signs include "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions." *Africa*, 662 F.2d at 1035 (citation omitted) (internal quotation marks omitted).

Kiel, Ringhofer, and Miller[17] failed to plausibly plead these factors. They failed to plead *religious* objections to the Policy. The objections stated in their Amended Complaints are personal in nature or turn on medical concerns. *See, e.g., McKinley v. Princeton Univ. et al.*, No. 22-5069, 2023 WL 8374486, at *4–5 (D. N.J., Dec. 1, 2023) (dismissing plaintiff's failure-to-accommodate claim (religion) under Title VII because she failed to plausibly allege her COVID-19-related objections connected to deep and imponderable matters, comprehensive belief

---

[17] The EEOC did not challenge the dismissal of Miller's Title VII claim. (*See generally* EEOC Br.)

Appellate Case: 23-2996     Page: 54     Date Filed: 12/08/2023 Entry ID: 5342932

system, and any formal and external signs, and so, objections were not religious in nature); *Passarella v. Aspirus*, No. 22-cv-287, 2023 WL 2455681, at *6 (W.D. Wis., Mar. 10, 2023) ("[T]he use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion."), *appeal docketed*, 23-1661 (7th Cir. Apr. 5, 2023); *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 WL 2939585, at *4– 6 (E.D. Pa., Apr. 13, 2023). Nor did they plausibly plead a conflict between their religious beliefs and the Policy. They further failed to plausibly plead that they informed Appellees about their beliefs and the nature of the conflict between those beliefs and the Policy.

Ihde and Rubin also failed to plausibly plead *religious* objections to testing. Their objections turn on personal, medical, or privacy concerns. They further failed to plead a conflict between their religious beliefs and the Policy.

### A. Appellants failed to plausibly plead facts showing religious objections to the Policy.

#### 1. <u>Kiel, Ringhofer, and Miller did not plausibly link their objections to their religious beliefs.</u>

Kiel, Ringhofer, and Miller did not plausibly connect their objections to their religious beliefs. Kiel alleged that "her religious beliefs

prevent her from putting into her body the Covid-19 vaccines which are available, because they were all produced with or tested with cells from aborted human babies" and "[r]eceiving the vaccine would make her a participant in the abortion that killed the unborn baby." (App. 114; 22-cv-1319 R. Doc. 32, at 3.) Miller alleged that the vaccines were produced or tested with "aborted baby cells" and she would not be "complicit in the killing of the unborn babies from whom the cells used in the vaccines came." (App. 148, 154; 22-cv-1405 R. Doc. 26, at 3, 9.) Ringhofer alleged that he "is strongly against abortion," he objected to the Policy because the vaccines were "produced with or tested with fetal cell lines," and he believed fetal cells were used in the vaccines' development. (App. 198; 22-cv-01420 R. Doc 21, at 8.)

### a.   *Deep and imponderable matters*

Kiel, Ringhofer, and Miller failed to plausibly plead objections to the Policy related to "deep and imponderable matters." *Africa*, 662 F.2d at 1032.[18]   They ask the Court to conjure up allegations they never

---

[18] The EEOC attempts to distinguish *Africa* by arguing that the Third Circuit only "determine[ed] whether a set of beliefs is a religion—not whether a particular belief is religious." (EEOC Br. 22.) But these two inquiries are inextricably intertwined: whether a belief is religious

pleaded regarding how abortion relates to deep and imponderable matters. The Court should reject this inappropriate request. *See Gregory*, 565 F.3d at 473.

### b. *Comprehensive Christian belief system*

Kiel, Ringhofer, and Miller failed to connect their objections to the Policy, specifically those objections based on their anti-abortion beliefs, to a comprehensive Christian belief system. At most, their objections qualify as "isolated moral teachings." *Africa*, 662 F.2d at 1032.[19] While they allege opposition to abortion, they fail to link that opposition to any

---

requires consideration of whether it is tied to a religion. *See Africa*, 662 F.2d at 1031 (analyzing "whether Africa's beliefs, however sincerely possessed, are religious in nature," by considering whether the beliefs are grounded in a framework that is "religious" at all). Here, the district court correctly ruled that Appellants did not plausibly plead that their beliefs—however sincere—are grounded in religion because they are not tied to a religious framework but are rather based in personal preference and medical opinion. *See id.* at 1025.

[19] The EEOC concedes that courts need not "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." (EEOC Br. 16–17 (quoting *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023)). Rather, plaintiffs must show "some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle." *Griffin v. Mass. Dep't of Revenue*, No. 1:22-cv-11001, 2023 WL 4685942, at *6 (D. Mass. July 20, 2023). The district court correctly concluded that Appellants failed to do so.

*specific* Christian tenet or teaching. Vague assertions that Christians generally oppose abortion fail to establish plausible religious objections. *Troulliet v. Gray Media Grp., Inc.*, No. 22-5256, 2023 WL 2894707, at *4 (E.D. La., Apr. 11, 2023); *Aliano v. Twp. Of Maplewood*, No. 22-cv-5598, 2023 WL 4398493, at *10 (D.N.J., July 7, 2023) (allegation that "using aborted fetal cells and/or aborted fetal cell lines, are in direct conflict with my religious beliefs" was conclusory and failed to provide a sufficient connection between vaccine objections and religious beliefs).

At most, Kiel, Ringhofer, and Miller pleaded anti-abortion beliefs arising out of conscience-based philosophical ideals or medical judgment, not religion. *Fallon*, 877 F.3d at 492 (affirming dismissal and explaining that isolated conscience-based objections do not "address fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature"); *Winans v. Cox Auto., Inc., No.* 22-3826, 2023 WL 2975872, at *4 (E.D. Pa., Apr. 17, 2023) ("[The complaint] does not, however, allege that Plaintiff's concern with the use of fetal cell lines arises out of any comprehensive religion . . . that drives the way he thinks about 'deep and imponderable matters.'" (quoting *Fallon*, 877 F.3d at 491)). Title VII does not protect isolated conscience-

42

based objections. *Fallon*, 877 F.3d at 492. Kiel, Ringhofer, and Miller simply failed to connect their anti-abortion beliefs to any comprehensive Christian belief system.

The district court properly held that Kiel's—and by extension, Miller's—religious objections to abortion are different from objections to taking vaccines allegedly developed using "aborted human babies." (*See* App. 21; 22-cv-1319 R. Doc. 62, at 21.) Neither Kiel nor Miller alleged opposition to vaccination based on a particular religious belief. (*Id.* (citing *Troulliet*, 2023 WL 2894707, at *4).) The district court recognized Ringhofer's fetal-cell objections were "a closer call." (App. 22; 22-cv-1319 R. Doc. 62 at 22.) But in reading Ringhofer's Amended Complaint as a whole, the district court held that he failed to plausibly plead that his vaccine objections are religious. (App. 23; 22-cv-1319 R. Doc. 62 at 23); *see Warmington*, 988 F.3d at 795 ("The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." (citation omitted) (internal quotation marks omitted)). Ringhofer's objections turned on his personal medical judgment, a philosophical belief in a right to choose to take vaccines, and

43

his "research," none of which qualify as religious beliefs. (App. 198–99; 22-cv-1420 R. Doc. 21, at 8–9.)

Federal courts regularly dismiss Title VII claims under Rule 12(b)(6) where examination of a plaintiff's objections shows they are secular, though couched in religious terms. *Gamon v. Shriners Hosps. for Child.*, No. 3:23-cv-00216, 2023 WL 7019980, at *2–3 (D. Or., Oct. 25, 2023); *Fallon*, 877 F.3d at 492; *Passarella*, 2023 WL 2455681, at *6. Kiel alleged the vaccines are "impure and dangerous"; Ringhofer alleged that, after doing his own research, he opted against vaccination—which was his "choice"—and he would trust his own immune system. (App. 114; 22-cv-1319 R. Doc. 32, at 3; App. 198–99; 22-cv-01420 R. Doc. 21, at 8–9.) Miller alleged taking the vaccine "would defile her body." (App. 154; 22-cv-1405 R. Doc. 26, at 9.) These are personal or health-based objections under Title VII, which Appellees need not honor. *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir. 1997); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d. Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132, 2023 WL 6038016, at *5 (E.D. Va. Sept. 14, 2023); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 467 (M.D. Pa. 2022) ("To start, her belief that

44

she has a 'God given right to make [her] own choices'—which, implicitly, her employer must unfailingly respect—would amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted . . . obligations.'" (alterations in original) (citations omitted) (internal quotation marks omitted)).

### c. Formal and external signs

Kiel, Ringhofer, and Miller failed to plead any "formal and external signs" demonstrating that their Christian faith bars taking vaccines. *Africa*, 662 F.2d at 1032. Christianity's *general* tenets do not equate to Kiel, Ringhofer, and Miller plausibly pleading formal and external signs supporting their vaccine objections. (*See* Appellants' Br. 34.)

In sum, Kiel, Ringhofer, and Miller did not plausibly plead their vaccine objections arise out of their religious beliefs for the reasons described above.

### 2. <u>Kiel, Ringhofer, and Miller did not raise the Sixth Commandment in their Amended Complaints.</u>

Recognizing their Amended Complaints do not satisfy the three-part test from *Africa*, Kiel, Ringhofer, and Miller argue on appeal that their abortion-related beliefs arise out of the Sixth Commandment, "Thou Shal[t] Not Kill." (Appellants' Br. 33, 37.) But their Amended

45

Complaints to not raise or discuss the Sixth Commandment. (*See generally* App. 112–35; 22-cv-1319 R. Doc. 32, at 1–24; App. 191–215; 22-cv-1420; R. Doc. 21, at 1–25; App. 146–69; 22-cv-01405 R. Doc. 26, at 1–24.) By failing to raise this issue below, they have waived this argument on appeal. *See Shirley Med. Clinic, P.C. v. United States*, 243 F. App'x. 191, 192 (8th Cir. 2007); *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Compaq*, 539 F.3d at 824; *Heuton*, 930 F.3d at 1022.[20]

### 3. <u>Ihde and Rubin did not plausibly plead religious reasons for objecting to testing.</u>

Ihde and Rubin did not plausibly plead religious reasons for objecting to testing. Ihde alleged conclusory objections to testing because "frequent medical testing for Covid-19 also violates her religious beliefs," she placed her faith in God, God will heal her, and it violated her conscience to test. (App. 55; 22-cv-1327 R. Doc. 25, at 5–6.) Rubin alleged conclusory objections to testing because it violated her conscience, God

---

[20] In opposing Appellees' motion to dismiss, Appellants attempted to further amend their Amended Complaints to allege the Sixth Commandment. (22-cv-01319 R. Doc. 48, at 32–33.) Attempts to amend a complaint through motion briefing are improper. *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

46

will protect her, she was concerned with releasing her medical information, and she did not believe in unnecessary testing. (App. 234, 240; 22-cv-1427 R. Doc. 20, at 3, 9.) Neither plausibly pleaded their testing objections are religious because each failed to connect their objections to: (1) deep and imponderable matters; (2) a comprehensive belief system; and (3) formal and external signs. *See Africa*, 662 F.2d at 1032. Their objections are personal, philosophical, and medical, which Title VII does not protect. *Vetter*, 120 F.3d at 751; *Egelkrout v. Aspirus, Inc.*, No. 22-CV-118-BBC, 2022 WL 2833961, at *3 (W.D. Wis., July 20, 2022) ("[P]laintiff makes no claim that the testing requirement conflicted with her genuinely held religious beliefs. *Instead, plaintiff opposed the testing for personal and medical reasons . . . .*" (emphasis added)); *Finkbeiner*, 623 F. Supp. 3d at 465–66. Ihde and Rubin couch their testing objections in religious terms, but that does not transform their objections into plausibly pleaded religious beliefs. And so, they failed to plausibly plead their testing objections arise out of their religious beliefs.

47

### 4.  **Appellants' "Temple of the Holy Spirit" and medical arguments do not render their objections religious in nature.**

Kiel, Ringhofer, and Miller alleged their bodies are a "Temple of the Holy Spirit" and expressed medical (or personal) concerns about putting COVID-19 vaccines in their bodies.  (App. 114; 22-cv-1319 R. Doc. 32, at 3; App. 198–99; 22-cv-1420, R. Doc. 21, at 8–9; App. 154; 22-cv-1405, R. Doc. 26, at 9.)  Ihde alleged her body is a temple to the Holy Spirit and God will heal her.  (App. 55; 22-cv-1327 R. Doc. 25, at 5.)  Rubin alleged her body is a temple to the Holy Spirit and expressed medical and privacy concerns with testing.  (App. 234, 239–40; 22-cv-01427 R. Doc. 20, at 3, 8–9.)

Like the district court, other federal courts have concluded that such allegations show only health-based or personal objections to the COVID-19 vaccines or testing, even though they are stated using religious terminology. *Petermann v. Aspirus, Inc.*, No. 22-332, 2023 WL 2662899, at *2 (W.D. Wis., Mar. 28, 2023); *Thornton v. Ipsen Biopharmaceuticals*, No. 23-11171-JCB, 2023 WL 7116739, at *4 (D. Mass., Oct. 26, 2023); *Ellison*, 2023 WL 6038016, at *5; *Prida v. Option Care Enters., Inc.*, No. 5:23-cv-00905, 2023 WL 7003402, at *5–6 (N.D.

48

Ohio, Oct. 24, 2023); *Ulrich*, 2023 WL 2939585, at *4–6. Appellees need not accommodate Appellants' personal or health-based objections. *Vetter*, 120 F.3d at 751. Accordingly, allegations that Appellants' bodies are a "Temple of the Holy Spirit" do not make their vaccine or testing objections religious in nature.

### B. Appellants failed to plausibly plead a conflict between their religious beliefs and the Policy.

#### 1. Kiel, Ringhofer, and Miller did not plausibly plead a conflict.

Because Kiel, Ringhofer, and Miller failed to plausibly plead sincerely held religious beliefs regarding vaccination, no conflict exists between their religious beliefs and the Policy. *Jones*, 319 F.3d at 359. Moreover, they do not plausibly plead that their beliefs conflict with vaccination.

Kiel and Miller alleged the COVID-19 vaccines were produced or tested with "cells from aborted human babies"; Ringhofer raised concerns with "fetal cell lines" and use of fetal cells in development of the vaccines. (App. 114; 22-cv-1319 R. Doc. 32, at 3; App. 148, 154; 22-cv-1405 R. Doc. 26, at 3, 9.) They acknowledge that the COVID-19 vaccines contain no fetal tissue. (22-cv-1405 R. Doc. 42, at 13.) Their original premise for

49

objecting to the Policy is factually incorrect and they do not plead that it is somehow a religious tenet. Courts dismiss claims where the facts show no actual conflict between employees' religious beliefs and an employer's work requirements. *See, e.g., O'Connor v. Lampo Grp., LLC*, No. 3:20-cv-00628, 2021 WL 4480482, at *7–9 (M.D. Tenn., Sept. 29, 2021); *Lively v. Kroger Co. of Mich.*, No. 19-12961, 2021 WL 791024 (E.D. Mich., Mar. 2, 2021).

*Lively* is instructive. There, the plaintiff sued her employer alleging religious discrimination, because her employer did not grant time off to attend a religious conference. *Lively*, 2021 WL 791024, at *1. The plaintiff claimed she needed time off from her shifts because they conflicted with the conference. *Id*. at *5. But the conference's sessions ended *before* her shifts started. *Id*. The plaintiff's basis for seeking a religious accommodation was false, and the Court dismissed her Title VII claim because no conflict existed between her religious beliefs and her employment requirements. *Id*.

Here Kiel, Ringhofer, and Miller acknowledge that the vaccines contain no fetal tissue. (22-cv-1405 R. Doc. 42, at 13.) Their objections to the Policy, like those in *Lively*, turned on an incorrect premise.

50

Because no conflict exists between Kiel, Ringhofer, and Miller's religious beliefs and the Policy, their Title VII claims should be rejected.

> ### 2. __Ihde and Rubin did not plausibly plead a conflict__.

Ihde and Rubin did not plausibly plead that testing actually conflicted with any religious tenet. *See Boone v. Ill. Dep't of Corr.*, No. 21-3229, 2022 WL 17083394, at *5 (C.D. Ill., Nov. 18, 2022) ("While Plaintiffs allege that [nasal swab COVID-19 testing] conflicts with their religious beliefs, they do not indicate the nature of the conflict, failing to identify any religious tenet which is offended by this testing."), *rev'd and remanded on other grounds*, 71 F.4th 622 (7th Cir. 2023); *Egelkrout*, 2022 WL 2833961, at *3; *Prida*, 2023 WL 7003402, at *6. Their Amended Complaints do not plausibly plead the nature of the conflict between their religious beliefs and testing; nor do they identify what religious tenet bars testing. For example, even if one believes "God will heal," that does not lead to a conclusion that one must not take measures to support good health. Similarly, even if one avoids "unnecessary" medical interventions, which does not lead to the conclusion that one's religion prohibits testing. Ihde and Rubin did not plausibly plead that any

sincerely held religious belief conflicted with vaccination, so their claims were properly dismissed.

### C. Kiel, Ringhofer, and Miller failed to plausibly plead they informed Appellees of their sincerely held religious beliefs or how those beliefs conflicted with the Policy.

Kiel and Ringhofer's Title VII claims specifically fail because they did not plausibly plead that they informed Appellees of their sincerely held religious beliefs and the nature of the conflict between those beliefs and the Policy. *Jones*, 319 F.3d 359; *Johnson v. Angelica Uniform Group, Inc.*, 762 F.2d 671, 673 (8th Cir. 1985); *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977); *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 765 (3d Cir. 2004) (affirming dismissal of religious discrimination claim under Rule 12(b)(6), in part, because plaintiff never informed employer that he viewed the Confederate flag as a religious symbol); *Cruzan v. Special Sch. Dist., No. 1*, 294 F.3d 981, 983 (8th Cir. 2002).

Kiel and Ringhofer alleged they submitted: (1) an exemption request; (2) additional information; and (3) unspecified good-faith statements, allegedly related to their religious beliefs. (Appellants' Br. 42–43.) The district court did not dismiss their claims because they failed to allege notification to Appellees. The district court ruled Kiel and

52

Ringhofer did not allege *what* they said to their employers or *when* they informed their employers of their religious beliefs and the nature of the conflict. (App. 21–24; R. Doc. 62, 22-cv-1319, at 21–24.) Kiel and Ringhofer merely pleaded conclusions, not facts. Doing so is insufficient to plead a religious discrimination claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 547.

Courts have dismissed Title VII claims where plaintiffs fail to plausibly plead how they informed their employers about their religious beliefs or the nature of the conflict. *Storey*, 390 F.3d at 765; *Blackwell v. Lehigh Valley Health Network*, No. 22-cv-03360, 2023 WL 5807840, at *6–9 (E.D. Pa. Sept. 7, 2023); *Collias v. MotorCity Casino*, No. 22-CV-12650, 2023 WL 6406220, at *3 (E.D. Mich., Sept. 30, 2023); *Friend v. AstraZeneca Pharms. LP*, No. SAG-22-03308, 2023 WL 3390820, at *3 (D. Md., May 11, 2023). Kiel and Ringhofer did not plead facts regarding what they told their employer beyond the bare conclusion their bodies are temples of the Holy Spirt and they had religious objections to vaccination. (*Compare* Appellants' Br. 6, 9, *with* App. 112–35; 22-cv-1319 R. Doc. 32, at 1–24, *and* App. 191–215; 22-cv-1420 R. Doc. 21, at 1–23.) Kiel and Ringhofer make only conclusory statements that they informed their

employers of religious objections, yet they repeatedly failed to plead *what* they told them about their religious beliefs or the nature of any conflict. Because they failed to plead these elements, the district court properly dismissed their Title VII claims.

Miller does not even argue that she plausibly pleaded informing Mayo Hospital of her specific religious beliefs or the nature of any conflict, thereby conceding that she failed to inform Mayo. (Appellants' Br. 7, 10.). In sum, Kiel, Ringhofer, and Miller's Title VII claims separately fail because they failed to plausibly plead that they informed their respective employers of the nature of their alleged religious beliefs or the nature of any conflict.

## IV. THE MHRA DOES NOT IMPOSE A DUTY TO ACCOMMODATE EMPLOYEES' RELIGIOUS BELIEFS.

### A. The language of the MHRA does not impose a duty to accommodate employees' religious beliefs.

The plain language of the MHRA does not support a failure-to-accommodate claim based on religious beliefs. *See generally* Minn. Stat. § 363A.01 *et seq.* (2022). When interpreting a statute, the court looks to its plain language. *Vaidyanathan v. Seagate US LLC*, 691 F.3d 972, 977 (8th Cir. 2012). Where statutory language is unambiguous, the Court

54

applies that language to discern legislative intent. *Id.*; Minn. Stat. § 645.16 (2022). The Court applies the MHRA's plain language even if Title VII's language would lead to a different conclusion. *Todd v. Ortho Biotech, Inc.*, 175 F.3d 595, 599 (8th Cir. 1999).

The MHRA lists instances where it protects against religious discrimination, but it does not state that employers must accommodate employees' religious beliefs. *E.g.*, Minn. Stat. §§ 363A.08, subds. 1–4, 363A.09, subds. 1–3, 363A.11, subd. 1, 363A.12, subd. 1, 363A.13, subds. 1–3. The MHRA's plain language shows that the Minnesota Legislature did not intend to impose a duty on employers to accommodate employees' religious beliefs. The district court properly held that the MHRA contains no accommodation requirement for religious beliefs.

The Minnesota Supreme Court would recognize the clear difference between Title VII's language and that found in the MHRA. *Christian Action League of Minn. v. Freeman*, 31 F.4th 1068, 1072 (8th Cir. 2022); *Vaidyanathan*, 691 F.3d at 977. That court does not add words to a statute when interpreting it. *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012); *State Farm Mut. Auto Ins. Co. v. Lennartson*, 872 N.W.2d 524, 532 (Minn. 2015). Title VII explicitly imposes on employers a duty

to accommodate employees' religious beliefs.  42 U.S.C. §§ 2000e-2(a)(1), 2000e(j).  By contrast, the MHRA contains no such explicit language.  Accordingly, the district court properly held that the MHRA contains no religious accommodation requirement.

### B. Including a duty to accommodate disabilities, but not for religious beliefs, demonstrates that the Minnesota Legislature has not imposed an accommodation requirement for religious beliefs.

The maxim of statutory construction, *expressio unius est exclusio alterius*, further demonstrates the lack of a requirement under the MHRA to accommodate religious beliefs.  *United States v. Davis,* 978 F.2d 415, 418 n.3 (8th Cir. 1992); *United States v. Juan-Manuel*, 222 F.2d 480, 487–88 (8th Cir. 2000).  The Minnesota Legislature *included* accommodation protections for disabilities but *omitted* any similar accommodation requirement for religious beliefs.  The Legislature amended the MHRA in 1983 to require employers to reasonably accommodate employee disabilities yet added no language requiring accommodation of employee religious beliefs.  Act of June 6, 1983, Ch. 276, § 7, Minn. Laws 1181, 1186 (codified as amended at Minn. Stat. § 63.03, subd. 1 (1984)).  No such accommodation requirement for religious beliefs has been added since 1983, despite the Legislature

56

adding other protections to the statute as recently as this year.[21]

Therefore, the district court properly concluded that the MHRA imposes

no duty on employers to accommodate employees' religious beliefs.[22]

*Rohmiller*, 811 N.W.2d at 590; *Lennartson*, 872 N.W.2d at 532.

### C. Appellants' inapposite authorities do not displace the MHRA's plain language.

Realizing the MHRA is devoid of religious accommodation

language, Appellants seek to impose such a requirement through judicial

fiat by misinterpreting two decisions, *Lee v. Seasons Hospice,* No. 22-CV-

1593, 2023 WL 6387794 (D. Minn. Sept. 29, 2023), and *Kenneh v.*

*Homeward Bound, Inc.*, 944 N.W.2d 222 (Minn. 2020).  In addition to

violating the longstanding rule of judicial interpretation that courts do

not add words to a statute when interpreting it, *Rohmiller*, 811 N.W.2d

at 590, neither *Lee* nor *Kenneh* support Appellants' argument regarding

---

[21] *History*, Minn. Dep't of Human Rights, https://mn.gov/mdhr/ about/history/ (last visited Nov. 12, 2023); *see also* CROWN Act, HF 37 93rd Minn. Leg. 2023.

[22] Because it concluded that the MHRA has no religious accommodation requirement, the district court was not required to rule on whether Appellants plausibly pleaded failure-to-accommodate claims under the MHRA.  Regardless, because Appellants' Title VII claims already fail on plausibility grounds, any failure-to-accommodate claim under the MHRA would also fail.  *Said v. Mayo Clinic*, 44 F.4th 1142, 1147 n.5 (8th Cir. 2022).

Appellate Case: 23-2996     Page: 73     Date Filed: 12/08/2023 Entry ID: 5342932

a religious accommodation requirement under the MHRA. This argument should be rejected.

In *Lee*, another judge of the district court conceded that the MHRA does not "expressly mention a duty to accommodate religion," but concluded that the MHRA imposes a duty to accommodate because Title VII includes such a requirement. 2023 WL 6387794, at *6. The *Lee* court strayed from the MHRA's plain language and misapplied the long-standing tenets of judicial interpretation of a statute. No language exists in the MHRA requiring employers to accommodate employees' religious beliefs.[23] The Minnesota Legislature has had ample opportunity to amend the MHRA to add such an obligation but has not done so.

---

[23] Appellants cite several cases from other judges of the district court that also are inapposite. In *Cole v. Grp. Health Plan, Inc.*, No. 22-CV-2686, 2023 WL 5155202, at *4 (D. Minn. Aug. 10, 2023), the court did not rule that a religious accommodation requirement exists under the MHRA but instead assumed, *without deciding*, that the MHRA recognizes such a claim, but dismissed the plaintiff's MHRA claim because it was not properly supported. Assuming without deciding a legal issue is not precedential. In *Maroko v. Werner Enterprises, Inc.*, 778 F. Supp. 2d 993, 998 n.5 (D. Minn. 2011), the court acknowledged that the MHRA does not include a reasonable accommodation requirement for religious beliefs. The court allowed the plaintiff to prosecute a religious failure-to-accommodate claim under the MHRA by relying on *Benjamin v. County of Henne*pin, an *unpublished* Minnesota Court of Appeals decision. No. C8–96–1122, 1996 WL 679690, at *3 (Minn. Ct. App. Nov. 26, 1996). But

Appellate Case: 23-2996     Page: 74     Date Filed: 12/08/2023 Entry ID: 5342932

*Kenneh* supports Appellees' argument because it shows that where a state law differs from corresponding federal law, the state law should be read properly to so differ. 944 N.W.2d at 229. In *Kenneh*, the Minnesota Supreme Court held that even though Title VII cases may guide the Court's interpretation of the MHRA, its "reliance has not been absolute." *Id*. *Kenneh* cites multiple cases in which the Court found differences between Title VII and the MHRA. *Id*. (citing *Ray v. Miller Meester Advert., Inc.*, 684 N.W.2d 404, 408 (Minn. 2004) (recognizing "significant differences" between the MHRA and Title VII); *Cummings v. Koehnen*, 568 N.W.2d 418, 422 n.5 (Minn. 1997) ("Title VII's statutory prohibition turns on discrimination, while Minnesota's statutory language includes the specific definition of sexual harassment.")); *see also Henry v. Indep. Sch. Dist. #625*, 988 N.W.2d 868, 881 (Minn. 2023). Here, the district court properly recognized the clear difference between Title VII and the MHRA with respect to an employer's duty to accommodate employees' religious beliefs.

---

*Benjamin* cites no MHRA language imposing a duty to accommodate employees' religious beliefs. *See id. passim*. *Lee*, *Cole*, and *Maroko* are non-precedential decisions since none were issued by a Minnesota state appellate court.

The district court's conclusion that the MHRA contains no religious accommodation requirement does not stand alone: other decisions from the District of Minnesota have held that no such duty exists. *See Aronson v. Olmsted Med. Ctr.*, ___ F. Supp.3d ___, 2023 WL 2776095 (D. Minn., Apr. 4, 2023); *Tipcke v. Olmsted Med. Ctr.*, No. 22-2470 ADM/JFD, 2023 WL 2776098 (D. Minn., Apr. 4, 2023); *Kehren v. Olmsted Med. Ctr.*, No. 22-1560 ADM/JFD, 2023 WL 2776094 (D. Minn., Apr. 4, 2023); *Balow v. Olmsted Med. Ctr.*, No. 22-1668 ADM/JFD, 2023 WL 2776028 (D. Minn., Apr. 4, 2023); *Bearbower* v. *Olmsted Med. Ctr.*, No. 22-2459 ADM/JFD, 2023 WL 2776029 (D. Minn., Apr. 4, 2023). These decisions correctly conclude—as did the district court here—that the MHRA includes no religious accommodation requirement.

## CONCLUSION

Appellees adopted the Policy in the face of a pandemic that took millions of lives. As medical institutions, Appellees are morally and legally obligated to do their utmost to protect the health and safety of both their patients and their employees. The Policy was an attempt to carry out these obligations consistent with the Mandate upheld by the

Supreme Court. Appellants had choices under the Policy. They each made their choices understanding what those choices would mean.

This appeal has nothing to do with Appellants' religious freedoms. Rather, it deals with Appellants inappropriate attempt to legally fit square pegs into round holes in violation of the pleading standards under Rule 12(b)(6).

The district court thoroughly considered Appellants' claims and properly ruled that they failed to meet Rule 12(b)(6)'s clear standards. Appellants' allegations fall short of Rule 12(b)(6)'s requirements. As a result, the district court properly dismissed those claims. The district court's decision should be affirmed, and Appellants respectfully request that the Court so rule.

Dated: December 8, 2023.

/s/ Holly M. Robbins

George R. Wood, Bar No. 0166017
gwood@littler.com
Holly M. Robbins, Bar No. 260381
hrobbins@littler.com
Kathryn Mrkonich Wilson, Bar No. 283605
kwilson@littler.com
Emily A. McNee, Bar No. 0395228
emcnee@littler.com
Lehoan T. Pham, Bar No. 0397635
hpham@littler.com
LITTLER MENDELSON, P.C.
80 S. 8th Street
Suite 1300
Minneapolis, MN 55402.2136
Telephone: 612.630.1000

**Attorneys for Defendants-Appellees**

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with the Type-Volume Limitation, the Typeface Requirements, and the Type Style Requirements of Fed. R. App. P. 32(a) and with the Technical Requirements of 8th Cir. R. 28A(h).

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,278 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font, using Microsoft Word 365 Version.

3. The digital version of this brief filed herewith has been scanned for viruses and to the best of my knowledge, is virus-free.

Appellate Case: 23-2996    Page: 79    Date Filed: 12/08/2023 Entry ID: 5342932

Dated: December 8, 2023

*/s/ Holly M. Robbins*

George R. Wood, Bar No. 0166017
gwood@littler.com
Holly M. Robbins, Bar No. 260381
hrobbins@littler.com
Kathryn Mrkonich Wilson, Bar No. 283605
kwilson@littler.com
Emily A. McNee, Bar No. 0395228
emcnee@littler.com
Lehoan T. Pham, Bar No. 0397635
hpham@littler.com
LITTLER MENDELSON, P.C.
80 S. 8th Street
Suite 1300
Minneapolis, MN 55402.2136
Telephone: 612.630.1000

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF SERVICE FOR DOCUMENTS FILED USING CM/ECF

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 8, 2023

/s/ Holly M. Robbins
Holly M. Robbins

4877-9622-1054.21 / 116426-1036

Appellate Case: 23-2996    Page: 81    Date Filed: 12/08/2023 Entry ID: 5342932